UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| OCA – GREATER HOUSTON and MALLIKA DAS, *Plaintiffs*, | § § § § | |
| v. | § § | Civil Action No. 1:15-cv-00679-RP |
| STATE OF TEXAS, et al., *Defendants*. | § § § § | |

---

### DEFENDANTS STATE OF TEXAS AND CARLOS CASCOS'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

---

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ANGELA V. COLMENERO
Chief - General Litigation Division

LAURA A. BARBOUR
Texas Bar No. 24069336
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 475-4099
FAX:  (512) 320-0667
laura.barbour@texasattorneygeneral.gov

ATTORNEYS FOR STATE DEFENDANTS

# TABLE OF CONTENTS

Table of Authorities..............................................................................................................ii

I.   Introduction and Facts ................................................................................................1

II.  Argument and Authorities ...........................................................................................2

A.  Standard of Review. ....................................................................................................2

B.  Plaintiffs' § 1983 Claim against the State of Texas Is Barred by Sovereign Immunity. ............3

C.  Plaintiffs Lack Standing to Sue the State Defendants....................................................4

    1.   Plaintiffs Have Failed to Show the Existence of an Injury-in-Fact that Was Caused by the State Defendants..........................................................................................4

        a.   The Secretary of State Does Not Have a Duty to Involve Himself in Every Election-Related Matter..........................................................................................5

        b.   Texas Law Comports with the Voting Rights Act.........................................6

        c.   Plaintiffs Fail to Trace Their Alleged Injury to the State Defendants' Conduct..........8

    2.   OCA-Houston Is Not Entitled to Organizational Standing.................................8

D.  Plaintiffs Fail to State a Claim for Relief Against the State Defendants. ..................................10

    1.   The Texas Election Code Does Not Conflict with the Voting Rights Act. ......................10

    2.   The State Defendants Did Not Deprive Mrs. Das of the Assistor of Her Choice. ..........11

III. Conclusion....................................................................................................................11

# TABLE OF AUTHORITIES

## Cases

*Aguilar v. Tex. Dep't of Criminal Justice*, 160 F.3d 1052 (5th Cir. 1998)......................................................4

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ................................................3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ...................................3

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
    527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999)...........................................................................3

*Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982) ............................9

*Higgins v. Tex. Dep't. of State Health Svcs.*, 801 F. Supp. 2d 541 (W.D. Tex. 2011) ...................................2

*Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006 (5th Cir. 1998)........................2

*Howlett v. Rose*, 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990) ....................................................4

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007)..............................................................3

*Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000).....................................3

*La. ACORN Fair Hous. v. LeBlanc*, 211 F.3d 298 (5th Cir. 2000)................................................................9

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377 (2014) .....................................4, 6, 8

*Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421 (5th Cir. 1997).............................................................6

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................................................................4

*Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464 (5th Cir. (2004) .............................3

*NAACP v. City of Kyle, Tex.*, 626 F.3d 233 (5th Cir. 2010) ..............................................................8, 9, 10

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) .......................................................................................5

*Penhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)...................3

*Plotkin v. IP Axess Inc.*, 407 F.3d 690 (5th Cir. 2005) ................................................................................3

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
    506 U.S. 139, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993)........................................................................3, 4

*Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)........................................................3

*Raines v. Byrd*, 521 U.S. 11 (1997) .................................................................................4

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001) ...............................................2

*Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315 (5th Cir. 2002) ..........................................4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) ...................................2

*Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061 (5th Cir. 1994) ..................................3

*Voting for America, Inc. v. Steen*, 732 F.3d 382 (5th Cir. 2013) ...................................10

## Statutes

42 U.S.C. § 1973aa-6 .......................................................................................................1

52 U.S.C.A. § 10508 ..................................................................................................... 1, 7

Fed. R. Civ. P. 12(b)(1) ....................................................................................................1

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 1, 2

Tex. Elec. Code Ann. § 31.005(a) ................................................................................ 5, 6

Tex. Elec. Code Ann. § 61.032 .......................................................................................7

Tex. Elec. Code Ann. § 61.033 .......................................................................................1

