IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| OCA – GREATER HOUSTON, et al., | |
| Plaintiffs, | |
| v. | CIVIL ACTION NO. 1:15-cv-00679-RP |
| STATE OF TEXAS, et al., | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANTS STATE OF TEXAS AND TEXAS SECRETARY OF STATE CARLOS CASCOS**

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   LEGAL STANDARDS ................................................................................. 2

III.  ARGUMENT ................................................................................................ 4

      A.  Plaintiffs Have Standing to Sue State Defendants ........................................4

          1.   The Secretary of State is a Proper Party in this Case................................4

          2.   Other Provisions in Compliance with VRA Also Do Not Defeat
               Standing ............................................................................................................6

          3.   The Harm to Plaintiffs is Traceable to the State Defendants' Conduct .................8

          4.   OCA-Houston Has Organizational Standing. ..........................................9

          5.   OCA-Houston Has Associational Standing. ...........................................11

      B.  Plaintiffs Have Stated a Claim For Relief....................................................12

IV.   CONCLUSION ........................................................................................... 12

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                    **Page(s)**

*American Civil Rights Union v. Tax Assor-Collector Cindy Martinez-Rivera,*
No. 2:14-CV-00026 (W.D. Tex. March, 2015) ........................................................9

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................................3

*Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.,*
627 F.3d 547 (5th Cir. 2010) ................................................................................11

*Ass'n of Comm. Orgs. For Reform Now ("ACORN") v. Fowler,*
178 F.3d 350 (5th Cir. 1999) ............................................................................9, 10

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................................................3

*Benton v. U.S.,*
960 F.2d 19 (5th Cir. 1992) ....................................................................................3

*City of Boerne v. Flores,*
521 U.S. 507 (1997) ................................................................................................1

*Collins v. Morgan Stanley Dean Witter,*
224 F.3d 496 (5th Cir. 2000) ..................................................................................2

*Crawford v. Marion Cnty. Election Bd.,*
472 F.3d 949 (7th Cir. 2007), aff'd. 553 U.S. 181 (2008)......................................9

*Flast v. Cohen,*
392 U.S. 83 (1968) ..................................................................................................6

*Florida State Conference of NAACP v. Browning,*
522 F.3d 1153 (11th Cir. 2008) ..............................................................................9

*Harkless v. Brunner,*
545 F.3d 445 (6th Cir. 2008) ..................................................................................9

*Havens Realty Corp. v. Coleman,*
455 U.S. 363 (1982)................................................................................................9

*Higgins v. Tex. Dep't of State Health Svcs.,*
801 F. Supp. 2d 541 (W.D. Tex. 2011)...................................................................6

*Hunt v. Wash. St. Apple Adver. Comm'n,*
432 U.S. 333 (1977)..............................................................................................11

*Johnson v. Teva Pharm. USA, Inc.*,
   758 F.3d 605 (5th Cir. 2014) ..................................................................................3

*League of United Latin American Citizens (LULAC) of Wisconsin, Inc. v.*
   *Deninger*,
   No. 12-C-0185, 2013WL 5230795 (E.D.Wis. Sept. 17, 2013)..............................................10

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   134 S. Ct. 1377 (2014) ..........................................................................................3

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)..........................................................................................3, 4

*Mixon v. State of Ohio*,
   193 F.3d 389 (6th Cir. 1999) ...................................................................................1

*N.A.A.C.P. v. City of Kyle, Tex.*,
   626 F.3d 233 (5th Cir. 2010) .................................................................................10

*National Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, &*
   *Explosives*,
   700 F.3d 185 (5th Cir. 2012) .................................................................................11

*Raines v. Byrd*,
   521 U.S. 811 (1997)..............................................................................................3

*Rankin v. City of Wichita Falls*,
   762 F.2d 444 (5th Cir. 1985) ...................................................................................3

*Reaves v. United States DOJ*,
   *355 F. Supp. 2d 510* (D.D.C. 2005) ...........................................................................1

*United States Parole Comm'n v. Geraghty*,
   445 U.S. 388 (1980)..............................................................................................3

*Veasy v. Perry*,
   No. 13-CV-00193, 2014 WL 3002413 (S.D. Tex. July 2014)................................................5

*Warth v. Seldin*,
   422 U.S. 490 (1975)............................................................................................11

## Other Authorities

Rule 12(b)(1)........................................................................................................3

