UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| OCA – GREATER HOUSTON and | § | |
| MALLIKA DAS, | § | |
|     *Plaintiffs*, | § | |
| | § | Civil Action No. 1:15-cv-00679-RP |
| v. | § | |
| | § | |
| STATE OF TEXAS, et al., | § | |
|     *Defendants*. | § | |

**DEFENDANTS STATE OF TEXAS AND CARLOS CASCOS'S
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ANGELA V. COLMENERO
Chief - General Litigation Division

LAURA A. BARBOUR
Texas Bar No. 24069336
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 475-4099
FAX:  (512) 320-0667
laura.barbour@texasattorneygeneral.gov

**ATTORNEYS FOR STATE DEFENDANTS**

# TABLE OF CONTENTS

Table of Authorities.................................................................................................................ii

I.   Introduction and Facts.....................................................................................................1

II.  Argument and Authorities................................................................................................3

   A.  Standard of Review. ......................................................................................................3

   B.  Plaintiffs Lack Standing to Sue the State Defendants. ...............................................4

      1.  Plaintiffs Have Failed to Show the Existence of an Injury-in-Fact
          that Was Caused by the State Defendants...........................................................4

         a.  The Secretary of State Does Not Have a Duty to Involve Himself
             in Every Election-Related Matter. ................................................................5

         b.  Texas Law Comports with the Voting Rights Act. .......................................6

         c.  Plaintiffs Fail to Trace Their Alleged Injury to the State
             Defendants' Conduct. ...................................................................................11

      2.  OCA-Greater Houston Is Not Entitled to Third-Party Standing..................12

         a.  OCA-Greater Houston Fails to Allege or Demonstrate that
             Limited-English Proficient Voters Will Encounter "Hindrances"
             to Suing to Advance Their Own Rights......................................................13

         b.  OCA-Greater Houston Does Not Meet the Criteria for
             Organizational Standing. .............................................................................13

         c.  OCA-Greater Houston Is Not Entitled to Associational Standing.........15

   C.  Plaintiffs Fail to State a Claim for Relief Against the State Defendants. ................18

      1.  The Texas Election Code Does Not Conflict with the Voting Rights
          Act....................................................................................................................18

      2.  The State Defendants Did Not Deprive Mrs. Das of the Assistor of
          Her Choice. ....................................................................................................18

III. Conclusion .....................................................................................................................19

   CERTIFICATE OF SERVICE ........................................................................................21

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ........................................ 4

*Ass'n of American Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547
    (5th Cir. 2010) ......................................................................................................................... 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ...................... 3

*Friends for Am. Free Enter. Ass'n v. Wal-Mart Stores, Inc.*, 284 F.3d 575 (5th Cir. 2002) ........ 16

*Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982)........... 13

*Higgins v. Tex. Dep't. of State Health Svcs.*, 801 F. Supp. 2d 541 (W.D. Tex. 2011) ...................... 3

*Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006 (5th Cir. 1998) ....... 3

*Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333 (1977) ............................................................ 15

*In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007)..................................................... 3

*Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004)......................................................................... 12, 13

*La. ACORN Fair Hous. v. LeBlanc*, 211 F.3d 298 (5th Cir. 2000) ...................................................... 14

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377 (2014).............. 4, 6, 11, 12

*Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421 (5th Cir. 1997) .................................................. 6

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)............................................................... 4, 16

*Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004) ................ 3

*NAACP v. City of Kyle, Tex.*, 626 F.3d 233 (5th Cir. 2010)................................................. 13, 14, 15

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001)........................................................................... 4

*Plotkin v. IP Axess, Inc.*, 407 F.3d 690 (5th Cir. 2005)................................................................... 4

*Raines v. Byrd*, 521 U.S. 11 (1997) ................................................................................................ 4

*Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001) .............................................................. 3

*Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315 (5th Cir. 2002)......................................................... 4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) ............................................... 3

*Tex. Peace Officers Ass'n v. City of Galveston*, 944 F.Supp. 562 (S.D. Tex. 1996) ...................... 16

*Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061 (5th Cir. 1994)...................................................... 4

*Voting for Am., Inc. v. Steen*, 732 F.3d 382 (5th Cir. 2013) ............................................................ 18

*Warth v. Seldin*, 422 U.S. 490 (1975) ................................................................................... 12, 13

*Wyeth v. Levine*, 555 U.S. 555 (2009) ........................................................................................ 18

