IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| OCA – GREATER HOUSTON, et al., | |
| Plaintiffs, | |
| v. | CIVIL ACTION NO. 1:15-cv-00679-RP |
| STATE OF TEXAS, et al., | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS STATE OF TEXAS AND TEXAS SECRETARY OF STATE CARLOS CASCOS'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

# TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................1

II.     LEGAL STANDARDS ........................................................................................3

III.    ARGUMENT ......................................................................................................4

        A.  Plaintiffs Have Standing to Sue State Defendants ........................................4

            1.   The Secretary of State is a Proper Party in this Case...............................4

            2.   Other Provisions in Compliance with VRA Also Do Not Defeat
                 Standing ...........................................................................................7

            3.   The Harm to Plaintiffs is Traceable to the State Defendants' Conduct.................10

            4.   OCA-Greater Houston Has Standing.................................................11

        B.  Plaintiffs Have Stated a Claim For Relief..................................................16

IV.     CONCLUSION ................................................................................................16

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*American Civil Rights Union v. Tax Assor-Collector Cindy Martinez-Rivera*,
   No. 2:14-CV-00026 (W.D. Tex. March, 2015) ....................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................................................3

*Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*,
   627 F.3d 547 (5th Cir. 2010) ............................................................................................14

*Ass'n of Comm. Orgs. For Reform Now ("ACORN") v. Fowler*,
   178 F.3d 350 (5th Cir. 1999) .....................................................................................12, 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2).................................................................................................................3

*Benton v. U.S.*,
   960 F.2d 19 (5th Cir. 1992) ...............................................................................................4

*Collins v. Morgan Stanley Dean Witter*,
   224 F.3d 496 (5th Cir. 2000) .............................................................................................3

*Crawford v. Marion Cnty. Election Bd.*,
   472 F.3d 949 (7th Cir. 2007), aff'd. 553 U.S. 181 (2008)...............................................12

*Flast v. Cohen*,
   392 U.S. 83 (1968)..............................................................................................................7

*Florida State Conference of NAACP v. Browning*,
   522 F.3d 1153 (11th Cir. 2008) .......................................................................................12

*Harkless v. Brunner*,
   545 F.3d 445 (6th Cir. 2008) ...........................................................................................12

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982)....................................................................................................11, 12

*Higgins v. Tex. Dep't. of State Health Svcs.*,
   901 F. Supp. 2d 541 (W.D. Tex. 2011)..............................................................................7

*Hiunt v. Wash. St. Apple Adver. Comm'n*,
   432 U.S. 333 (1977)..........................................................................................................14

*Johnson v. Teva Pharm. USA, Inc.*,
   758 F.3d 605 (5th Cir. 2014) .............................................................................................3

*League of United Latin American Citizens (LULAC) of Wisconsin, Inc. v.
Deninger*,
No. 12-C-0185, 2013WL 5230795 (E.D.Wis. Sept. 17, 2013)................................12

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
134 S. Ct. 1377 (2014)..........................................................................4

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)..............................................................................4

*N.A.A.C.P. v. City of Kyle, Tex.*,
626 F.3d 233 (5th Cir. 2010)...............................................................13

*National Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, &
Explosives*,
700 F.3d 185 (5th Cir. 2012)...............................................................14

*Raines v. Byrd*,
521 U.S. 811 (1997)..............................................................................4

*Rankin v. City of Wichita Falls*,
762 F.2d 444 (5th Cir. 1985)...............................................................3

*Tex. Peace Officers Ass'n v. City of Galveston*,
944 F.Supp. 562 (S.D. Tex. 1996)......................................................14

*United States Parole Comm'n v. Geraghty*,
445 U.S. 388 (1980)..............................................................................4

*Veasy v. Perry*,
No. 13-CV-00193, 2014 WL 3002413 (S.D. Tex. July 2014)...............6

*Warth v. Seldin*,
543 U.S. 125 (2004).......................................................................11, 14

## Statutes

42 U.S.C. § 1973aa ...............................................................................8

42 U.S.C. § 1973aa-6 ...........................................................................1

## Other Authorities

Rule 12(b)(1)..........................................................................................3

