UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| OCA – GREATER HOUSTON and<br>MALLIKA DAS,<br>    *Plaintiffs*,<br><br>v.<br><br>STATE OF TEXAS, et al.,<br>    *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 1:15-cv-00679-RP |

**DEFENDANTS STATE OF TEXAS'S AND CARLOS CASCOS'S REPLY IN SUPPORT
OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Defendants State of Texas and Carlos Cascos, in his official capacity as Secretary of the State of Texas ("Secretary of State," and, collectively, the "State Defendants"), Motion to Dismiss Plaintiff's Amended Complaint ("Motion" (Dkt. 21)) should be granted because although Plaintiffs generally complain about the requirements for who may serve as interpreters for voters, Plaintiffs fail to demonstrate how the Court has jurisdiction over their claims or how they have stated plausible claims for relief.

### I.    Plaintiffs Fail to Adequately Allege an Injury.

First, Plaintiffs have not pointed to an ongoing violation of federal law that would be remedied by prospective injunctive relief.  To have standing to seek an injunction against purportedly illegal future conduct by a state official, a plaintiff must show a "real and immediate" threat of injury—alleging past exposure to illegal conduct, by itself, is insufficient.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 102-03 (1983) (citing *O'Shea v. Littleton*, 414 U.S. 788 (1974)); *see also James v. City of Dallas*, 254 F.3d 551, 563 (5th Cir. 2001) (noting

that in cases seeking injunctive or declaratory relief, "an additional injury is required, namely that Plaintiffs show that they are likely to suffer future injury by the defendants and that the sought-after relief will prevent that future injury.")

Here, Plaintiffs allege one past injury specific to Mrs. Das and then hypothesize that others *might* suffer similar injuries in the future. (*See* Dkt. 24 at 2.) Plaintiffs' attempt to reframe the issue as whether a voter might be limited in his choice of interpreter still does not establish that Plaintiffs are likely to suffer future injury by the State Defendants. Plaintiffs base their claim on an alleged past miscommunication and then generally allege hypothetical fears that other limited-English-proficient voters might vote in a county that does not provide materials in their native language, might bring someone not registered in that county to assist them, and then might be denied the right to bring that person to the ballot machine. Such fears are insufficient to confer jurisdiction on this court. *See Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 n.3 (5th Cir. 1996) ("Jurisdiction over a plaintiff's claims for future relief is appropriate only if a reasonable likelihood exists that the plaintiff will again be subjected to the allegedly unconstitutional actions."). Plaintiffs' § 1983 claims against the Secretary of State should therefore be dismissed.

## II. Plaintiffs Conflate Interpretation and Assistance.

Second, Plaintiffs improperly conflate assistance and interpretation in an attempt to subject interpreters to the same regulations as assistors. Specifically, Plaintiffs argue that the "[p]resence of any other laws that comport with the VRA is essentially irrelevant to the present case." (Dkt. 24 at 2.) But the Texas Legislature chose to treat interpretation and assistance services differently, and nothing in the Voting Rights Act requires otherwise.

Even the Senate Report quoted by Plaintiffs clarifies that the intent of Section 208 was focused on ballot-box activities: "In 1982, Congress added Section 208 to the VRA ("Section 208") to ensure 'blind, disabled, or illiterate voters could receive assistance in a <u>polling booth</u> from a person of their own choosing[.]'" (Dkt. 24 at 1 (emphasis added).) In fact, the Senate Report directly ties the assistance to the activities at the ballot box:

> The committee has concluded that the only kind of assistance that will make fully "meaningful" the vote of the blind, disabled or those who are unable to read or write, is to permit them to bring into the voting booth a person whom the voter trusts and who cannot intimidate him. Since blind, disabled, or illiterate voters have the right to "pull the lever of a voting machine," they have the right to do so without fear of intimidation or manipulation.

S. Rep. No. 97-417 at 62 (1982) (emphasis added). Indeed, as quoted by Plaintiffs, Section 208 was intended to ensure that voters did not feel "apprehensive about casting a ballot in the presence of" or "be misled by" someone, both of which would only happen at the ballot box. (Dkt. 24 at 1 (quoting S. Rep. No. 97-417).)

