IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| OCA – GREATER HOUSTON, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>STATE OF TEXAS, et al.,<br><br>    Defendants. | CIVIL ACTION NO. 1:15-cv-00679-RP |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT WILLIAMSON COUNTY'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

## I.   INTRODUCTION

Plaintiffs have presented sufficient allegations in their Amended Complaint to support meritorious claims against Defendant Williamson County, Williamson County Elections Department ("Williamson County" or "Defendant") pursuant to the Voting Rights Act of 1965 ("VRA") and 42 U.S.C. § 1983 ("Section 1983"). The Motion to Dismiss ("the Motion" or "Defendant's Motion") does not provide an adequate legal basis for this Court to dismiss either claim against Defendant.

As a threshold matter, the Motion alleges that Plaintiff OCA-Greater Houston ("OCA" or "Plaintiff OCA") has failed to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), yet argues that Plaintiff OCA is not entitled to third-party standing, which is properly challenged under Rule 12(b)(1) as a jurisdictional question. In any event, the underlying assertions supporting the Motion are flawed and should be rejected. Indeed, as described below, Plaintiff OCA meets the qualifications for both organizational and associational standing. As such, Plaintiffs' Amended Complaint makes all necessary allegations to sustain the causes of action at issue. Accordingly, this Court should deny Defendant's Motion.

## II.   LEGAL STANDARDS

A complaint is subject to dismissal under Rule 12(b)(6) if it fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). As the Fifth Circuit has noted, "[a] motion to dismiss under rule 12(b)(6) is viewed with disfavor and is rarely granted." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citations and internal quotation marks omitted). In deciding a motion to dismiss, this Court must accept all well-pleaded facts as true, viewing those facts in the light most favorable to the plaintiff. *Johnson v. Teva Pharm. USA, Inc.*, 758 F.3d 605, 614 (5th Cir. 2014) (citation omitted); *Rankin v. City of Wichita Falls*, 762 F.2d 444, 446 (5th Cir. 1985). A complaint will survive a motion to dismiss if it contains

"sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff meets this standard when he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

On the other hand, a complaint is subject to dismissal under Rule 12(b)(1) if the plaintiff fails to demonstrate proper subject matter jurisdiction. *See* Fed.R.Civ.P. 12(b)(1). "A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6)." *Benton v. U.S.*, 960 F.2d 19, 21 (5th Cir. 1992). Article III of the Constitution limits the jurisdiction of federal courts to actual cases and controversies. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980). "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). To meet the standing requirement, "the plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). To satisfy the injury-in-fact prong, a plaintiff must demonstrate a violation of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (1992) (citations and internal quotation marks omitted). At the pleading stage, courts assume that specific standing allegations are subsumed under broad standing allegations. *See id*. at 561 (on a motion to dismiss, it is

presumed that general allegations embrace those specific facts that are necessary to support the claim).

### III. ARGUMENT

**A.    Plaintiff OCA Has Standing to Sue Defendant**

Defendant's arguments that Plaintiff OCA lacks third-party standing are fundamentally flawed. Defendant's Motion cites *Kowalski v. Tesmer* for the well-known third-party standing proposition that a litigant generally must assert his own legal rights and interests. However, it is also well known that organizations may have standing in either, or both of, a representative capacity and an individual capacity. An organization can establish standing in an individual capacity when it asserts its own rights. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982). Thus, organizational standing is entirely distinct from third-party standing. Furthermore, the Supreme Court confirmed in *Warth v. Seldin*, a case also cited in Defendant's Motion, that "[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members." *See* 543 U.S. 125, 129 (2004). Thus, associational standing is an exception to the general prohibition on third-party standing asserted in Defendant's Motion. As discussed below, the Amended Complaint alleges sufficient facts to establish that Plaintiff OCA has both organizational and associational standing. As such, Defendant's argument that third-party standing is lacking because the Amended Complaint fails to demonstrate that Limited English Proficient voters will encounter "hindrances" to suing on their own behalf is without merit in the present case.