Tex. Elec. Code Ann. § 61.034 .................................................................................... 1, 7

Tex. Elec. Code Ann. § 64.001 .......................................................................................6

Tex. Elec. Code Ann. § 64.031 .......................................................................................6

Tex. Elec. Code Ann. § 64.032 ............................................................................... 1, 7, 11

Defendants State of Texas and Carlos Cascos, in his official capacity as Secretary of State of Texas ("Secretary of State," and, collectively, the "State Defendants"), file this motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), and respectfully request the Court to dismiss OCA-Greater Houston's and Mallika Das's (collectively, "Plaintiffs") claims against the State Defendants.

## I.   Introduction and Facts

This case arises from an alleged miscommunication between a voter, her son, and a Williamson County poll worker.  Essentially, Plaintiffs argue that Mrs. Mallika Das, who has limited English proficiency, attempted to vote in Williamson County and asked that her son, who is registered to vote in Travis County, help her read and mark the ballot.  (Dkt. 1 ¶¶ 20-22.)  Texas law allows a voter the "assistor" of her choice (subject to limitations not applicable here) if she is unable to read and mark a ballot.  Tex. Elec. Code Ann. § 64.032.  Texas law includes an additional provision that allows a voter the "interpreter" of her choice, so long as that interpreter is registered in the county in which the voter resides.  Tex. Elec. Code Ann. §§ 61.033 and 61.034.  Apparently construing Mrs. Das's request as a request for an interpreter under Texas Election Code section 61.034 and not a request for assistance under Texas Election Code section 64.032, the poll worker refused to allow Mrs. Das's son to accompany her to the voting machine.  (Dkt. 1 ¶¶ 21-25.)

Plaintiffs seek to convert this local dispute into a preemption claim, arguing that Texas Election Code sections 61.033 and 61.034 conflict with section 208 of the Voting Rights Act of 1965.  52 U.S.C.A. § 10508 (formerly codified as 42 U.S.C. § 1973aa-6) ("Section 208").  But Plaintiffs concede that Texas law comports with Section 208, noting that Texas Election Code section 64.032 "substantially mirror[s]" Section 208.  (Dkt. 1 ¶ 16.)

Noticeably absent from Plaintiffs' Complaint are any allegations tracing the conduct of the State Defendants to Plaintiffs' alleged injuries.  Plaintiffs vaguely complain that the Secretary of State

failed to ensure that local officials followed Texas law, but Plaintiffs fail to cite any authority suggesting that the Secretary of State has a duty to involve himself in every local election-related dispute.  (Dkt. 1 ¶ 12.)  Plaintiffs also complain about the summary of Texas election laws listed on the Secretary of State's website but fail to show how this establishes a conflict between Texas law and the Voting Rights Act.  (Dkt. 1 ¶ 19.)  In short, Plaintiffs fail to connect the dots from Mrs. Das's difficulty voting in Williamson County to the State Defendants.  Plaintiffs' attempt to characterize an isolated, local miscommunication as a constitutional dispute should be rejected.

## II.   Argument and Authorities

### A.   Standard of Review.

"A motion to dismiss for lack of Article III standing is properly considered under Rule 12(b)(1)." *Higgins v. Tex. Dep't. of State Health Svcs.*, 801 F. Supp. 2d 541, 547 (W.D. Tex. 2011).  Under Federal Rule of Civil Procedure 12(b)(1), a court "must dismiss a cause for lack of subject matter jurisdiction 'when the court lacks the statutory or constitutional power to adjudicate the case.'" *Id.* (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)). "[T]he plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  In evaluating a Rule 12(b)(1) motion, the Court may consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts, plus the Court's resolution of disputed facts." *Higgins*, 801 F.Supp.2d at 547.