Rule 12(b)(6)........................................................................................................2

# I.    <u>INTRODUCTION</u>

Plaintiffs have presented sufficient allegations to support meritorious claims against State Defendants pursuant to both the Voting Rights Act of 1965 ("VRA") and 42 U.S.C. § 1983 ("Section 1983").  The Motion to Dismiss ("the Motion" or "State Defendants' Motion") does not provide an adequate legal basis for this Court to dismiss all claims against Defendants State of Texas and Texas Secretary of State, Carlos Cascos.  As such, with the one exception noted below, the Motion should be denied.  In particular, Plaintiffs agree that Sovereign Immunity applies to the State of Texas in regard to the Section 1983 claim.  Plaintiffs' Complaint should have been more clear.  The State was included in the Section 1983 claim via the definition of "Defendants" in the VRA section of the Complaint, which carried over to the Section 1983 section.  Plaintiffs have amended their Complaint to clarify that the State of Texas is not accused under Section 1983.  *See* Dkt. 14 at ¶ 40.  Notably, however, the State cannot claim sovereign immunity with respect to Plaintiffs' VRA claims.[1]

However, the remainder of the assertions by State Defendants in their Motion to Dismiss are flawed and should not be granted.  First, State Defendants incorrectly argue that there is a lack of standing because they are not responsible for State election laws – despite their statutory duty to enforce those laws.  Rather, they attempt to shift the blame to Williamson County.  As described below, the culpability of Williamson county officials does not abrogate the duties of state officials nor the harm their actions (and inaction) cause.

---

[1] Congress has abrogated the states' sovereign immunity for claims arising under the Voting Rights Act. *See, e.g., Mixon v. State of Ohio*, 193 F.3d 389, 398-99 (6th Cir. 1999); *Reaves v. United States DOJ, 355 F. Supp. 2d 510*, 515 (D.D.C. 2005) ("it is reasonable to conclude that Congress, in passing the Voting Rights Act, effected a valid abrogation of state sovereign immunity."); see also *City of Boerne v. Flores*, 521 U.S. 507, 518 (1997) (noting that the Supreme Court has "concluded that other measures protecting voting rights are within Congress' power to enforce the Fourteenth and Fifteenth Amendments, despite the burdens those measures placed on the States.").

State Defendants further seek to argue a lack of standing because certain other provisions of Texas law do comport with the VRA. They argue the offending law merely provides "additional assistance" to voters. Again, State Defendants' argument attempts to shift focus away from the actual state law that violates the VRA by highlighting other provisions that do not. The presence of another law that comports with the VRA is essentially irrelevant. State election laws are no doubt full of provisions that comply with the VRA. Yet, a flawed law remains a flawed law, no matter how many flaw*less* laws surround it. Plaintiffs' Complaint shows that Section 61.033 of the Texas Election Code ("the challenged provision") violates the VRA, and enforcement of this flawed law has harmed a Texas voter and will harm additional voters without intervention from this Court.

Next, State Defendants incorrectly argue that Plaintiff OCA-Houston is not entitled to organization standing. As described below, however, OCA-Houston meets the qualifications for both organization and associational standing in this matter. Lastly, State Defendants re-cast the same arguments set forth above as failing to state a claim. These assertions fail for the same reasons that they failed to establish a lack of standing.

Plaintiffs' Complaint makes all necessary allegations to sustain the causes of action presently in issue (i.e., all claims originally asserted in the original Complaint, except for the § 1983 claim against the State of Texas). Accordingly, this Court should deny State Defendants' Motion.

## II.   LEGAL STANDARDS

A complaint is subject to dismissal under Rule 12(b)(6) if it fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). As the Fifth Circuit has noted, "[a] motion to dismiss under rule 12(b)(6) is viewed with disfavor and is rarely granted." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citations and internal quotation marks

omitted). In deciding a motion to dismiss, this Court must accept all well-pleaded facts as true, viewing those facts in the light most favorable to the plaintiff. *Johnson v. Teva Pharm. USA, Inc.*, 758 F.3d 605, 614 (5th Cir. 2014) (citation omitted); *Rankin v. City of Wichita Falls*, 762 F.2d 444, 446 (5th Cir. 1985). A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff meets this standard when he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

A complaint is subject to dismissal under Rule 12(b)(1) if the plaintiff fails to demonstrate proper subject matter jurisdiction. *See* Fed.R.Civ.P. 12(b)(1). "A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6)." *Benton v. U.S.*, 960 F.2d 19, 21 (5th Cir. 1992). Article III of the Constitution limits the jurisdiction of federal courts to actual cases and controversies. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). To meet the standing requirement "the plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). To satisfy the injury-in-fact prong, a plaintiff must demonstrate a violation of a legally protected interest that is "(a)

concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (1992) (citations and internal quotation marks omitted).