**Statutes**

42 U.S.C. § 1973aa-6 .................................................................................................. 2

52 U.S.C. § 10503(c) ................................................................................................ 19

52 U.S.C.A. § 10508 ............................................................................................... 2, 9

Tex. Elec. Code Ann. § 31.005(a) .............................................................................. 7

Tex. Elec. Code Ann. § 61.032 ................................................................................ 10

Tex. Elec. Code Ann. § 61.033 ............................................................................... 1, 2

Tex. Elec. Code Ann. § 61.034 .................................................................................. 2

Tex. Elec. Code Ann. § 64.031 ............................................................................... 1, 8

Tex. Elec. Code Ann. § 64.032 .......................................................................... passim

Tex. Elec. Code Ann. § 64.0321 ................................................................................ 1

**Rules**

Fed. R. Civ. P. 12(b)(1) .............................................................................................. 1

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 1, 3

Defendants State of Texas and Carlos Cascos, in his official capacity as Secretary of State of Texas ("Secretary of State," and, collectively, the "State Defendants"), file this motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), and respectfully request the Court to dismiss OCA-Greater Houston's and Mallika Das's (collectively, "Plaintiffs") claims against the State Defendants.

## I.  Introduction and Facts

This case arises from an alleged miscommunication between a voter, her son, and an election officer.  Essentially, Plaintiffs argue that Mrs. Mallika Das, who has limited English proficiency, attempted to vote in Williamson County and asked that her son, who is registered to vote in Travis County, help her read and mark the ballot.  (Dkt. 14 ¶¶ 24-27.) Chapter 64 of the Texas Election Code allows a voter the "assistor" of her choice (subject to limitations not applicable here) to "(1) read[ ]  the ballot to the voter; (2) direct[ ] the voter to read the ballot; (3) mark[ ] the voter's ballot; or (4) direct[ ] the voter to mark the ballot," if she is unable to read and mark a ballot due to "an inability to read the language in which the ballot is written."  Tex. Elec. Code Ann. §§ 64.031; 64.032; 64.0321.  Chapter 61 of the Texas Election Code also allows a voter the "interpreter" of her choice in order to communicate with an election officer if "an election officer who attempts to communicate with the voter does not understand the language used by the voter . . . ", so long as that interpreter is registered in the county in which the voter resides.  Tex. Elec. Code Ann. §§ 61.033 and 61.034.  Apparently construing Mrs. Das's request as a request for an interpreter under Chapter 61 of the Texas Election Code and not a request for an assistor under Chapter 64 of the Texas Election Code, the election officer refused to allow Mrs. Das's son to accompany her to the voting machine.  (Dkt. 14 ¶¶ 25-29.)

Plaintiffs seek to convert this local dispute into a preemption claim, arguing that Texas Election Code section 61.033 conflicts with section 208 of the Voting Rights Act of 1965.  52 U.S.C.A. § 10508 (formerly codified as 42 U.S.C. § 1973aa-6) ("Section 208"). Indeed, Plaintiffs ask the Court to, among other things:

- declare that Texas Election Code section 61.033 "violates and is inconsistent with the provisions of Section 208 of the Voting Rights Act;"

- enjoin Defendants from "engaging in any act or practice that denies the rights secured by Section 208 of the Voting Rights Act;" and

- require Defendants to "develop and implement a remedial plan to ensure that voters are permitted assistance form persons of their choice when they cast their ballots, in compliance with Section 208 of the Voting Rights Act."  (Dkt. 14, Prayer)

But Plaintiffs concede that Texas law comports with Section 208, noting that Texas Election Code section 64.032 "substantially mirror[s]" Section 208.  (Dkt. 14 ¶ 20.)

Noticeably absent from Plaintiffs' Amended Complaint are any allegations tracing the conduct of the State Defendants to Plaintiffs' alleged injuries.  Plaintiffs vaguely complain that the Secretary of State failed to ensure that local officials followed Texas law, but Plaintiffs fail to cite any authority suggesting that the Secretary of State has a duty to involve himself in every local election-related dispute.  (Dkt. 14 ¶¶ 13-14.)  Plaintiffs also complain about the summary of Texas election laws listed on the Secretary of State's website and the Handbook for Election Judges and Clerks but fail to show how the State Defendants violated the Voting Rights Act by summarizing valid provisions of Texas law that do not conflict with the Voting Rights Act.  (Dkt. 14 ¶ 14.)  In short, Plaintiffs fail to connect the dots from Mrs. Das's difficulty voting in Williamson County to the State Defendants.  Plaintiffs' attempt to characterize an isolated, local miscommunication as a constitutional dispute should be rejected.