Rule 12(b)(6)..........................................................................................3

## I.    <u>INTRODUCTION</u>

The Voting Rights Act of 1965 ("VRA") has protected potentially disenfranchised citizens at the polls for over 50 years.  Its purpose is to overcome legal barriers at the state and local levels that would otherwise inhibit full participation for all Americans in the democratic process.  S. Rep. No. 97-417 at 4.  In 1982, Congress added Section 208 to the VRA ("Section 208") to ensure "blind, disabled, or illiterate voters could receive assistance in a polling booth from a person of their own choosing[.]"  42 U.S.C. § 1973aa-6.  The addition of Section 208 was based on Congressional findings that citizens who either do not have written language ability or who are unable to read or write English proficiently are more susceptible to having their votes unduly influenced or manipulated, and thus are more likely to be discriminated against at the polls.  S. Rep. No. 97-417 at 62.  Indeed, "[c]ertain discrete groups of citizens are unable to exercise their rights to vote without obtaining assistance in voting including and within the voting booth."  *Id*.  Regarding the manner of providing such assistance, Congress stressed the importance of establishing the voter's freedom of choice in selecting an assistor, noting "voters may feel apprehensive about casting a ballot in the presence of, or may be misled by, someone other than a person of their own choice."  *Id*.  Thus, Congress concluded that the right to an assistor of the voter's choice is "the ***only way*** to assure meaningful voting assistance and to avoid possible intimidation or manipulation of the voter."  *Id* (emphasis added).  "[T]he legitimate right of any state to establish necessary election procedures [is] subject to the overriding principle that such procedures shall be designed to protect the rights of voters."  *Id*.  This action seeks injunctive relief directing State Defendants and all persons acting in concert with them not to deny voters who qualify for assistance under Section 208 an interpreter of their choice based on the interpreter's county of residence.  *See* Dkt. 14 at ¶ 4.

Plaintiffs have presented sufficient allegations to support meritorious claims against Defendants State of Texas and Texas Secretary of State, Carlos Cascos ("State Defendants") pursuant to both the VRA and 42 U.S.C. § 1983. The Motion to Dismiss ("the Motion" or "State Defendants' Motion") does not provide an adequate legal basis for this Court to dismiss these claims against State Defendants. The assertions by State Defendants in the Motion are flawed and should not be granted.

First, State Defendants incorrectly argue there is a lack of standing because they are not responsible for State election laws – despite their statutory duty to enforce those laws. Rather, they attempt to avoid the court's scrutiny by shifting blame to Williamson County, and more particularly, to local Williamson County election officers. As described below, the culpability of Williamson county officials does not abrogate the duties of state officials nor the harm their actions (and inaction) cause.

State Defendants further seek to argue a lack of standing because certain unchallenged provisions of Texas law do comport with the VRA. They argue the offending law merely provides "additional assistance" to voters. Again, State Defendants' argument attempts to shift focus away from the actual state law that violates the VRA by highlighting other provisions that do not. The presence of any other laws that comport with the VRA is essentially irrelevant to the present case. State election laws are no doubt full of provisions that comply with the VRA. Yet, a flawed law remains a flawed law, no matter how many flaw*less* laws surround it. Plaintiffs' Amended Complaint shows that Section 61.033 of the Texas Election Code ("the Challenged Provision") violates the VRA, and enforcement of this flawed law has harmed a Texas voter and will harm additional voters without intervention from this Court.

Next, State Defendants incorrectly argue Plaintiff OCA-Greater Houston ("OCA" or "Plaintiff OCA") is not entitled to third-party standing.  As described below, however, Plaintiff OCA meets the qualifications for both of organizational and associational standing.  Lastly, State Defendants re-cast the same arguments set forth above as failing to state a claim.  These assertions fail for the same reasons they failed to establish a lack of standing.

Plaintiffs' Amended Complaint makes all necessary allegations to sustain the causes of action presently in issue.  Accordingly, this Court should deny State Defendants' Motion.