Thus, the assistance provisions under the Texas Election Code, which allow voters the right to take the assistor of their choice to the ballot box, comply with Section 208. Any additional benefits conferred on Texas voters do not restrict a voter's right to receive assistance pursuant to Texas Election Code section 61.031 and Section 208.

Similarly, Plaintiffs argue that the interpreter provisions restrict a voter's ability to use the assistor of his choice and require a voter to know the right "password" to get the help he needs. (Dkt. 24 at 7-9.) Plaintiffs base these sweeping theories, however, on one instance of one voter allegedly being refused the assistor of her choice when reading and marking the ballot, in an attempt to connect the one alleged instance of wrongdoing to the conduct of the State Defendants. (*See* Dkt. 24 at 5-6.) As noted above, these speculative future injuries are insufficient to state an injury in fact.

Finally, OCA-Greater Houston's arguments that the Secretary of State failed to instruct voting officials to comply with Section 208 is belied by the Secretary of State documents attached to the Amended Complaint.  The web page attached as Exhibit 1 to the Amended Complaint makes clear who may serve as an interpreter, lets voters know that they may use an interpreter to help communicate with election officials, notes that, if desired, the interpreter may follow the voter to the voting booth, and also directs voters to the separate rules regarding assistance at the voting booth.  (Dkt. 14-1 at 4.)

Similarly, the Handbook attached as Exhibit 2 to the Amended Complaint specifies that a voter who cannot read the languages on the ballot is entitled to the assistor of his choice, except his employer, employer's agent, or union agent.  (Dkt. 14-2 at 35.)  The Handbook clearly distinguishes an assistor from an interpreter.  (Dkt. 14-2 at 34 (Identifying among Persons Allowed Inside the Polling Place. "Persons admitted to provide assistance to *or* to interpret for a voter who is entitled to assistance *or* to an interpreter.  [Secs. 61.032, 64.032(c), and 42 U.S.C.A. § 1973aa-6.]") (emphasis added); *compare id.* at 35-36 (detailed instructions on the meaning of rendering "assistance" to a "voter," including a specific reference to the roles identified in Section 64.0321 of the Texas Election Code) with *id.* at 37 (providing detailed instructions regarding using "English and interpreters," including a specific reference to the role identified in Tex. Elec. Code 61.031(b)).  There is no indication in the Handbook that a voter is not entitled to an assistor in the ballot box in the instructions regarding the use of an interpreter.  (Dkt. 14-2 at 37.)

### III.     Plaintiffs Misstate the Secretary of State's Authority.

Similarly, Plaintiffs' arguments that the Secretary of State has a "statutory duty to enforce the laws" or an "express legal obligation to properly oversee" Williamson County are inapposite.  (*See* Dkt. 24 at 5-6.)  Plaintiffs cite Texas Election Code provisions that require the Secretary of State to interpret state and federal election laws and to "assist and advise all election authorities with regard to the application, operation, and interpretation of this code and of the election laws outside the code."  Tex. Elec. Code Ann. § 31.003 and 31.004.  This duty to interpret and advise regarding the election laws is not a duty to enforce those laws.  (*See* Dkt. 24 at 5 (". . . the Challenged Provision is enforced at the direction of State Defendants . . . .").)  Nor do Texas Election Code sections 31.003 and 31.004 grant the Secretary of State the power to enforce every provision in the Texas Election Code.

Outside of Texas Election Code section 31.005 (discussed in the State Defendants' Motion at 5-6), which deals with the Secretary of State's discretionary authority over "person[s] performing official functions in the administration of any part of the electoral process," the Secretary of State's authority over counties, such as Williamson County, is limited to Texas Election Code section 19.002.  Section 19.002 prohibits the Secretary of State from making payments to a county registrar if that "registrar is not in substantial compliance with Section 15.083, 16.032, or 18.065, or with rules implementing the registration service program," each of which deals with voter registration, and none of which is at issue here.  Tex. Elec. Code Ann. § 19.002(d).    Accordingly, as explained in the State Defendants' Motion, the Secretary of State's authority is limited by Texas law, and Plaintiffs' arguments relying on Texas Election Code sections 31.003 and 31.004 do not change this analysis.  (Dkt. 21 at 5-6.)