**1.    OCA-Greater Houston Has Organizational Standing**

An organization, like an individual, can establish standing to sue on its own behalf by demonstrating the *Lujan* requirements. *Havens Realty,* 455 U.S. at 378–79. Article III organizational standing is established by a showing of "concrete and demonstrable injury to the

organization's activities," such as a "drain on the organization's resources" or "perceptibl[e] impair[ment]" of the organization's ability to fulfill its mission. *Id.*  Importantly, at the pleading stage, an organization need only broadly allege such an injury. Dkt. 40 at 7-8, *American Civil Rights Union v. Tax Assor-Collector Cindy Martinez-Rivera*, No. 2:14-CV-00026 (W.D. Tex. March, 2015) (citing *Havens Realty*, 455 U.S. at 379).  As noted by Western District Judge Alia Moses, in *Havens Realty*, the Supreme Court held that the plaintiff-organization had sufficiently alleged standing based merely upon a short description in the complaint, stating:

> Plaintiff HOME has been frustrated by defendants' racial steering practices in its efforts to assist equal access to housing through counseling and other referral services.  Plaintiff HOME has had to devote significant resources to identify and counteract the defendant's *[sic]* racially discriminatory steering practices." *Id.*[1]

---

[1] *See also Ass'n of Comm. Orgs. For Reform Now ("ACORN") v. Fowler,* 178 F.3d 350, 356 (5th Cir. 1999) (on summary judgment, holding that the organizational plaintiff had standing to challenge Louisiana's alleged NVRA violations based on assertion that "it has expended definite resources counteracting the effects of Louisiana's alleged failure to implement" the NVRA, but finding no standing on other claims where facts showed expenditures not traceable to alleged NVRA violation); *Harkless v. Brunner*, 545 F.3d 445, 458–59 (6th Cir. 2008) (holding that district court improperly dismissed complaint and improperly denied leave to amend where the organizational plaintiff alleged (in a proposed amended complaint) that it "would not have expended funds on voter registration activities outside [public assistance] offices but for defendants' . . . violations" of the National Voter Registration Act ("NVRA")); *Florida State Conference of NAACP v. Browning*, 522 F.3d 1153, 1164–66 (11th Cir. 2008) (NAACP and other organizations had organizational standing because they were forced to divert resources from registering voters and election-day activities to addressing problems experienced by registration applicants due to Florida's new registration procedures); *Crawford v. Marion Cnty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007) (state political party had organizational standing because Indiana's new voter identification law compelled "the party to devote resources to getting to the polls those of its supporters who would otherwise be discouraged by the new law from bothering to vote"), aff'd. 553 U.S. 181, 189 n.7 (2008); *League of United Latin American Citizens (LULAC) of Wisconsin, Inc. v. Deninger*, No. 12-C-0185, 2013WL 5230795 (E.D.Wis. Sept. 17, 2013) (after discovery, finding that expenditures to get-out-the-vote gave organizations Article III standing under Section 2 to challenge voter identification law).

Of course, [n]ot every diversion of resources to counteract the defendant's conduct . . . establishes an injury in fact." *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 238 (5th Cir. 2010). So called "self-inflicted injuries" cannot be used to establish standing because they are not fairly traceable to a defendant's conduct. *ACORN*, 178 F.3d at 358. So, for example, resources expended in pursuit of litigation, including those spent compiling statistical evidence, do not give rise to organizational standing. *Id*. at 358.

In stark contrast to the self-inflicted injuries outlined in *NAACP*, Plaintiff OCA has adequately pled injury to its actual organizational interests. As set forth in the Amended Complaint, OCA is dedicated to the mission of advocating for, protecting and advancing the rights of Chinese Americans and Asian Pacific Americans. *See* Dkt. 14 at ¶ 9. As part of its mission, OCA promotes civic participation among Asian Americans, including by advocating voter registration and educating its members about the voting process. *See id*. Plaintiff OCA has also pled that Defendant's conduct is causing and will continue to cause OCA to divert its limited funds and other resources to educate its members and other Asian American voters on how to vote – including instructions on requirements for interpreters of voters' choice. *See id*. at ¶¶ 10 and 16. These expenditures, unlike the *NAACP* case cited by Defendant, have nothing to do with litigation and are a direct result of Defendant's conduct in violation of the VRA.