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss all or part of a complaint "for failure to state a claim upon which relief can be granted."  A court may analyze the contents of the complaint and matters properly subject to judicial notice.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007).  To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  "The court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. (2004).  A plaintiff must plead "specific facts, not mere conclusory allegations."  *Tuchman v. DSC Comm'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  Indeed, courts should "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."  *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

    **B.**    **Plaintiffs' § 1983 Claim against the State of Texas Is Barred by Sovereign Immunity.**

       The Eleventh Amendment bars a plaintiff from bringing suit in federal court against a state or state agency absent consent or valid abrogation of state immunity by Congress.  *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 145, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).  The Eleventh Amendment protects states and state agencies from suits brought in federal court for either damages or injunctive relief.  *See Penhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (the Eleventh Amendment bar suits against state agencies "regardless of the nature of the relief sought.").  Importantly, "[c]ourts indulge every reasonable presumption against waiver" of immunity.  *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999).

       There is no allegation that the State of Texas has waived its immunity.  Nor has Congress abrogated, the State's immunity under § 1983.  *See Quern v. Jordan*, 440 U.S. 332, 241, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (§ 1983 does not "override the traditional sovereign immunity of the States."); *see*

*also Howlett v. Rose*, 496 U.S. 356, 376, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990) ("this Court has construed the word 'person' in § 1983 to exclude States.").

The *Ex Parte Young* exception to sovereign immunity permits federal courts to award prospective relief against state officials who violate federal law. *See Aguilar v. Tex. Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). But *Ex Parte Young* applies only to suits for prospective relief against state officials and "has no application in suits against . . . States." *Puerto Rico Aqueduct & Sewer Auth.*, 506 U.S. at 146. The State of Texas is not a "person" under *Ex Parte Young*, and therefore, the exception does not apply here.

Accordingly, because the State of Texas has not waived its immunity, Congress has not abrogated its immunity, and *Ex Parte Young* does not apply, the Court should dismiss Plaintiffs' § 1983 claims against the State.

### C.      Plaintiffs Lack Standing to Sue the State Defendants.

#### 1.      Plaintiffs Have Failed to Show the Existence of an Injury-in-Fact that Was Caused by the State Defendants.

Plaintiffs lack standing to assert their claims against the State Defendants. Under Article III of the United States Constitution, federal courts possess jurisdiction over only those disputes that constitute cases or controversies. *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Article III's limitation on judicial power and its underlying separation-of-powers principles have resulted in "a set of requirements that together make up the 'irreducible constitutional minimum of standing.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1386 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have suffered or be imminently threatened with a concrete and particularized "injury in fact" that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable decision." *Id.* "Failure to establish any of these three elements deprives the federal court of jurisdiction . . . ." *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002).

Article III standing is lacking where a plaintiff sues a state official who is without power to take the complained of action, and whose actions have not caused, or could not cause, any injury to her. *See Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir. 2001) (plaintiffs failed to establish Article III standing with respect to the governor, who had no authority to enforce the allegedly unconstitutional statute.)  Although Plaintiffs have asserted claims against the Secretary of State, they have failed to offer any facts demonstrating how the Secretary of State caused them to suffer an injury-in-fact. Instead, it appears that Plaintiffs have joined the Secretary of State as a defendant solely because he serves as the chief election officer of the State.  *See* Dkt. 1 ¶ 10 ("The Secretary of State serves as the Chief Election Officer of Texas and is responsible for administering the Texas Election Code.").

> ### a.   The Secretary of State Does Not Have a Duty to Involve Himself in Every Election-Related Matter.

Although the Secretary of State is the chief election officer, this title does not make him a necessary party in every election-related proceeding, and it especially does not make him a necessary party in this case where all of the facts alleged by Plaintiffs complain of actions taken by local poll workers, not the Secretary of State. (Dkt. 1 ¶¶ 20-25.)  Plaintiffs do not allege any facts suggesting that the State Defendants prohibited Mrs. Das from using the assistor of her choice.  Nor do Plaintiffs allege any facts suggesting that the State Defendants directed a third party to prohibit Mrs. Das from using the assistor of her choice.