### III.   ARGUMENT

#### A.      Plaintiffs Have Standing to Sue State Defendants

The Complaint sets forth sufficient factual allegations to establish an injury-in-fact and trace the injury to the actions of State Defendants, as is required by the Article III standing analysis under *Lujan*.

##### 1.      The Secretary of State is a Proper Party in this Case

State Defendants first argument against standing is essentially an attempt to "pass the buck" for state law to Williamson County officials.  Although county officials are also to blame, the complaint clearly demonstrated that the injury-in-fact in this case is "fairly traceable" to State Defendants' conduct.  Specifically, the Complaint (and now the Amended Complaint) details how the challenged provision is enforced, such as in the specific example of Ms. Das, to deny eligible voters their rights affirmatively secured under Section 208 of the VRA ("Section 208") to receive necessary assistance from any person of their choice, other than their employers or union officials.  *See* Dkt. 14 at ¶¶ 3 and 18-29.  The Complaint also notes that Defendant Secretary of State Carlos Cascos, in his official capacity, serves as the Chief Election Officer of Texas, and is therefore responsible for administering the Texas Election Code.  *See Id*. at ¶ 13 and 14.  As such, Defendant Casco's failure to instruct voting officials to comply with their legal obligations under Section 208 of the VRA has undoubtedly caused harm to Plaintiffs.  *See Id*. at ¶ 14.

In addition, State Defendants' assertion that the Secretary of State has no legal obligation to properly advise and instruct local election official is simply incorrect.  Although the State Defendants are correct that Tex. Elec. Code Ann. Section 31.005(a) makes the "Protective of

Voting Rights" a permissive function for the Secretary of State, Section 31.003 and 31.004 are not.

Section 31.003 states that:

The secretary of state **shall** obtain and maintain uniformity in the application, operation, and interpretation of this code and of the **election laws outside this code**.   In performing this duty, the secretary **shall** prepare detailed and comprehensive written directives and instructions relating to and based on this code and **the election laws outside this code**.   The secretary **shall** distribute these materials to the appropriate state and local authorities having duties in the administration of these laws.

Section 31.004 states that "The secretary of state **shall** assist and advise all election authorities with regard to the application, operation, and interpretation of this code and of the election laws outside this code."

Defendant Secretary of State, Carlos Cascos, (the "Secretary of State") is alleged to have failed "to instruct voting officials to comply with their legal obligations under Section 208," which falls squarely within the required provisions of the Election Code.   A claim against the Secretary of State is particularly viable here, where Defendant, in his official capacity as Secretary of State, is quite possibly the only elected official with the authority to implement the statewide injunctive relief requested by Plaintiffs.[2]   In *Veasey v. Perry*, the District Court for the Southern District of Texas addressed the same issue of proper party defendants in a VRA case. No. 13-CV-00193, 2014 WL 3002413 (S.D. Tex. July 2014).   In *Veasey*, the Court held that both the Governor and the Director of the Texas Department of Public Safety were proper party defendants because they had "some connection with the enforcement of [the challenged law]." *Id*.   Similarly here, it is incontrovertible that the Secretary of State has "some connection" with

---

[2] In particular, as Secretary of State and chief elections officer, State Defendant has the power to implement a remedial plan to ensure that voters are permitted assistance from persons of their choice when they cast their ballots, in compliance with Section 208 of the VRA.   See Dkt. 14 at 8, PRAYER FOR RELIEF.

the enforcement of the challenged provision.  Indeed, the website for the Secretary of State confirms that the Secretary's Elections Division "provides assistance and advice to election officials on the proper conduct of elections," which includes "legal interpretations of election laws to election officials."   Attached Exhibit 1.   Thus, the argument set forth in State Defendants' Motion suggesting that the Secretary of State is without power to take the complaint of action is completely unsupported.  *See* Dkt. 11 at 9.