## II. Argument and Authorities

### A. Standard of Review.

"A motion to dismiss for lack of Article III standing is properly considered under Rule 12(b)(1)." *Higgins v. Tex. Dep't. of State Health Svcs.*, 801 F. Supp. 2d 541, 547 (W.D. Tex. 2011). Under Federal Rule of Civil Procedure 12(b)(1), a court "must dismiss a cause for lack of subject matter jurisdiction 'when the court lacks the statutory or constitutional power to adjudicate the case.'" *Id.* (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)). "[T]he plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In evaluating a Rule 12(b)(1) motion, the Court may consider: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts, plus the Court's resolution of disputed facts." *Higgins*, 801 F.Supp.2d at 547.

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss all or part of a complaint "for failure to state a claim upon which relief can be granted." A court may analyze the contents of the complaint and matters properly subject to judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "The court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir., 2004). A plaintiff must plead "specific facts, not mere conclusory allegations."

*Tuchman v. DSC Commc'ns, Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Indeed, courts should "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess, Inc*., 407 F.3d 690, 696 (5th Cir. 2005).

**B. Plaintiffs Lack Standing to Sue the State Defendants.**

> **1. Plaintiffs Have Failed to Show the Existence of an Injury-in-Fact that Was Caused by the State Defendants.**

Plaintiffs lack standing to assert their claims against the State Defendants. Under Article III of the United States Constitution, federal courts possess jurisdiction over only those disputes that constitute cases or controversies. *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Article III's limitation on judicial power and its underlying separation-of-powers principles have resulted in "a set of requirements that together make up the 'irreducible constitutional minimum of standing.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1386 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "The plaintiff must have suffered or be imminently threatened with a concrete and particularized "injury in fact" that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable decision." *Id.* "Failure to establish any of these three elements deprives the federal court of jurisdiction . . . ." *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002).

Article III standing is lacking where a plaintiff sues a state official who is without power to take the complained of action, and whose actions have not caused, or could not cause, any injury to her. *See Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir. 2001) (plaintiffs failed to establish Article III standing with respect to the governor, who had no authority to

enforce the allegedly unconstitutional statute.)  Although Plaintiffs have asserted claims against the Secretary of State, they have failed to offer any facts demonstrating how the Secretary of State caused them to suffer an injury-in-fact.  Instead, it appears that Plaintiffs have joined the Secretary of State as a defendant solely because he serves as the chief election officer of the State.  *See* Dkt. 14 ¶ 13 ("The Secretary of State serves as the Chief Election Officer of Texas and is responsible for administering the Texas Election Code.").

### a.   The Secretary of State Does Not Have a Duty to Involve Himself in Every Election-Related Matter.

Although the Secretary of State is the chief election officer, this title does not make him a necessary party in every election-related proceeding, and it especially does not make him a necessary party in this case where all of the facts alleged by Plaintiffs complain of actions taken by local election officers, not the Secretary of State. (Dkt. 14 ¶¶ 24-29.) Plaintiffs do not allege any facts suggesting that the State Defendants prohibited Mrs. Das from using the assistor of her choice.  Nor do Plaintiffs allege any facts suggesting that the State Defendants directed a third party to prohibit Mrs. Das from using the assistor of her choice.

Plaintiffs allege that the Secretary of State failed "to instruct voting officials to comply with their legal obligations under Section 208." (Dkt. 14 ¶ 14.) The Secretary of State's duties with respect to elections are found in Texas Election Code section 31.005, which states that "[t]he secretary of state *may* take appropriate action to protect the voting rights of the citizens of this state from abuse by the authorities administering the state's electoral processes." Tex. Elec. Code Ann. § 31.005(a) (Vernon 2010)(emphasis added).  That section further provides that the secretary *may* take action to correct any official conduct impeding a citizen's voting rights:

> [i]f the secretary determines that a person performing official functions in the administration of any part of the electoral processes is exercising the powers vested in that person in a manner that impedes the free exercise of a citizen's voting rights, the secretary *may* order the person to correct the offending conduct. If the person fails to comply, the secretary *may* seek enforcement of the order by a temporary restraining order or a writ of injunction or mandamus obtained through the attorney general.