## II.   <u>LEGAL STANDARDS</u>

A complaint is subject to dismissal under Rule 12(b)(6) if it fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).  As the Fifth Circuit has noted, "[a] motion to dismiss under rule 12(b)(6) is viewed with disfavor and is rarely granted." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citations and internal quotation marks omitted).  In deciding a motion to dismiss, this Court must accept all well-pleaded facts as true, viewing those facts in the light most favorable to the plaintiff.  *Johnson v. Teva Pharm. USA, Inc.*, 758 F.3d 605, 614 (5th Cir. 2014) (citation omitted); *Rankin v. City of Wichita Falls*, 762 F.2d 444, 446 (5th Cir. 1985).  A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff meets this standard when he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

A complaint is subject to dismissal under Rule 12(b)(1) if the plaintiff fails to demonstrate proper subject matter jurisdiction.  *See* Fed.R.Civ.P. 12(b)(1).  "A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule

12(b)(6)." *Benton v. U.S.*, 960 F.2d 19, 21 (5th Cir. 1992).  Article III of the Constitution limits the jurisdiction of federal courts to actual cases and controversies.  *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980).  "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  To meet the standing requirement, "the plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  To satisfy the injury-in-fact prong, a plaintiff must demonstrate a violation of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (1992) (citations and internal quotation marks omitted).  At the pleading stage, courts assume that specific standing allegations are subsumed under broad standing allegations. *See id.* at 561 (on a motion to dismiss, it is presumed that general allegations embrace those specific facts that are necessary to support the claim).

### III.   ARGUMENT

#### A.    Plaintiffs Have Standing to Sue State Defendants

The Amended Complaint sets forth sufficient factual allegations to establish an injury-in-fact and trace the injury to the actions of State Defendants, as is required by the Article III standing analysis under *Lujan*.

#### 1.    The Secretary of State is a Proper Party in this Case

State Defendants' first argument against standing is essentially an attempt to "pass the buck" for Plaintiffs' harm to county-level election officials.  The Motion essentially argues that

State Defendants are not proper parties in this dispute because Plaintiffs allege certain facts highlighting the culpability of Williamson County election officials.  Although county officials are also to blame, the Amended Complaint clearly demonstrates that the injury-in-fact in this case is "fairly traceable" to State Defendants' conduct.  Specifically, the Amended Complaint details how the Challenged Provision is enforced at the direction of State Defendants, such as in the specific example of Ms. Das, to deny eligible voters their rights affirmatively secured under Section 208 to receive necessary assistance from any person of their choice, other than their employers or union officials.  *See* Dkt. 14 at ¶¶ 3 and 18-29.  The Amended Complaint also notes that Defendant Secretary of State Carlos Cascos (the "Secretary of State"), in his official capacity, serves as the Chief Election Officer of Texas, and is therefore responsible for administering the Texas Election Code.  *See id*. at ¶ 13 and 14.  As such, the Secretary of State's failure to instruct voting officials to comply with their legal obligations under Section 208 of the VRA has undoubtedly caused harm to Plaintiffs.  *See id*. at ¶ 14.

While State Defendants correctly note that Tex. Elec. Code Ann. Section 31.005(a) makes the "Protection of Voting Rights" a permissive function for the Secretary of State, the Motion also concedes that Sections 31.003 and 31.004 are not permissive.  *See* Dkt. 21 at 10.

Section 31.003 states:

> The secretary of state ***shall*** obtain and maintain uniformity in the application, operation, and interpretation of this code and of the ***election laws outside this code***.  In performing this duty, the secretary ***shall*** prepare detailed and comprehensive written directives and instructions relating to and based on this code and ***the election laws outside this code***.  The secretary ***shall*** distribute these materials to the appropriate state and local authorities having duties in the administration of these laws.

Section 31.004 states: "The secretary of state ***shall*** assist and advise ***all election authorities*** with regard to the application, operation, and interpretation of this code ***and of the election laws***

*outside this code*" (emphasis added).   Thus, it is uncontroverted that Defendant Secretary of State has an express legal obligation to properly oversee Williamson County election officials with respect to the VRA.