### IV.     OCA-Greater Houston Does Not Have Standing.

Finally, OCA-Greater Houston still fails to establish third-party standing because it alleges injuries that are merely hypothetical—not concrete or imminent. OCA-Greater Houston concedes that it must "demonstrate a violation of a legally protected interest that is '(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" (Dkt. 24 at 4 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).) OCA-Greater Houston fails to meet this standard.

Regarding organizational standing, OCA-Greater Houston does not allege a diversion of resources that "concretely and 'perceptibly impair[s]'" its ability to carry out its mission. *NAACP v. City of Kyle*, 626 F.3d 233, 239 (5th Cir. 2010). In that case, the Fifth Circuit distinguished between so called "self-inflicted injuries" (such as litigation costs) from actual injuries to the organization that are traceable to a defendants conduct. *Id.* at 238-39. Here, OCA-Greater Houston's alleged injuries—that it has had to generally divert resources that may have been used on other projects—merely allege "setback[s] to the organization's abstract interest." *Id.* at 239. In other words, even at the pleading stage, OCA-Greater Houston has failed to allege an injury that supports organizational standing. Without alleging a concrete and particularized injury, OCA-Greater Houston cannot establish its standing to bring claims against the State Defendants.

Regarding associational standing, OCA-Greater Houston assumes that its members are harmed by Texas's statutory scheme, but does not allege a concrete injury that was actually suffered by one of its members. (Dkt. 24 at 14-16.) Accordingly, it has not shown that each of its members has standing to sue in his own right. Moreover, OCA-Greater Houston's accusation that the State Defendants are attempting to "shift focus to local election

officials" ignores the fact that, in order to have associational standing, OCA-Greater Houston must show that the participation of its individual members is not required. It cannot do so, however, because it cannot show that its members generally are in need of interpreters (for example, ballot information may be available in the voter's preferred language in some counties) or that any of its members are being denied the assistor of their choice.

## V.     Conclusion

The Texas Election Codes' interpreter and assistance provisions comply with Section 208 of the Voting Rights Act. If Plaintiffs desire a change in the requirements for who may serve as an interpreter for voters, Plaintiffs' proper recourse begins with the Legislature. Plaintiffs' attempt to manufacture an end run around the legislative process should be rejected. Accordingly, the State Defendants respectfully request that the Court grant their Motion to Dismiss the Amended Complaint.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ANGELA V. COLMENERO
Chief - General Litigation Division

*/s/ Laura A. Barbour*
LAURA A. BARBOUR
Texas Bar No. 24069336
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 475-4099
FAX:  (512) 320-0667
laura.barbour@texasattorneygeneral.gov

***ATTORNEYS FOR STATE DEFENDANTS***

## CERTIFICATE OF SERVICE

   I hereby certify that a true and correct copy of the foregoing instrument has been sent by electronic notification through ECF by the United States District Court, Western District of Texas, Austin Division, on October 26, 2015 to:

| | |
|---|---|
| David M. Hoffman<br>FISH & RICHARDSON, P.C.<br>111 Congress Avenue, Suite 810<br>Austin, Texas 78701 | Jerry Vattamala<br>Asian American Legal Defense and Education Fund<br>99 Hudson Street<br>New York, New York 10013 |
| ***Attorney for Plaintiffs*** | ***Attorney for Plaintiffs*** |

Henry W. Prejean
Assistant County Attorney
Williamson County Attorney's Office
405 Martin Luther King Street, Box 7
Georgetown, Texas 78626

***Attorney for Williamson County***

              */s/ Laura A. Barbour*
              LAURA A. BARBOUR
              Assistant Attorney General