Defendant's attempt to attack the adequacy and precision of Plaintiffs' allegations set forth in the Amended Complaint is without merit. *See* Dkt. 22 at 3-4. The fatal flaw in Defendant's reasoning rests in the difference in procedural posture between *NAACP* and the current case. In *NAACP*, the court's holding that plaintiffs lacked standing under an organizational theory was based on the entirety of the evidentiary record following a bench trial,

while the current case remains in its infancy at the pleading stage. As noted above, at the pleading stage, an organization need only *broadly* allege injury.

For at least these reasons, the Amended Complaint undoubtedly provides a basis for organizational standing of Plaintiff OCA.

### 2.   OCA-Greater Houston Has Associational Standing

In addition to its organizational standing, Plaintiff OCA has standing, as an association, to assert the rights of its members. *See Warth*, 422 U.S. at 511 ("[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members"). Associational standing requires showing: (1) the association's members have standing to sue in their own right; (2) the interests at issue are germane to the association's purpose; and (3) the participation of individual members in the lawsuit is not required. *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550-51 (5th Cir. 2010) (citing *Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)).

"The first prong [merely] requires that at least one member of the association have standing to sue in his or her own right." *National Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 191 (5th Cir. 2012). Defendant's attempt to argue that the first prong cannot be satisfied because Plaintiff OCA does not allege that Plaintiff Das is a member of OCA should be rejected. *See* Dkt. 22 at 3. The Motion supports this flawed argument by citing *Tex. Peace Officers*, in which the court found a failure to plead associational standing where the only injured parties were the individual plaintiffs, who were not alleged to be members of the organization. *See Tex. Peace Officers Ass'n v. City of Galveston*, 944 F.Supp. 562, 563-64 (S.D. Tex. 1996). Unlike *Tex. Peace Officers*, Plaintiffs' Amended Complaint plainly alleges injuries to the non-party members of OCA. In particular, the Amended Complaint notes that OCA has approximately 100 members in its chapter, many of whom are

limited English proficient. *See* Dkt. 14 at ¶ 9. Defendant's conduct subjects these members of OCA to harm by limiting their choice of an interpreter under Section 208 based on the interpreter's county of residence. *See id.* at ¶¶ 10 and 16. Indeed, many of OCA's members may not be able to effectively or fully participate in the voting process if denied interpreters of their choice. *See id.* at ¶ 10. Thus, many of OCA's members have standing to sue in their own right, and the first prong is clearly met.

Regarding the second prong, the interests at issue in the present case – namely, enforcement of the VRA and its protection of the right to vote and have an interpreter of one's choice – are clearly germane to OCA's mission of "advocating for and protecting and advancing the rights of Chinese Americans and Asian Pacific Americans." *Id.* at ¶ 9. As Defendant appears to concede, the second prong is met.

Finally, in consideration of the third prong of the associational standing test, the claims asserted and relief requested by Plaintiffs would not require participation by the individual members of OCA. Each member in need of an interpreter is similarly injured, and the declaratory and injunctive relief sought by the OCA will address those injuries. Indeed, the claims and prayers for relief presently at issue revolve solely around Defendant's conduct. *See id.* at ¶ 30-40 and p. 8, "PRAYERS FOR RELIEF." Thus, the third prong is clearly met.

For at least these reasons, the Amended Complaint provides a basis for associational standing of Plaintiff OCA.

## IV.  CONCLUSION

For at least the foregoing reasons, the Court should deny Defendant's Motion to Dismiss in every regard.

Dated: October 28, 2015

Respectfully submitted,

**FISH & RICHARDSON P.C.**

By: */s/ David M. Hoffman*
David M. Hoffman
Texas Bar No. 24046084
hoffman@fr.com
One Congress Plaza, Suite 810
111 Congress Avenue
Austin, TX 78701
Telephone: 512-472-5070
Facsimile: 512-320-8935

**Asian American Legal Defense and Education Fund ("AALDEF")**

Jerry Vattamala*
99 Hudson Street, 12th Floor
New York, NY 10013
Telephone: 212.966.5932
Facsimile: 212.966.4303
jvattamala@aaldef.org

**ATTORNEYS FOR PLAINTIFFS OCA – GREATER HOUSTON and MALLIKA DAS**

* Admitted Pro Hac Vice

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been electronically filed on October 28, 2015, and served on opposing counsel who are registered as filing users of the CM/ECF system pursuant to Local Rule 5(b)(1).

By: /s/ *David M. Hoffman*
David M. Hoffman