Plaintiffs allege that the "Secretary of State's failure to instruct voting officials to comply with their legal obligations under Section 208 has cause, and will continue to cause unless remedied, OCA-Greater Houston to suffer legally cognizable injury."  (Dkt. 1 ¶ 12.)  But Plaintiffs cite no legal authority for this alleged duty.  The Secretary of State's duties with respect to elections are found in Texas Election Code section 31.005, which states that "[t]he secretary of state *may* take appropriate action to protect the voting rights of the citizens of this state from abuse by the authorities administering the state's electoral processes."   Tex. Elec. Code Ann. § 31.005(a) (Vernon

2010)(emphasis added).  That section further provides that the secretary *may* take action to correct any official conduct impeding a citizen's voting rights:

> "[i]f the secretary determines that a person performing official functions in the administration of any part of the electoral processes is exercising the powers vested in that person in a manner that impedes the free exercise of a citizen's voting rights, the secretary *may* order the person to correct the offending conduct. If the person fails to comply, the secretary *may* seek enforcement of the order by a temporary restraining order or a writ of injunction or mandamus obtained through the attorney general.

*Id.* 31.005(b)(emphasis added).

In short, Texas Election Code section 31.005 "merely authoriz[es] the Secretary of State to take some action, but do[es] not confer on him a legal duty to take the contemplated action." *Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421 (5th Cir. 1997) (reversing the district court's determination that the Secretary of State had a duty to warrant that local election authorities followed the Americans with Disabilities Act).  Accordingly, Plaintiffs cannot establish that the Secretary of State caused them a cognizable injury by failing to act, and therefore lack standing to pursue their claims against the Secretary of State.  *See Lexmark*, 134 S.Ct. at 1386.

### b.      Texas Law Comports with the Voting Rights Act.

At most, Plaintiffs complain that the Secretary of State's website summarizes the various provisions of the Texas Election Code affecting voters who need assistance in reading or marking the ballot.  (Dkt. 1 ¶ 19 and Exhibit 1.)  Plaintiffs assert no facts, however, alleging that the State of Texas took any actions at all—let alone actions that can be traced to the Plaintiffs' alleged injuries.  Indeed, Plaintiffs appear to join the State as a defendant merely to support its preemption claim.  But Plaintiffs' claim that Texas law conflicts with the Voting Rights Act does not survive scrutiny.

Texas Election Code chapter 64 deals with voting procedures generally.  *See* Tex. Elec. Code Ann. § 64.001 *et seq.*  Section 64.031 details who may receive assistance:

> A voter is eligible to receive assistance in marking the ballot, as provided by this subchapter, if the voter cannot prepare the ballot because of:
>
> (1)   a physical disability that renders the voter unable to write or see; or
> (2)   an inability to read the language in which the ballot is written.

Sections 64.032(c) and (d) detail who, other than an election officer, may provide assistance:

> (c)   On the voter's request, the voter may be assisted by any person selected by the voter other than the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs.
>
> (d)   If assistance is provided by a person of the voter's choice, an election officer shall enter the person's name and address on the poll list beside the voter's name.

These provisions are in line with the Voting Rights Act, which states that:

> Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union.

52 U.S.C.A. § 10508.

In short, both the Voting Rights Act and Texas law provide that if you are unable to read the ballot, you may be assisted by a person of your choice, so long as that person is not your employer, an agent of your employer, or an officer or agent of your union.  Indeed, Plaintiffs concede that "[r]elevant parts of [Texas Election Code section 64.032] substantially mirror Section 208" of the Voting Rights Act."  (Dkt. 1 ¶ 16.)

Texas law also includes an additional provision for interpreters.  Texas Election Code sections 61.032 and 61.034 allow a voter to communicate with a poll worker through an interpreter and allow the interpreter to translate the ballot for the voter.  Section 61.033 specifies that, to "be eligible to serve as an interpreter, a person must be a registered voter of the county in which the voter needing the interpreter resides."  These provisions do not impede a voter's right to receive assistance subject

to the provisions of Chapter 61. Instead, these provisions offer additional assistance to voters beyond the minimum requirements of the Voting Rights Act.