Lastly, to the extent, that there is any lack of clarity regarding State Defendants' legal responsibility for the previous harm and expected future harm to Plaintiffs, Plaintiffs have amended their complaint to specifically identify these legal provisions and specifically identify that Plaintiffs were injured by the actions of the State Defendants in violation of them.  *See* Dkt. 14 at ¶¶ 7-16.

### 2.    Other Provisions in Compliance with VRA Also Do Not Defeat Standing

The Motion to Dismiss further argues that Plaintiffs lack standing to sue State Defendants because the challenged provision comports with the VRA because other sections of law (namely, §§ 64.001 and 64.032) comply with the VRA.   Here, State Defendants appear to confuse the issues, as this assertion addresses the merits of the claim, not standing.  "The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated."  *Flast v. Cohen*, 392 U.S. 83, 99 (1968).  As State Defendants note in the Motion, the issue in a 12(b)(1) standing inquiry is whether the court lacks the statutory or constitutional power to adjudicate the case.  *See* Dkt. 11 at 6 (quoting *Higgins v. Tex. Dep't. of State Health Svcs.*, 801 F. Supp. 2d 541, 547 (W.D. Tex. 2011)).  It is unclear how State Defendants' argument regarding the propriety of the challenged provision affects the statutory or constitutional power of this Court.

In any event, State Defendants' argument against the merits of Plaintiffs' claim are also flawed.  In particular, State Defendants incorrectly argue that the challenged provision "offer[s] additional assistance to voters beyond the minimum requirements of the Voting Rights Act."  *Id.* at 12.  While it may be true that some parts of the challenged provision of the Texas Election Code do offer certain additional assistance beyond the VRA, other parts of the challenged provision directly conflict with the VRA.  *See* Dkt. 14 at ¶¶ 2, 3 and 18-23.  To be clear, Plaintiffs' complaint does not challenge the "additional assistance" provided by the code – it only challenges the part that imposes an election rule inconsistent with the VRA.  The existence of another provision that comports with the VRA does not absolve the harm caused by provisions that do not.  Essentially, the current regime as promulgated and enforced by State Defendants creates a "secret password" to rights under the VRA.  A voter that knows to call their interpreter an "assistor" rather than an "interpreter," receives the full protection of the VRA.  A voter that is not aware of the "password" and uses the more common description (as in the case of Plaintiff Das) is deprived rights.  The VRA, however, plays no such games with language, and does not require that a voter use, much less know, the word "assistor" to receive the protections of the law.  It is tragically ironic that the State Defendants suggest that Limited English Proficiency voters are not harmed because they would have been allowed an interpreter if they had simply known to use the very uncommon English word "assistor."

For at least these reasons, Plaintiffs have clearly demonstrated that standing is proper by alleging sufficient facts regarding the existence of an injury-in-fact that was caused by State Defendants.

### 3.   The Harm to Plaintiffs is Traceable to the State Defendants' Conduct

As described above, the harm to Plaintiffs is directly traceable to the State Defendants promulgation and enforcement of a flawed election law.  The State Defendants have an obligation to advise state election officials, such as those in Williamson County, yet argue that the harm caused by a county's compliance with State instructions is not traceable to the State. This argument goes beyond "passing the buck" in seeking to blame the counties for doing what the State told them to do.

While the responsibility of the State Defendants was sufficiently pled in the original complaint, Plaintiffs have provided specific examples of the "traceable" activities of the State Defendants in the Amended Complaint.  For example, ¶ 14 of the Amended Complaint makes reference to the Handbook for Election Judges and Clerks, a publication promulgated by the Secretary of State for use by "All Political Subdivisions" in the State of Texas in 2014.  This handbook is available on the Secretary of State website[3] where it is also listed as being sent via email to "County Clerks, Elections Administrators, Cities, Schools and Other Political Subdivisions."  The Secretary of State also provides on-line training that "mirrors" its Handbook. Importantly, Page 34 of this State Election Handbook includes a section on "Using English and Interpreters."  This section expressly instructs Texas voting officials to only allow interpreters that are "a registered voter of the county."  It is simply not credible for the State Defendants to claim that an injury caused by a poll worker following instructions sent to that poll worker by the Secretary of State and reinforced by election training designed and promulgated by the Secretary of State is not traceable to the Secretary of State.