*Id.* 31.005(b)(emphasis added).

In short, Texas Election Code section 31.005 "merely authoriz[es] the Secretary of State to take some action, but do[es] not confer on him a legal duty to take the contemplated action." *Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421 (5th Cir. 1997) (reversing the district court's determination that the Secretary of State had a duty to warrant that local election authorities followed the Americans with Disabilities Act).  Accordingly, Plaintiffs cannot establish that the Secretary of State caused them a cognizable injury by failing to act, and therefore lack standing to pursue their claims against the Secretary of State.  *See Lexmark*, 134 S.Ct. at 1386.

### b.  Texas Law Comports with the Voting Rights Act.

Nor can Plaintiffs establish standing based on Texas Election Code sections 31.003 and 31.004, which require the Secretary to prepare and distribute written directives and instructions related to election laws and to assist and advise election officials regarding election laws. Tex. Elec. Code. Ann. §§ 31.003 and 31.004.  Specifically, Plaintiffs complain that the Secretary of State's website and Handbook for Election Judges and Clerks summarize the various provisions of the Texas Election Code affecting voters who need help with reading or marking the ballot or with communicating with an election official.  (Dkt. 14 ¶¶ 14, 23 and Exhibits 1 and 2.)  Plaintiffs also complain that the State of Texas instructed county and local election officials to enforce the Texas Election Code's requirements for interpreters,

which Plaintiffs believe conflict with Section 208.  But Plaintiffs cannot establish standing because their claim that Texas law conflicts with the Voting Rights Act does not survive scrutiny, and, therefore, the Secretary of State cannot be said to have violated any duties under sections 31.003 and 31.004.

The Voting Rights Act allows a voter to receive assistance at the ballot box.  *See* 52 U.S.C.A. § 10508.  Texas Election Code chapter 64 deals with voting procedures generally, and section 64.031 details who may receive assistance at the ballot box:

> A voter is eligible to receive assistance in marking the ballot, as provided by this subchapter, if the voter cannot prepare the ballot because of:
>
> (1)     a physical disability that renders the voter unable to write or see; or
>
> (2)     an inability to read the language in which the ballot is written.

Tex. Elec. Code Ann. § 64.031.  Under Section 64.0321 of the Texas Election Code, "assisting a voter" for, among other things, purposes of Chapter 64 of the Texas Election Code, is defined as

> the following conduct by a person other than the voter *that occurs while the person is in the presence of the voter's ballot or carrier envelope*:
>
> (1)  reading the ballot to the voter;
>
> (2)  directing the voter to read the ballot;
>
> (3)  marking the voter's ballot;  or
>
> (4)  directing the voter to mark the ballot.

(emphasis added.)

Thus, by the statute's own terms, assistance under Chapter 64 of the Texas Election Code is limited to activity at the ballot box.  *See id.*

Sections 64.032(c) and (d) restrict who, other than an election officer (*i.e.*, an election judge or clerk), may provide the voter assistance:

(c)     On the voter's request, the voter may be assisted by any person selected by the voter other than the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs.

(d)     If assistance is provided by a person of the voter's choice, an election officer shall enter the person's name and address on the poll list beside the voter's name.

These provisions are in line with the Voting Rights Act, which states that:

Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union.

52 U.S.C.A. § 10508.

In short, both the Voting Rights Act and Texas law provide that if you are unable to read the ballot, you may be assisted by a person of your choice, so long as that person is not your employer, an agent of your employer, or an officer or agent of your union.  Indeed, Plaintiffs concede that "[r]elevant parts of [Texas Election Code section 64.032] substantially mirror Section 208" of the Voting Rights Act."  (Dkt. 14 ¶ 20.)

Texas law also permits voters to use interpreters in certain circumstances, pursuant to Texas Election Code chapter 61, subchapter B (the "Interpreter Subchapter").  The Interpreter Subchapter begins by requiring that election officers communicate only in English when "performing an official duty in connection with the election," unless the voter cannot communicate in English, in which case the "election officer may communicate with the voter in a language that the voter and officer understand."  Tex. Elec. Code § 61.031.

Section 61.032 provides a safety net in case the election official and voter cannot communicate in a common language:

> Sec. 61.032.  INTERPRETER PERMITTED.  If an election officer who attempts to communicate with a voter does not understand the language used by the voter, the voter may communicate through an interpreter selected by the voter.