Defendant Secretary of State is alleged to have failed "to instruct voting officials to comply with their legal obligations under Section 208," which, as discussed above, falls squarely within the required provisions of the Election Code.   A claim against the Secretary of State is particularly viable here, where Defendant, in his official capacity as Secretary of State, is quite possibly the only elected official with the authority to implement the statewide injunctive relief requested by Plaintiffs.[1]  In *Veasey v. Perry*, the District Court for the Southern District of Texas addressed the same issue of proper party defendants in a VRA case.   No. 13-CV-00193, 2014 WL 3002413 (S.D. Tex. July 2014).   In *Veasey*, the Court held that both the Governor and the Director of the Texas Department of Public Safety were proper party defendants because they had "some connection with the enforcement of [the challenged law]."   *Id.*   Similarly here, it is beyond dispute that the Secretary of State has "some connection" with the enforcement of the Challenged Provision.   Indeed, the website for the Secretary of State confirms the Secretary's Elections Division "provides assistance and advice to election officials on the proper conduct of elections," which includes "legal interpretations of election laws to election officials."   Attached Exhibit 1.   Thus, the argument set forth in State Defendants' Motion suggesting the Secretary of State is without power to take the complained of action is completely unsupported.   *See* Dkt. 21 at 4-5.

---

[1] In particular, as Secretary of State and chief elections officer, State Defendant has the power to implement a remedial plan to ensure that voters are permitted assistance from persons of their choice when they cast their ballots, in compliance with Section 208 of the VRA.   *See* Dkt. 14 at 8, "PRAYER FOR RELIEF."

### 2.  Other Provisions in Compliance with VRA Also Do Not Defeat Standing

The Motion to Dismiss further argues that Plaintiffs lack standing to sue State Defendants because Texas law allegedly comports with the VRA.  State Defendants support this argument by noting various unchallenged provisions of the Texas Election Code (namely, Sections 64.001 and 64.032) that comply with the VRA.  Here, State Defendants appear to confuse the issues, as this assertion addresses the merits of the claim, not standing.  "The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Flast v. Cohen*, 392 U.S. 83, 99 (1968).  As State Defendants note in the Motion, the issue in a 12(b)(1) standing inquiry is whether the court lacks the statutory or constitutional power to adjudicate the case.  *See* Dkt. 21 at 7 (quoting *Higgins v. Tex. Dep't. of State Health Svcs.*, 801 F. Supp. 2d 541, 547 (W.D. Tex. 2011)).  It is unclear how State Defendants' argument regarding the propriety of the Challenged Provision affects the statutory or constitutional power of this Court.

In any event, State Defendants' argument against the merits of Plaintiffs' claims are also flawed.  In particular, State Defendants incorrectly argue that the Challenged Provision "offer[s] additional assistance to voters beyond the minimum requirements of the Voting Rights Act." *Id.* at 12.  While it *may* be true that some parts of the Texas Election Code do offer certain additional assistance beyond the VRA[2], other parts directly conflict with the VRA.  *See* Dkt. 14 at ¶¶ 2, 3 and 18-23.  To be clear, Plaintiffs' Amended Complaint does not challenge any "additional assistance" which *may* be provided by the code – it only challenges the part (namely, Section 61.033) which imposes an election rule inconsistent with, and more restrictive than, the VRA

---

[2] Plaintiffs do not concede that any part of the Texas Election Code provides a broader scope of protection than the VRA.

with respect to the voter's choice of an assistor.  The existence of any other provisions that comport with the VRA does not absolve the harm caused by any provisions that do not.