Accordingly, the Secretary of State's summary of Texas election laws on its website provides no support for Plaintiffs' theory that the Secretary of State caused them to suffer injury. Nor do Plaintiffs' preemption allegations support Plaintiffs' theory that the State of Texas caused them to suffer injury. Thus, Plaintiffs lack standing to pursue their claims against the State Defendants. *See Lexmark*, 134 S.Ct. at 1386.

<blockquote>
c.      **Plaintiffs Fail to Trace Their Alleged Injury to the State Defendants' Conduct.**
</blockquote>

Plaintiffs essentially allege that a local poll worker misclassified Mrs. Das's request for assistance as a request for an interpreter. (Dkt. 1 ¶¶ 20-25.) Even assuming that Mrs. Das has suffered injury, based on Plaintiffs' alleged facts, any such injury was not caused by the State Defendants:

- The State Defendants did not "fail[] to allow Mrs. Das the person of her choice to assist her by interpreting the ballot for her." (Dkt. 1 ¶¶ 29, 34.)

- The State Defendants did not "fail[] to allow eligible voters to receive necessary assistance from any person of their choice, other than their employers or union officials . . . ." (Dkt. 1 ¶¶ 30, 35.)

- The State Defendants did not "depriv[e] Plaintiffs of rights and privileges under Section 208 of the VRA under the color of Texas Election Code § 61.034 . . . ." (Dkt. 1 ¶ 36.)

Accordingly, Plaintiffs have failed to establish an injury-in-fact that is fairly traceable to any alleged actions of the State Defendants. Plaintiffs therefore lack standing to bring this action against the State Defendants, and Plaintiffs' claims against the State Defendants should be dismissed. *See Lexmark*, 134 S.Ct. at 1386.

<blockquote>
2.      **OCA-Houston Is Not Entitled to Organizational Standing.**
</blockquote>

"To have standing, an association or organization must satisfy the well-known requirements of *Lujan*." *NAACP v. City of Kyle, Tex.*, 626 F.3d 233, 237 (5th Cir. 2010). To establish injury-in-fact,

an organization may show a "concrete and demonstrable" diversion of significant resources to counteract the alleged harmful conduct. *Id.* (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982)). Not all diversions of resources meet this standard, however. "The mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization." *La. ACORN Fair Hous. v. LeBlanc*, 211 F.3d 298, 305 (5th Cir. 2000).

In *NAACP v. City of Kyle*, the plaintiffs sued the City of Kyle alleging that changes in its zoning and subdivision ordinances violated the Fair Housing Act. 626 F.3d at 235. The court determined that the plaintiffs failed to establish an injury in fact because they failed to demonstrate that the diversion of resources "concretely and perceptibly impaired" their ability to carry out their purpose, noting that "[a]t most, they have established 'simply a setback to the organization's abstract social interests.'" *Id.* at 239. Specifically, the court observed that:

- the organization's activities to counteract the alleged harmful conduct ("which basically boil down to examining and communicating about developments in local zoning and subdivision ordinances) appeared no different from the organizations lobbying activities;

- the organization did not identify "any specific projects that [it] had to put on hold or otherwise curtail" to respond to the alleged harmful conduct; and

- the organization "only conjectured that the resources that [it] had devoted to the revised ordinances could have been spent on other unspecified [organizational] activities."

*Id.* at 238-39.

Here, Plaintiff OCA-Greater Houston alleges that it will have to "expend its limited funds and other resources to educate its members and other Asian American voters on how to vote—including instructions on requirements for interpreters of voters' choice—as well as provide other assistance in connection with upcoming elections." (Dkt. 1 ¶ 13.) This conclusory sentence is insufficient to meet

the requirements of organizational standing because it fails to demonstrate that the diversion of resources "concretely and perceptibly impaired" their ability to carry out their purpose. *See NAACP*, 626 F.3d at 239.