---

[3] http://sos.state.tx.us/elections/onlinepollworker.shtml (accessed September 14, 2015).

### 4.     OCA-Houston Has Organizational Standing.

The State Defendants' arguments that Plaintiff OCA-Houston lacks standing are similarly flawed.  An organization, like an individual, can establish standing to sue on its own behalf by demonstrating the *Lujan* requirements.  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982).  Article III organizational standing is established by a showing of "concrete and demonstrable injury to the organization's activities," such as a "drain on the organization's resources" or "perceptibl[e] impair[ment]" of the organization's ability to fulfill its mission.  *Id.* Importantly, at the pleading stage, an organization need only broadly allege such an injury.  Dkt. 40 at 7-8, *American Civil Rights Union v. Tax Assor-Collector Cindy Martinez-Rivera*, No. 2:14-CV-00026 (W.D. Tex. March, 2015) (citing *Havens Realty*, 455 U.S. at 379).  As noted by Judge Alia Moses, in *Havens Realty*, the Supreme Court held that the plaintiff-organization had sufficiently alleged standing based merely upon a short description in the complaint, stating:

> Plaintiff HOME has been frustrated by defendants' racial steering practices in its efforts to assist equal access to housing through counseling and other referral services.  Plaintiff HOME has had to devote significant resources to identify and counteract the defendant's *[sic]* racially discriminatory steering practices." *Id.*[4]

---

[4] *See also Ass'n of Comm. Orgs. For Reform Now ("ACORN") v. Fowler,* 178 F.3d 350, 356 (5th Cir. 1999) (on summary judgment, holding that the organizational plaintiff had standing to challenge Louisiana's alleged NVRA violations based on assertion that "it has expended definite resources counteracting the effects of Louisiana's alleged failure to implement" the NVRA, but finding no standing on other claims where facts showed expenditures not traceable to alleged NVRA violation); *Harkless v. Brunner*, 545 F.3d 445, 458–59 (6th Cir. 2008) (holding that district court improperly dismissed complaint and improperly denied leave to amend where the organizational plaintiff alleged (in a proposed amended complaint) that it "would not have expended funds on voter registration activities outside [public assistance] offices but for defendants' . . . violations" of the National Voter Registration Act ("NVRA")); *Florida State Conference of NAACP v. Browning*, 522 F.3d 1153, 1164–66 (11th Cir. 2008) (NAACP and other organizations had organizational standing because they were forced to divert resources from registering voters and election-day activities to addressing problems experienced by registration applicants due to Florida's new registration procedures); *Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007) (state political party had organizational standing because Indiana's new voter identification law compelled "the party to devote resources to getting to the polls those of its supporters who would otherwise be discouraged by the new law

Of course, as State Defendants have noted, [n]ot every diversion of resources to counteract the defendant's conduct . . . establishes an injury in fact." *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 238 (5th Cir. 2010).  So called "self-inflicted injuries" cannot be used to establish standing because they are not fairly traceable to a defendant's conduct.  *ACORN*, 178 F.3d at 358.  So, for example, resources expended in pursuit of litigation, including those spent compiling statistical evidence, do not give rise to organizational standing.  *Id*. at 358.  In stark contrast to the self-inflicted injuries referenced by State Defendants from *NAACP*, OCA has adequately pled injury to its own organizational interests.  As set forth in the Complaint, OCA is dedicated to the mission of advocating for, protecting and advancing the rights of Chinese Americans and Asian Pacific Americans.  *See* Dkt. 14 at ¶ 9.  As part of its mission, OCA promotes civic participation among Asian Americans, including by advocating voter registration and educating its members about the voting process.  *See Id*.  Defendant OCA has also pled that the challenged provision and its enforcement by State Defendants is causing and will continue to cause OCA to divert its limited funds and other resources to educate its members and other Asian American voters on how to vote – including instructions on requirements for interpreters of voters' choice.  *See Id*. at ¶ 10.  These expenditures, which unlike the *NAACP* case cited by State Defendants have nothing to do with litigation, are directly tied to the challenged provision and its violation of the VRA. For at least these reasons, the Complaint undoubtedly provides a basis for organizational standing of Defendant OCA.