*Id.* § 61.032.  The Interpreter Subchapter also allows the interpreter to "accompany the voter to the voting station for the purpose of translating the ballot to the voter." *Id.* § 61.034.  Taken together, the interpreter provisions allow a voter to receive help translating and communicating throughout the entire voting process—not just at the ballot box.

The Interpreter Subchapter restricts who may serve as an interpreter.  Any person who wishes to serve as an interpreter "must be a registered voter of the county in which the voter needing the interpreter resides" and, importantly, "must take" an oath administered by an election official, swearing or affirming to "correctly interpret and translate each question, answer, or statement addressed either to the voter by any election officer to an election officer by the voter." *Id.* §§ 61.033 and 61.035.  The danger here is obvious—if an election officer cannot understand the translation, the election officer cannot verify that the voter is being given accurate and proper instructions by the interpreter.

The oath requirement recognizes that the interpreter is essentially performing certain official duties at the direction of the election officer.  Indeed, election officers also take an oath before performing any duties as an election officer, swearing or affirming that they will faithfully perform their duties and that they will not attempt to influence a vote or voter. *Id.* § 62.003.  People providing assistance under chapter 64 are also required to take an oath similar to that of an election officer and swear or affirm that they will not attempt to influence a vote or voter, that they will confine their assistance to answering the voter's

questions and reading the ballot, and that they will prepare the ballot as the voter directs. *Id.* § 64.034.

The context of the interpreter provisions and the assistor provisions illustrate that each was intended to solve a different problem.  The assistor provisions, which mirror the Voting Rights Act, are aimed only at ballot-box activities—*i.e.*, helping voters read and mark the ballot.  *Id.* §§ 64.031; 64.0321.  The interpreter provisions, which do not reference corresponding Voting Rights Act provisions, are aimed at communication both in and out of the ballot box—*i.e.*, helping voters who do not speak English communicate with election officers and translate the ballot.  *Id.* § 61.031-34.

That the Interpreter Subchapter also allows an interpreter to translate the ballot does not impede a voter's right to receive assistance subject to the provisions of Chapter 61. Instead, the Interpreter Subchapter offers additional assistance to voters beyond the minimum requirements of the Voting Rights Act.  Accordingly, any restrictions on who may serve as an interpreter do not conflict with the Voting Rights Act.

Moreover, even if the Interpreter Subchapter were removed from the Texas Election Code, Texas law would still comply with Section 208 because the assistor provisions give Texas voters the help to which they are entitled under the Voting Rights Act.  Indeed, nothing prevents a single person from acting as both an interpreter and an assistor if the individual meets the qualifications in both Sections 64.032(b) and 64.032(c) of the Texas Election Code. Accordingly, the restrictions on who may serve as an interpreter cannot be read as limiting the assistance to which voters are entitled under the assistor provisions.

In short, the Secretary of State's summary of Texas election laws on its website and the Handbook for Election Judges and Clerk provide no support for Plaintiffs' theory that the

Secretary of State caused them to suffer injury.  Nor do Plaintiffs' conclusory allegations support Plaintiffs' theory that the State of Texas caused them to suffer injury.  Because Texas law comports with the Voting Rights Act, Plaintiffs cannot establish that, by summarizing valid provisions of Texas law, the State Defendants caused an injury in fact. Thus, Plaintiffs lack standing to pursue their claims against the State Defendants.  *See Lexmark*, 134 S.Ct. at 1386.

### c. Plaintiffs Fail to Trace Their Alleged Injury to the State Defendants' Conduct.

Plaintiffs essentially allege that a local election officer misclassified Mrs. Das's request for assistance at the ballot box as a more general request for an interpreter.  (Dkt. 14 ¶¶ 24-28.)  Even assuming that Mrs. Das has suffered injury, based on Plaintiffs' alleged facts, any such injury was not caused by the State Defendants:

- The State Defendants did not "fail[] to allow Mrs. Das the person of her choice to assist her by interpreting the ballot for her."  (Dkt. 14 ¶¶ 33, 38.)

- The State Defendants did not "fail[] to allow eligible voters to receive necessary assistance from any person of their choice, other than their employers or union officials . . . ."  (Dkt. 14 ¶¶ 34, 39.)

- The Secretary of State[1] did not "depriv[e] Plaintiffs of rights and privileges under Section 208 of the VRA under the color of Texas Election Code § 61.034 . . . ." (Dkt. 14 ¶ 40.)