Nonetheless, State Defendants' Motion incorrectly suggests Section 208 is limited to providing assistance "at the ballot box."  See Dkt. 21 at 11.  On the contrary, by its terms, Section 208 guarantees that "[a]ny voter who requires *assistance to vote* by reason of . . . inability to read or write may be given assistance by a person of the voter's choice."  42 U.S.C. § 1973aa (emphasis added).  The voter's choice of a person to provide assistance in the voting process is subject *only* to two restrictions – the chosen assistor cannot be (1) the voter's employee or an agent of that employer or (2) an officer or agent of the voter's union.  *See id.*[3] Yet, there is no suggestion in Section 208, or anywhere in the VRA, that the guarantee of voting assistance "by a person of the voter's choice" is limited to the ballot box alone.[4]  To be clear, the right to an assistor of the voter's choice under Section 208 clearly extends beyond the ballot box and embraces the entire voting process.[5]

Given that the VRA by its terms is undoubtedly *not* limited to only ballot box assistance, State Defendants' argument that Chapter 61, Subchapter B (the "Interpreter Subchapter") of the Texas Election Code "provides additional assistance to voters beyond the minimum requirements of the [VRA]" loses all force.  Dkt. 21 at 14.

---

[3] In fact, Congress recognized that even these restrictions may not be proper in certain situations, e.g., when voters must select assistance in a small community composed largely of language minorities.  *See* S. Rep. No. 97-417 at 63.

[4] While Plaintiffs' Amended Complaint notes specifically that "relevant parts" of Texas Election Code Section 64.0321 substantially mirror Section 208, this should not be taken as an admission that the Assistor Chapter and Section 208 are entirely commensurate in scope.

[5] As noted above, Congress was keenly aware of the fact that "[c]ertain discrete groups of citizens are unable to exercise their rights to vote without obtaining assistance in voting *including and within* the voting booth."  S. Rep. No. 97-417 at 62.

However, even under State Defendants argument, the motion to dismiss fails.  According to State Defendants, the Assistor Chapter of the Texas Election Code permits the voter to freely choose any person, other than their employers or union officials, to provide assistance, including translating services, *within the ballot box*, whereas the Challenged Provision of the Interpreter Subchapter restricts the voter's choice of an interpreter, serving throughout the entire voting process, to a person registered to vote in the same county where the voter resides.  Such a regime is still a violation of the VRA, because the voter is denied an "assistance by a person of the voter's choice" during the voting process.

Essentially, the current statutory regime as promulgated and enforced by State Defendants creates a "secret password" to rights under the VRA.  A voter that knows to call their interpreter an "assistor" rather than an "interpreter," receives the full protection of the VRA.  A voter that is not aware of the "password" and uses the more common description (as in the case of Plaintiff Das) is deprived rights.  Statewide and local laws enforced to strategically preclude participation in the election process are of the exact nature of harm that the VRA was enacted to extinguish.  Thus, the VRA plays no such games with language, and does not require that a voter use, much less know, the word "assistor" to receive the protections of the law.  It is tragically ironic that State Defendants suggest Limited English Proficiency voters are not harmed because they would have been allowed an interpreter if they had simply known to use the very uncommon English word "assistor."   In effect, this practice creates a restrictive barrier on the right to vote for LEP voters that could, in some cases, be more arduous to overcome than a test on English fluency.

### 3.     The Harm to Plaintiffs is Traceable to the State Defendants' Conduct

As described above, the harm to Plaintiffs is directly traceable to the State Defendants promulgation and enforcement of a flawed election law.  State Defendants have an obligation to advise state election officials, such as those in Williamson County, yet argue the harm caused by a county's compliance with State instructions is not traceable to the State.  This argument goes beyond merely "passing the buck" in seeking to blame the county for acting in accordance with the State's instructions.

The responsibility of the State Defendants is sufficiently pled in the Amended Complaint, which provides specific examples of the "traceable" activities of State Defendants.  For example, ¶ 14 of the Amended Complaint makes reference to the Handbook for Election Judges and Clerks, a publication promulgated by the Secretary of State for use by "All Political Subdivisions" in the State of Texas in 2014.  This handbook is available on the Secretary of State website [6] where it is also listed as being sent via email to "County Clerks, Elections Administrators, Cities, Schools and Other Political Subdivisions."  The Secretary of State also provides on-line training that "mirrors" its Handbook.  Importantly, Page 34 of this State Election Handbook includes a section on "Using English and Interpreters."  This section expressly instructs Texas voting officials to only allow interpreters that are "a registered voter of the county."  It is simply not credible for the State Defendants to claim that an injury caused by a poll worker following instructions sent to that poll worker by the Secretary of State and reinforced by election training designed and promulgated by the Secretary of State is not traceable to the Secretary of State.  Thus, the only tenable argument set forth in the Motion is that Plaintiffs have failed to "connect the dots" between State Defendants' conduct and the