OCA-Greater Houston's website advertises that it "[c]onducted educational seminars and programs on such topics as: . . . "Voter Awareness," and that it "[c]oordinated community service projects supporting efforts such as voter registration . . . ." *See* OCA-GREATER HOUSTON CHAPTER http://www.ocahouston.org (last accessed August 21, 2015) (attached as Exhibit A.)  OCA-Greater Houston fails to demonstrate how providing information to its members about voter assistance is any different from its regular educational activities.  *See id.* at 238-39.  Nor does OCA-Greater Houston identify any specific projects that it will have to put on hold or otherwise curtail to respond to the Secretary of State's alleged failure to instruct voting officials to comply with Texas and federal law. *See id.*  Lastly, OCA-Greater Houston merely conjectures that it will have to divert resources that could have been spent on other, unspecified activities.  *See id.*

Because OCA-Greater Houston has failed to show a "concrete and demonstrable" diversion of significant resources, it fails to establish an injury in fact.  *Id.* at 239.  Without an injury in fact, OCA-Greater Houston lacks standings to pursue its claims, and, accordingly, the Court should dismiss OCA-Greater Houston's causes of action.

        **D.**        **Plaintiffs Fail to State a Claim for Relief Against the State Defendants.**

                **1.**        **The Texas Election Code Does Not Conflict with the Voting Rights Act.**

Pursuant to the Election Clause of the United States Constitution, "Congress may enact laws that preempt state election laws concerning federal elections," thereby rendering those conflicting state laws inoperative.  *Voting for America, Inc. v. Steen*, 732 F.3d 382, 399 (5th Cir. 2013).  As such, state and federal election laws cannot directly conflict.  *Id.*  Plaintiffs ask the Court to, among other things:

- declare that Texas Election Code section 61.033 "violates and is inconsistent with the provisions of Section 208 of the Voting Rights Act;"

- enjoin Defendants from "engaging in any act or practice that denies the rights secured by Section 208 of the Voting Rights Act;" and

- require Defendants to "develop and implement a remedial plan to ensure that voters are permitted assistance form persons of their choice when they cast their ballots, in compliance with Section 208 of the Voting Rights Act." (Dkt. 1, Prayer)

Plaintiffs' preemption claim fails, however, because as discussed above on pages 6-8, however, Texas law does not conflict with Section 208 of the Voting Rights Act. Indeed, as Plaintiffs concede, Texas Election Code section 64.032 "substantially mirror[s]" the Voting Rights Act. (Dkt. 1 ¶ 16.) Accordingly, Plaintiffs fail to state a claim for relief under the Voting Rights Act or under § 1983, and no remedial plan is necessary.

> ### 2. The State Defendants Did Not Deprive Mrs. Das of the Assistor of Her Choice.

Plaintiffs base both their Voting Rights Act claim (Dkt. 1 ¶¶ 26-30) and their § 1983 claim (Dkt. 1 ¶¶ 31-36) on the alleged misclassification of Mrs. Das's son as an "interpreter" rather than an "assistor" by a local poll worker. (Dkt. 1 ¶¶ 20-25.) But, as discussed above on pages 4-6, and 8, however, this conduct cannot be attributed to the State Defendants, nor do the State Defendants have a duty to get involved in every election-related dispute. Accordingly, Plaintiffs fail to state a claim for relief under the Voting Rights Act or under § 1983.

## III. Conclusion

For the foregoing reasons, the Court should GRANT the instant motion and dismiss with prejudice Plaintiffs' claims against the State Defendants in their entirety.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ANGELA V. COLMENERO
Chief - General Litigation Division


*/s/ Laura A. Barbour*
LAURA A. BARBOUR
Texas Bar No. 24069336
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 475-4099
FAX:  (512) 320-0667
laura.barbour@texasattorneygeneral.gov

ATTORNEYS FOR STATE DEFENDANTS


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been sent by electronic notification through ECF by the United States District Court, Western District of Texas, Austin Division, on August 27, 2015 to:

| | |
|---|---|
| David M. Hoffman | Jerry Vattamala |
| FISH & RICHARDSON, P.C. | Asian American Legal Defense and Education Fund |
| 111 Congress Avenue, Suite 810 | 99 Hudson Street |
| Austin, Texas 78701 | New York, New York 10013 |


*/s/ Laura A. Barbour*
LAURA A. BARBOUR
Assistant Attorney General