---

from bothering to vote"), aff'd. 553 U.S. 181, 189 n.7 (2008); *League of United Latin American Citizens (LULAC) of Wisconsin, Inc. v. Deninger*, No. 12-C-0185, 2013WL 5230795 (E.D.Wis. Sept. 17, 2013) (after discovery, finding that expenditures to get-out-the-vote gave organizations Article III standing under Section 2 to challenge voter identification law).

PLAINTIFFS' RESPONSE TO MOTION TO DISMISS                                   Page 10

### 5.        OCA-Houston Has Associational Standing.

In addition to its organizational standing, OCA has standing, as an association, to assert the rights of its members.  *See Warth v. Seldin*, 422 U.S. 490, 511 (1975) ("[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members"). Associational standing requires showing: (1) the association's members have standing to sue in their own right; (2) the interests at issue are germane to the association's purpose; and (3) the participation of individual members in the lawsuit is not required. *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550-51 (5th Cir. 2010) (citing *Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).   "The first prong requires that at least one member of the association have standing to sue in his or her own right." *National Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 191 (5th Cir. 2012).  As noted in the Amended Complaint, Greater Houston has approximately 100 members in its chapter, many of whom are limited English proficient.  *See* Dkt. 14 at ¶ 9.   State Defendants' conduct subjects these members of OCA to harm by limiting their choice of an interpreter under Section 208 based on the interpreter's county of residence.  *See id.* at ¶ 10. Indeed, many of OCA's members will not be able to effectively or fully participate in the voting process without access to interpreters of their choice.  *See id.* at ¶ 10.  Thus, each has standing to sue in their own right, and the first prong is met.  Regarding the second prong, the interests at issue in the present case – namely, enforcement of the VRA and its protection of the right to vote and have an interpreter of one's choice – are clearly germane to OCA's mission of "advocating for and protecting and advancing the rights of Chinese Americans and Asian Pacific Americans." *Id.* at ¶ 9.  Finally, in consideration of the third prong of the association standing test, the claims asserted and relief requested by Plaintiffs would not require participation by the individual members of OCA.   Each member in need of an interpreter is similarly injured, and the

declaratory and injunctive relief sought by the OCA will address those injuries.  For at least these reasons, the Complaint provides a basis for associational standing of Defendant OCA.

**B.      Plaintiffs Have Stated a Claim For Relief**

State Defendants' assertions that Plaintiffs have failed to state a claim upon which relief can be granted are essentially restatements of their assertions of lack of standing and fail for at least the same reasons.  In particular, and as outlined above, Texas Election Code Section 61.033 does indeed violate the provisions of the VRA.  The existence of other provisions of the Code that comply with the VRA does not eliminate the harm caused by the provisions which deprive voters of the protections of the Act and thus do not comply.  Similarly, as noted above, the State Defendants attempts to shift the blame to the county officials lack merit.  The relief requested by Plaintiffs is directly traceable to the actions of the State Defendants.  In both cases, the relief sought by Plaintiffs, namely the declaratory judgment and injunctive relief, are proper forms of relief that this Court is empowered to grant and would resolve the harm caused by State Defendants actions.  Accordingly, Plaintiffs have clearly set forth a claim upon which relief can be granted and State Defendants motion under FRCP 12(b)(6) should be denied.

## IV.   <u>CONCLUSION</u>

For at least the foregoing reasons, the Court should deny State Defendants' Motion to Dismiss in every regard, except for the Section 1983 claim against the State of Texas.

Dated: September 21, 2015

Respectfully submitted,

**FISH & RICHARDSON P.C.**

By: */s/ David M. Hoffman*
David M. Hoffman
Texas Bar No. 24046084
hoffman@fr.com
One Congress Plaza, Suite 810
111 Congress Avenue
Austin, TX 78701
Telephone: 512-472-5070
Facsimile: 512-320-8935

**Asian American Legal Defense and
Education Fund ("AALDEF")**

Jerry Vattamala*
99 Hudson Street, 12th Floor
New York, NY 10013
Telephone: 212.966.5932
Facsimile: 212.966.4303
jvattamala@aaldef.org

**ATTORNEYS FOR PLAINTIFFS
OCA – GREATER HOUSTON and
MALLIKA DAS**

* Admitted Pro Hac Vice

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document has been electronically filed on September 21, 2015, and served on opposing counsel who are registered as filing users of the CM/ECF system pursuant to Local Rule 5(b)(1).

By:  */s/ David M. Hoffman* _____
      David M. Hoffman