Plaintiffs complain that the Secretary of State's website and the Handbook for Election Judges and Clerks instruct election officers to follow the both the assistor and interpreter provisions of the Texas Election Code. (Dkt. 14 ¶14.)  Plaintiffs' attempt to connect the dots between the State Defendants' conduct and Mrs. Das's alleged injury, however, hinges on whether the restrictions on who may serve as an interpreter somehow

---

[1] The Amended Complaint no longer alleges a § 1983 claim against the State of Texas.

limit a voter's right to receive assistance under section 64.031 of the Texas Election Code.  As discussed in the previous section, they do not.

Accordingly, Plaintiffs have failed to establish an injury-in-fact that is fairly traceable to any alleged actions of the State Defendants.  Plaintiffs therefore lack standing to bring this action against the State Defendants, and Plaintiffs' claims against the State Defendants should be dismissed.  *See Lexmark*, 134 S.Ct. at 1386.

### 2.  OCA-Greater Houston Is Not Entitled to Third-Party Standing.

OCA-Greater Houston's claims should be dismissed because they assert that the interpreter provisions violate *someone else's* right to vote—not their own right to vote.  They do not have standing to assert these third-party rights.

The Supreme Court has long held that a litigant "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (internal quotation marks and citation omitted).  Litigants may assert the rights of third parties only when: (1) the litigant has a "close relation to" the third party; *and* (2) there is some "hindrance" to the third party's ability to protect his or her own interests.  *See id.* at 130.  In addition, "[i]t is the responsibility of the complainant to *clearly allege facts demonstrating* that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Warth v. Seldin*, 422 U.S. 490, 518 (1975) (emphasis added).  OCA-Greater Houston has failed to allege facts demonstrating its standing to assert third-party rights, as required by *Warth*.

### a. OCA-Greater Houston Fails to Allege or Demonstrate that Limited-English Proficient Voters Will Encounter "Hindrances" to Suing to Advance Their Own Rights.

A plaintiff cannot sue to vindicate the rights of third parties unless he clearly alleges and demonstrates that the third-party rights-holders face a "hindrance" to protecting their own rights. *See Kowalski*, 543 U.S. at 130; *Warth*, 422 U.S. at 518. OCA-Greater Houston does not even allege that voters who need translation help face a "hindrance" to suing on their behalf. That alone warrants dismissal.

Even if OCA-Greater Houston tried, it would be unable to demonstrate that some "hindrance" affects the ability of individual voters to sue on their own behalf. Any voter who suffers alleged injury because of the interpreter provisions can sue to challenge them, and there is no shortage of capable and highly-motivated attorneys willing to provide representation free of charge. Mrs. Das claims to have been injured and has encountered no obstacles to suing on her own behalf. Her presence in this case belies any possible claim of "hindrance" by OCA-Greater Houston, who wants to assert rights belonging to others.

### b. OCA-Greater Houston Does Not Meet the Criteria for Organizational Standing.

"To have standing, an association or organization must satisfy the well-known requirements of *Lujan*." *NAACP v. City of Kyle, Tex.*, 626 F.3d 233, 237 (5th Cir. 2010). To establish injury-in-fact, an organization may show a "concrete and demonstrable" diversion of significant resources to counteract the alleged harmful conduct. *Id.* (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982)). Not all diversions of resources meet this standard, however. "The mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of

another party is insufficient to impart standing upon the organization." *La. ACORN Fair Hous. v. LeBlanc*, 211 F.3d 298, 305 (5th Cir. 2000).

In *NAACP v. City of Kyle*, the plaintiffs sued the City of Kyle alleging that changes in its zoning and subdivision ordinances violated the Fair Housing Act. 626 F.3d at 235. The court determined that the plaintiffs failed to establish an injury in fact because they failed to demonstrate that the diversion of resources "concretely and perceptibly impaired" their ability to carry out their purpose, noting that "[a]t most, they have established 'simply a setback to the organization's abstract social interests.'" *Id.* at 239. Specifically, the court observed that:

- the organization's activities to counteract the alleged harmful conduct ("which basically boil down to examining and communicating about developments in local zoning and subdivision ordinances) appeared no different from the organizations lobbying activities;

- the organization did not identify "any specific projects that [it] had to put on hold or otherwise curtail" to respond to the alleged harmful conduct; and

- the organization "only conjectured that the resources that [it] had devoted to the revised ordinances could have been spent on other unspecified [organizational] activities."