---

[6] http://sos.state.tx.us/elections/onlinepollworker.shtml (accessed September 14, 2015).

alleged injury because Texas law comports with the VRA.  However, as discussed above, this is most certainly not the case.

### 4.   OCA-Greater Houston Has Standing

State Defendants' arguments that Plaintiff OCA lacks third-party standing are fundamentally flawed.  State Defendants' Motion cites *Kowalski v. Tesmer* for the well-known third-party standing proposition that a litigant generally must assert his own legal rights and interests.  However, it is also well known that organizations may have standing in either, or both of, a representative capacity and an individual capacity.  An organization can establish standing in an individual capacity when it asserts its own rights.  *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982).  Thus, organizational standing is entirely distinct from third-party standing.  Furthermore, the Supreme Court confirmed in *Warth v. Seldin*, a case also cited in State Defendants' Motion, that "[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members."  *See* 543 U.S. 125, 129 (2004).  Thus, associational standing is an exception to the general prohibition on third-party standing asserted in State Defendants' Motion.  As discussed below, the Amended Complaint alleges sufficient facts to establish that Plaintiff OCA has both organizational and associational standing.  As such, State Defendants' argument that third-party standing is lacking because the Amended Complaint fails to demonstrate that LEP voters will encounter "hindrances" to suing on their own behalf is without merit in the present case.

### a.   OCA-Greater Houston Has Organizational Standing.

An organization, like an individual, can establish standing to sue on its own behalf by demonstrating the *Lujan* requirements.  *Havens Realty,* 455 U.S. at 378–79.   Article III organizational standing is established by a showing of "concrete and demonstrable injury to the

organization's activities," such as a "drain on the organization's resources" or "perceptibl[e] impair[ment]" of the organization's ability to fulfill its mission.  *Id.*  Importantly, at the pleading stage, an organization need only broadly allege such an injury.  Dkt. 40 at 7-8, *American Civil Rights Union v. Tax Assor-Collector Cindy Martinez-Rivera*, No. 2:14-CV-00026 (W.D. Tex. March, 2015) (citing *Havens Realty*, 455 U.S. at 379).  As noted by Western District Judge Alia Moses, in *Havens Realty*, the Supreme Court held that the plaintiff-organization had sufficiently alleged standing based merely upon a short description in the complaint, stating:

> Plaintiff HOME has been frustrated by defendants' racial steering practices in its efforts to assist equal access to housing through counseling and other referral services.  Plaintiff HOME has had to devote significant resources to identify and counteract the defendant's *[sic]* racially discriminatory steering practices."  *Id.*[7]

---

[7] *See also Ass'n of Comm. Orgs. For Reform Now ("ACORN") v. Fowler,* 178 F.3d 350, 356 (5th Cir. 1999) (on summary judgment, holding that the organizational plaintiff had standing to challenge Louisiana's alleged NVRA violations based on assertion that "it has expended definite resources counteracting the effects of Louisiana's alleged failure to implement" the NVRA, but finding no standing on other claims where facts showed expenditures not traceable to alleged NVRA violation); *Harkless v. Brunner*, 545 F.3d 445, 458–59 (6th Cir. 2008) (holding that district court improperly dismissed complaint and improperly denied leave to amend where the organizational plaintiff alleged (in a proposed amended complaint) that it "would not have expended funds on voter registration activities outside [public assistance] offices but for defendants' . . . violations" of the National Voter Registration Act ("NVRA")); *Florida State Conference of NAACP v. Browning*, 522 F.3d 1153, 1164–66 (11th Cir. 2008) (NAACP and other organizations had organizational standing because they were forced to divert resources from registering voters and election-day activities to addressing problems experienced by registration applicants due to Florida's new registration procedures); *Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007) (state political party had organizational standing because Indiana's new voter identification law compelled "the party to devote resources to getting to the polls those of its supporters who would otherwise be discouraged by the new law from bothering to vote"), aff'd. 553 U.S. 181, 189 n.7 (2008); *League of United Latin American Citizens (LULAC) of Wisconsin, Inc. v. Deninger*, No. 12-C-0185, 2013WL 5230795 (E.D.Wis. Sept. 17, 2013) (after discovery, finding that expenditures to get-out-the-vote gave organizations Article III standing under Section 2 to challenge voter identification law).