*Id.* at 238-39.

Here, Plaintiff OCA-Greater Houston alleges that it will have to "expend its limited funds and other resources to educate its members and other Asian American voters on how to vote—including instructions on requirements for interpreters of voters' choice—as well as provide other assistance in connection with upcoming elections." (Dkt. 14 ¶ 10.) This conclusory sentence is insufficient to meet the requirements of organizational standing because it fails to demonstrate that the diversion of resources "concretely and perceptibly impaired" their ability to carry out their purpose. *See NAACP*, 626 F.3d at 239.

OCA-Greater Houston's website advertises that it "[c]onducted educational seminars and programs on such topics as: . . . "Voter Awareness," and that it "[c]oordinated community service projects supporting efforts such as voter registration . . . ." *See* OCA-GREATER HOUSTON CHAPTER [www.ocahouston.org](www.ocahouston.org) (last accessed August 21, 2015) (attached as Exhibit A.)  OCA-Greater Houston fails to demonstrate how providing information to its members about voter assistance is any different from its regular educational activities. *See See NAACP,* 628 F.3d at 238-39.  Nor does OCA-Greater Houston identify any specific projects that it will have to put on hold or otherwise curtail to respond to the Secretary of State's alleged failure to instruct voting officials to comply with Texas and federal law. *See id.*  Lastly, OCA-Greater Houston merely conjectures that it will have to divert resources that could have been spent on other, unspecified activities. *See id.*

Because OCA-Greater Houston has failed to show a "concrete and demonstrable" diversion of significant resources, it fails to establish an injury in fact. *Id.* at 239.  Without an injury in fact, OCA-Greater Houston lacks standings to pursue its claims, and, accordingly, the Court should dismiss OCA-Greater Houston's causes of action.

### c. OCA-Greater Houston Is Not Entitled to Associational Standing.

OCA-Greater Houston cannot meet two of the three requirements to establish associational standing as articulated in *Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333 (1977).  Under *Hunt*, an association has standing to sue on behalf of its members when (1) its members have standing to sue in their own right; (2) the interests at issue are germane to the association's purpose; and (3) the participation of individual members in the lawsuit is not required. *Id.* at 343.  The State Defendants agree that the second prong is met here.

OCA-Greater Houston cannot, however, meet the first and third prongs of the *Hunt* test. First, OCA-Greater Houston's members do not have standing to sue the State Defendants in their own right. As discussed above, Plaintiffs (including Mrs. Das) have failed to show an injury in fact that is traceable to the State Defendants. Even if one election official in one precinct in one county caused Mrs. Das not to receive assistance at the ballot box from the person of her choice (which the State Defendants do not concede), that is not sufficient to support standing to sue the State Defendants.

In fact, Plaintiffs do not even allege that Mrs. Das is a member of OCA-Greater Houston, and, as such, OCA-Greater Houston cannot sue under an associational standing theory if the allegedly aggrieved party is not a member of the organization. *See Tex. Peace Officers Ass'n v. City of Galveston*, 944 F.Supp. 562, 564 (S.D. Tex. 1996) ("As it is, Plaintiffs fail to plead the most basic requirement of associational standing—that individual Plaintiffs are members of the organization."). Any other alleged injury to OCA-Greater Houston's members is therefore conjectural or hypothetical and thus fails to establish an injury in fact, as required for standing. *See Lujan*, 504 U.S. at 560.

Second, participation of OCA-Greater Houston's individual members would be required. The third prong is prudential and focuses on "matters of administrative convenience and efficiency" with regard to the claims asserted and the relief requested. *Ass'n of American Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 551 (5th Cir. 2010). Pleading for equitable relief does not automatically satisfy the third prong of the associational standing test. *See Friends for Am. Free Enter. Ass'n v. Wal-Mart Stores, Inc.*, 284 F.3d 575, 577 (5th Cir. 2002). Here, the experiences of OCA-Greater Houston's members who

attempt to use an assistor, an interpreter, or both when voting may vary greatly, including from one county to another county.