Of course, as State Defendants have noted, [n]ot every diversion of resources to counteract the defendant's conduct . . . establishes an injury in fact." *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 238 (5th Cir. 2010).  So called "self-inflicted injuries" cannot be used to establish standing because they are not fairly traceable to a defendant's conduct.  *ACORN*, 178 F.3d at 358.  So, for example, resources expended in pursuit of litigation, including those spent compiling statistical evidence, do not give rise to organizational standing.  *Id*. at 358.  In stark contrast to the self-inflicted injuries referenced by State Defendants from *NAACP*, OCA has adequately pled injury to its actual organizational interests.  As set forth in the Amended Complaint, OCA is dedicated to the mission of advocating for, protecting and advancing the rights of Chinese Americans and Asian Pacific Americans.  *See* Dkt. 14 at ¶ 9.  As part of its mission, OCA promotes civic participation among Asian Americans, including by advocating voter registration and educating its members about the voting process.  *See id*.  Plaintiff OCA has also pled that the challenged provision and its enforcement by State Defendants is causing and will continue to cause OCA to divert its limited funds and other resources to educate its members and other Asian American voters on how to vote – including instructions on requirements for interpreters of voters' choice. *See id*. at ¶ 10.  These expenditures, which unlike the *NAACP* case cited by State Defendants have nothing to do with litigation, are directly tied to the challenged provision and its violation of the VRA.  State Defendants attempt to attack the adequacy and precision of Plaintiffs' allegations set forth in the Amended Complaint is without merit.  *See* Dkt. 21 at 18-19.  The fatal flaw in State Defendants' reasoning rests in the difference in procedural posture between *NAACP* and the current case.  In *NAACP*, the court's holding that plaintiffs lacked standing under an organizational theory was based on the entirety of the evidentiary record following a bench trial,

while the current case remains in its infancy at the pleading stage.  As noted above, at the pleading stage, an organization need only *broadly* allege injury.

For at least these reasons, the Amended Complaint undoubtedly provides a basis for organizational standing of Plaintiff OCA.

### b.          OCA-Greater Houston Has Associational Standing.

In addition to its organizational standing, Plaintiff OCA has standing, as an association, to assert the rights of its members.  *See Warth*, 422 U.S. at 511 ("[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members"). Associational standing requires showing: (1) the association's members have standing to sue in their own right; (2) the interests at issue are germane to the association's purpose; and (3) the participation of individual members in the lawsuit is not required.  *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550-51 (5th Cir. 2010) (citing *Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

"The first prong [merely] requires that at least one member of the association have standing to sue in his or her own right."  *National Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 191 (5th Cir. 2012).  State Defendants' attempt to argue that the first prong cannot be satisfied because Plaintiff OCA does not allege that Plaintiff Das is a member of OCA should be rejected.  *See* Dkt. 21 at 20.  The Motion supports this flawed argument by citing *Tex. Peace Officers*, in which the court found a failure to plead associational standing where the only injured parties were the individual plaintiffs, who were not alleged to be members of the organization.  *See Tex. Peace Officers Ass'n v. City of Galveston*, 944 F.Supp. 562, 563-64 (S.D. Tex. 1996).  Unlike *Tex. Peace Officers*, Plaintiffs' Amended Complaint plainly alleges injuries to the non-party members of OCA.  In particular, the

Amended Complaint notes that OCA has approximately 100 members in its chapter, many of whom are limited English proficient.  *See* Dkt. 14 at ¶ 9.  State Defendants' conduct subjects these members of OCA to harm by limiting their choice of an interpreter under Section 208 based on the interpreter's county of residence.  *See id.* at ¶ 10.  Indeed, many of OCA's members will not be able to effectively or fully participate in the voting process without access to interpreters of their choice.  *See id.* at ¶ 10.  Thus, each has standing to sue in their own right, and the first prong is clearly met.