For example, Section 203 of the Voting Rights Act requires certain covered jurisdictions to provide, among other things, "forms, instructions, assistance, or other materials or information relating to the electoral process, including ballots . . . in the language of the applicable minority group as well as in the English language . . . ." 52 U.S.C. § 10503(c). The federal government identifies the covered jurisdictions and the language(s) required to be used in the covered jurisdictions. *See, e.g., id.*; www.justice.gov/crt/about-language-minority-voting-rights#coveredjuris; and www.justice.gov/crt/about/vot/sec_203/2011_notice.pdf. Harris County, where OCA-Greater Houston is located, is a covered language jurisdiction for four languages—English, Spanish, Vietnamese, and Chinese. Williamson County is only covered for two languages—English and Spanish. Accordingly, ballots in Harris County are written in Vietnamese and Chinese in addition to English and Spanish; in Williamson County, ballots are only written in English and Spanish. Thus, there are multiple issues of fact that impact whether the enforcement of the interpreter provisions prevent individual voters from receiving help at the ballot box from the person of their choice that prevent the efficiency sought by the third *Hunt* prong.

In short, OCA-Greater Houston has failed to establish associational standing, and, accordingly, the Court should dismiss OCA-Greater Houston's claims against the State Defendants.

C.   **Plaintiffs Fail to State a Claim for Relief Against the State Defendants.**

### 1.   The Texas Election Code Does Not Conflict with the Voting Rights Act.

Pursuant to the Election Clause of the United States Constitution, "Congress may enact laws that preempt state election laws concerning federal elections," thereby rendering those conflicting state laws inoperative. *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 399 (5th Cir. 2013). As such, state and federal election laws cannot directly conflict. *Id.* State and federal laws conflict when a person cannot comply with both simultaneously, such as where a state law requires something that a federal law directly prohibits. *See, e.g.*, *Wyeth v. Levine*, 555 U.S. 555, 567-68 (2009).

Here, there is no such conflict. As discussed above on pages 6-8, Texas law does not conflict with Section 208 of the Voting Rights Act. Indeed, as Plaintiffs concede, Texas Election Code section 64.032 "substantially mirror[s]" the Voting Rights Act. (Dkt. 14 ¶ 20.) And, election officers can comply with both the interpreter provisions of the Texas Election Code and the assistance provisions of both the Texas Election Code and the Voting Rights Act. Indeed, a voter who is unable to use an interpreter because that interpreter does not meet the necessary qualifications may still use an assistor of his choice to help him read and mark the ballot.

Accordingly, Plaintiffs fail to state a claim for relief under the either the Voting Rights Act or under § 1983, and no remedial plan is necessary.

### 2.   The State Defendants Did Not Deprive Mrs. Das of the Assistor of Her Choice.

Plaintiffs base both their Voting Rights Act claim (Dkt. 14 ¶¶ 30-34) and their § 1983 claim (Dkt. 14 ¶¶ 35-40) on the alleged misclassification of Mrs. Das's son as an "interpreter" rather than an "assistor" by a local election officer. (Dkt. 14 ¶¶ 24-28.) But, as discussed

---

above on pages 4-6, and 8, this conduct cannot be attributed to the State Defendants, nor do the State Defendants have a duty to get involved in every election-related dispute.  Moreover, because the interpreter provisions do not conflict with the Voting Rights Act, the State Defendants have properly and adequately instructed election officials regarding applicable election laws.  Accordingly, Plaintiffs fail to state a claim for relief under the Voting Rights Act or under § 1983.

### III. Conclusion

For the foregoing reasons, the Court should GRANT the instant motion and dismiss with prejudice Plaintiffs' claims against the State Defendants in their entirety.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ANGELA V. COLMENERO
Chief - General Litigation Division

*/s/ Laura A. Barbour*
LAURA A. BARBOUR
Texas Bar No. 24069336
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 475-4099
FAX:  (512) 320-0667
laura.barbour@texasattorneygeneral.gov

**ATTORNEYS FOR STATE DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been sent by electronic notification through ECF by the United States District Court, Western District of Texas, Austin Division, on October 5, 2015 to:

David M. Hoffman
FISH & RICHARDSON, P.C.
111 Congress Avenue, Suite 810
Austin, Texas 78701

*Attorney for Plaintiffs*

Jerry Vattamala
Asian American Legal Defense and Education Fund
99 Hudson Street
New York, New York 10013

*Attorney for Plaintiffs*

Henry W. Prejean
Assistant County Attorney
Williamson County Attorney's Office
405 Martin Luther King Street, Box 7
Georgetown, Texas 78626

*Attorney for Williamson County*

*/s/ Laura A. Barbour*
LAURA A. BARBOUR
Assistant Attorney General