Regarding the second prong, the interests at issue in the present case – namely, enforcement of the VRA and its protection of the right to vote and have an interpreter of one's choice – are clearly germane to OCA's mission of "advocating for and protecting and advancing the rights of Chinese Americans and Asian Pacific Americans."  *Id.* at ¶ 9.  As State Defendants concede, the second prong is met.  *See* Dkt. 21 at 19.

Finally, in consideration of the third prong of the associational standing test, the claims asserted and relief requested by Plaintiffs would not require participation by the individual members of OCA.  Each member in need of an interpreter is similarly injured, and the declaratory and injunctive relief sought by the OCA will address those injuries.  Thus, the third prong is clearly met.  State Defendants' argument that participation of OCA's individual members would be required because their experiences in attempting to use an assistor and/or interpreter when voting may vary is, again, an attempt to shift focus to local election officials and away from State Defendants.  *See id.* at 20-21.  Indeed, the claims and prayers for relief presently at issue revolve solely around State Defendants' conduct.

For at least these reasons, the Amended Complaint provides a basis for associational standing of Plaintiff OCA.

**B.** **Plaintiffs Have Stated a Claim For Relief**

State Defendants' assertions that Plaintiffs have failed to state a claim upon which relief can be granted are essentially restatements of their assertions of lack of standing and fail for at least the same reasons.  In particular, and as outlined above, Texas Election Code Section 61.033 does indeed violate the provisions of the VRA.  The existence of other provisions of the Code that comply with the VRA does not eliminate the harm caused by the provisions which deprive voters of the protections of the Act and thus do not comply.  Similarly, as noted above, the State Defendants attempts to shift the blame to the county officials lack merit.  The relief requested by Plaintiffs is directly traceable to the actions of the State Defendants.  In both cases, the relief sought by Plaintiffs, namely the declaratory judgment and injunctive relief, are proper forms of relief that this Court is empowered to grant and would resolve the harm caused by State Defendants actions.  Accordingly, Plaintiffs have clearly set forth a claim upon which relief can be granted and State Defendants motion under Rule 12(b)(6) should be denied.

## IV.   <u>CONCLUSION</u>

For at least the foregoing reasons, the Court should deny State Defendants' Motion to Dismiss in every regard, except for the Section 1983 claim against the State of Texas.

Dated: October 19, 2015                    Respectfully submitted,

                                           **FISH & RICHARDSON P.C.**

                                           By: */s/ David M. Hoffman*
                                           David M. Hoffman
                                           Texas Bar No. 24046084
                                           hoffman@fr.com
                                           One Congress Plaza, Suite 810
                                           111 Congress Avenue
                                           Austin, TX 78701
                                           Telephone: 512-472-5070
                                           Facsimile: 512-320-8935

                                           **Asian American Legal Defense and
                                           Education Fund ("AALDEF")**

                                           Jerry Vattamala*
                                           99 Hudson Street, 12th Floor
                                           New York, NY 10013
                                           Telephone: 212.966.5932
                                           Facsimile: 212.966.4303
                                           jvattamala@aaldef.org


                                           **ATTORNEYS FOR PLAINTIFFS
                                           OCA – GREATER HOUSTON and
                                           MALLIKA DAS**


* Admitted Pro Hac Vice

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document has been electronically filed on October 19, 2015, and served on opposing counsel who are registered as filing users of the CM/ECF system pursuant to Local Rule 5(b)(1).

By:  */s/ David M. Hoffman*
David M. Hoffman