IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| OCA – GREATER HOUSTON, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 1:15-CV-00679-RP |
| | § | |
| STATE OF TEXAS, et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are Defendants State of Texas and Carlos Cascos's Motion to Dismiss Plaintiffs' Amended Complaint [*hereinafter* "State Defendants' Motion"] (Dkt. 21), Williamson County's Motion to Dismiss (Dkt. 22), and the responsive pleadings to both. After considering the pleadings, the relevant law, and the factual record, the Court issues the following Order.

## BACKGROUND

On October 31, 2014, Plaintiff Mallika Das attempted to vote in Williamson County. Because she is limited English proficient ("LEP") and had therefore found it difficult to vote in 2012, she brought her son, Saurabh Das, to assist her. (Pls.' Am. Compl., Dkt. 14, ¶ 24). At the polling station, the poll official asked Saurabh "to clarify whether he intended to accompany his mother as her 'assistor' or 'interpreter.'" *Id.* at ¶ 25. As his intention was to interpret, Saurabh responded that he was at the polling station to interpret. *Id.* ¶ 26.

The poll official then asked whether Saurabh was a registered voter in Williamson County. Saurabh answered truthfully that he was not – he is registered to vote in neighboring Travis County. (Pls.' Am. Compl., Dkt. 14, ¶ 27). The official, "in accordance with [the State-issued] Training guide," stated that in order to be an interpreter, Saurabh must be a registered voter in Williamson County. *Id.* ¶

1

28. The poll official then refused to allow Saurabh to assist his mother, *id.*, and Mallika Das "was unable to sufficiently comprehend the ballot." *Id.* ¶ 29.

Plaintiffs Mallika Das and Organization of Chinese Americans ("OCA") – Greater Houston bring two related causes of action against the State of Texas, Texas Secretary of State Carlos Cascos in his official capacity, Williamson County, and the Williamson County Elections Department. First, Plaintiffs allege that Defendants violate Section 208 of the federal Voting Rights Act ("VRA") by restricting voters' choice of interpreter. (Pls.' Am. Compl., Dkt. 14, ¶ 33, 34). Second, Plaintiffs argue that violation deprives them of "rights and privileges" such that Defendants Cascos, Williamson County, and the Williamson County Elections Department are liable under 42 U.S.C. § 1983.  *Id.* ¶40.

Defendants Cascos and the State of Texas [*hereinafter* "the State Defendants"] and Defendant Williamson County have moved to dismiss pieces of Plaintiffs' Complaint. The State Defendants argue that Texas law is consistent with the VRA, and thus that Plaintiffs have improperly sued the State Defendants. (State Defendants' Motion, Dkt. 21, at 6). They further argue that Plaintiff OCA – Greater Houston has no standing to sue on its own behalf or on behalf of third parties. *Id.* at 12. Defendant Williamson County moves to dismiss Plaintiff OCA – Greater Houston's claims against it for substantially the same reasons proffered by the State Defendants. Williamson County further argues that "Plaintiff has failed to show any imminent threat that OCA-Greater Houston, a Houston area organization, will suffer . . . as a result of any alleged improper procedures of the Williamson County Elections Department," and that "[OCA] has failed to allege or establish that there is any diversion or likely diversion of resources with respect to Williamson County." (Williamson County's Mot. Dism., Dkt. 22, at 3 – 4).[1]

The parties have briefed the issues, and the motions are ripe for determination.

---

[1] Plaintiff has named as Defendants both Williamson County and the Williamson County Elections Department. Plaintiff's Amended Complaint and Defendant Williamson County's Motion to Dismiss seemingly conflate the County and the Elections Department. As both Parties seemingly conflate the County and the Elections Department, this Court does the same for purposes of assessing the Defendants' Motions. The Court encourages the parties to clarify the status of the County and the Elections Department (whether they are separate entities, and whether both are proper parties to this lawsuit).

**STANDARD OF REVIEW**

A federal court must dismiss an action "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction." Fᴇᴅ. R. Cɪᴠ. P. 12(h)(3). Thus, lack of subject-matter jurisdiction may be raised at any time by any party, or by the court sua sponte. *Bank One Texas v. United States,* 157 F.3d 397, 403 (5th Cir. 1998); *MCG, Inc. v. Great Western Energy Corp.,* 896 F.2d 170, 173 (5th Cir. 1990). The plaintiff bears the burden of establishing federal jurisdiction. *Burge v. Parish of St. Tammany,* 187 F.3d 452, 465-66 (5th Cir. 1999). *See also Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) (presumption against subject matter jurisdiction must be rebutted by party bringing action to federal court). A motion to dismiss for lack of subject matter jurisdiction must be considered before any other challenge. *See Steel Co. v. Citizens for Better Environment,* 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter ... is inflexible and without exception"); *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (court must find jurisdiction before determining validity of claim).

After determining it has jurisdiction, courts may evaluate motions to dismiss for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. The court must initially identify pleadings that are no

more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief.  If not, "the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting FED. R. CIV. P. 8(a)(2)).

## ANALYSIS

1.  <u>State Defendants' Motion to Dismiss</u>

The State Defendants claim that Plaintiffs lack standing to sue them. Though the Motion to Dismiss is framed as a challenge to Plaintiffs' choice of defendants, it is predicated on the premise that Texas law implements and is consistent with Section 208 of the VRA, and thus that local officials, and not the State Defendants, are responsible for all injury.[2] Accordingly, the Court first addresses the State Defendants' interpretation of the VRA, and then analyzes the State Defendants' Motion to Dismiss in light of the Court's interpretation of the VRA.

i.   *The Texas Election Code and the Voting Rights Act*

Plaintiff argues that Texas law undermines the VRA by placing restrictions on voters' choices of who may assist them. Section 208 of the VRA, 52 U.S.C.A. § 10508 (formerly 42 U.S.C.A. § 1973aa-6), provides that:

> Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union.

Two subchapters of the Texas Election Code govern the assistance offered to limited English proficient ("LEP") voters. Chapter 64 allows a voter to use an "assistor" of the voter's choice. TEX. ELEC. CODE § 64.031 – 64.035 [*hereinafter* "Assistance Provisions"]. Chapter 61 allows a voter to use an "interpreter" of the voter's choice, provided a voter "cannot communicate in English," "an election officer who attempts to communicate with a voter does not understand the language used by the voter," and the

---

[2] State Defendants claim that "all of the facts alleged by Plaintiffs complain of actions taken by local election officers, not the Secretary of State." (State Defs.' Motion, Dkt. 21, at 5).

chosen interpreter is "a registered voter of the county in which the voter needing the interpreter resides." *Id.* § 61.031 – 61.036 [*hereinafter* "Interpretation Provisions"].

The Assistance Provisions do not place restrictions on voter choice beyond those found in Section 208 of the VRA. The Interpretation Provisions do place restrictions beyond those found in Section 208. This is justified, Defendants argue, as "each [Provision] was intended to solve a different problem." (Defs.' Mot. Dism., Dkt. 21, at 10).

The Assistance Provisions allow assistance "in marking the ballot" if the voter cannot "prepare the ballot" by reason of physical disability or "an inability to read the language in which the ballot is written." TEX. ELEC. CODE. ANN. §64.031. Assistance is limited to "reading the ballot to the voter," "directing the voter to read the ballot," "marking the voter's ballot," or "directing the voter to mark the ballot." *Id.* § 64.0321. Assistance "occurs while the person is in the presence of the voter's ballot or carrier envelope." *Id.*

The Interpretation Provisions require election officers to communicate only in English when "performing an official duty in connection with the election." *Id.* § 61.031(a). If a voter cannot communicate in English, the "election officer may communicate with the voter in a language that the voter and officer understand." *Id.* § 61.031(b).  And if the officer does not speak the same language as the voter, "the voter may communicate through an interpreter selected by the voter." *Id.* § 61.032. The interpreter may also "accompany the voter to the voting station for the purpose of translating the ballot to the voter." *Id.* § 61.034.  An interpreter, unlike an assistor, "must be a registered voter of the county in which the voter needing the interpreter resides." *Id.* § 61.033.

The State Defendants admit that the Interpretation Provisions contain requirements that are not in the VRA. They claim additional requirements are justified as the Provisions "offer assistance to voters beyond the minimum requirements of the Voting Rights Act." (Defs.' Mot. Dism., Dkt. 21, at 10). The minimum requirements of the VRA, Defendants claim, "are aimed only at ballot-box activities – *i.e.,*

helping voters read and mark the ballot." *Id.* The Interpretation Provisions, by contrast, "allow a voter to receive help translating and communicating *throughout the entire voting process* – not just at the ballot box." *Id.* at 9 (emphasis added).

The State Defendants' argument assumes that Section 208 of the VRA is aimed only at "ballot-box activities," which Defendants define as reading and marking the ballot. The only evidence suggesting that Section 208 concerns only "ballot-box activities" comes in State Defendants' Reply to Plaintiffs' Response to their Motion to Dismiss, in which they quote the Senate Report accompanying Congress's addition of Section 208 to the VRA. That Report stated "that the only kind of assistance that will make fully 'meaningful' the vote of the blind, disabled or those who are unable to read or write, is to permit them to bring into the voting booth a person whom the voter trusts and who cannot intimidate him." S. REP. NO. 97-417, at 62 (1982). The quotation, while a strong defense of ballot-box assistance, cannot fairly be read to imply that ballot-box assistance is alone sufficient to "make fully 'meaningful'" the right to vote. Indeed, Congress was clear that the franchise required "assistance in voting *including and within* the voting booth." *Id.* (emphasis added).

The Court cannot, at this stage and as a matter of law, hold that Congress enabled assistance in the unsupervised ballot box by "a person whom the voter trusts and who cannot intimidate him" but envisioned no role for the person the voter trusts when the voter enters the polling station, communicates with election officers, and fills out the requisite forms. That interpretation is implausible when contrasted with the context of the VRA and its amendments, which targeted "denial of voter registration – by violence, by harassment, and by the use of literacy tests or other screening methods." *Id.*  at 5. Indeed, the same Senate Report cited by Defendants noted that "state provisions . . . could not deny the assistance at some stages of the voting process during which assistance was needed." *Id.* at 62 – 63.

In short, the State Defendants get the VRA wrong. The Assistance Provisions, insofar as they honor the VRA's requirement of voter choice only at the ballot box, are insufficient to implement Section 208. And the Interpretation Provisions, insofar as they restrict voter choice of interpreter, flatly contradict Section 208. Making meaningful the right to vote does not begin or end at the ballot box. Voters must, at a minimum, have the capacity to navigate polling stations and communicate with election officers notwithstanding blindness, disability, or limited language proficiency. They must be able to understand and fill out any required forms, and to understand and to answer any questions directed at them by election officers. And they must be able to do so with the assistance of "a person whom [they] trust[] and who cannot intimidate [them]." *Id.* at 62.

Accordingly, the Texas Election Code Interpretation Provisions, § 61.031 – 61.036, restrict voter choice in a manner inconsistent with the Federal Voting Rights Act.

> ii.   *Plaintiff Standing to Sue State Defendants*

Defendants argue that Plaintiffs lack standing to sue the State Defendants. The Court analyzes these arguments in light of its interpretation of the VRA.

The Eleventh Amendment bars suits by private citizens against a state in federal court. *See Hutto v. Finney,* 437 U.S. 678, 700 (1978). "Yet, few rules are without exceptions, and the exception to this rule allows suits against state officials for the purpose of enjoining the enforcement of an unconstitutional state statute."[3] *Okpalobi v. Foster*, 244 F.3d 405, 411 (5th Cir. 2001).

To sue a state official for the purpose of enjoining the enforcement of a state statute, Plaintiffs need to show only that "the named defendant state officials have *some connection with the enforcement of the act* and 'threaten and are about to commence proceedings' to enforce the

---

[3] "This exception rests on the fiction of *Ex parte Young*—that because a sovereign state cannot commit an unconstitutional act, a state official enforcing an unconstitutional act is not acting for the sovereign state and therefore is not protected by the Eleventh Amendment." *Okpalobi*, 244 F.3d at 411.

unconstitutional act. *Okpalobi*, 244 F.3d at 416 (emphasis in original) (quoting *Ex Parte Young*, 209 U.S. 123, 155–56 (1908)).

Defendants argue that "all of the facts alleged by Plaintiffs complain of actions taken by local election officers." (State Defs.' Motion, Dkt. 21, at 5). And they argue that, insofar as the Secretary of State has discretionary, but not mandatory, authority to protect voting rights from abuse by the authorities administering the state's electoral process, TEX. ELEC. CODE ANN. § 31.005(a), the State Defendants had no duty to involve themselves in a dispute between Williamson County and Plaintiff Das.

The State Defendants' arguments, though, are predicated on their interpretation of the VRA. Plaintiffs have shown Defendant Carlos Cascos, in his official capacity as Secretary of State, has "some connection with the enforcement of the act." *Okpalobi*, 244 F.3d at 416. He is "the chief election officer of the state." TEX. ELEC. CODE § 31.001; *cf. Harkless v. Brunner*, 545 F. 3d 445, 451 (6th Cir. 2008) (finding that the Secretary of State, as "chief State election official," was properly named defendant in a suit under the National Voter Registration Act). As the chief election officer, Defendant Cascos is responsible for "obtain[ing] and maintain[ing] uniformity in the application, operation, and interpretation of [the Texas Election Code] and of the election laws outside th[e] Code." TEX. ELEC. CODE § 31.003. As part of that obligation, he must "prepare detailed and comprehensive written directives and instructions relating to and based on [the Texas Election Code] and the election laws outside th[e] code." *Id.* He must also "assist and advise all election authorities with regard to the application, operation, and interpretation of [the Texas Elections Code] and of the election laws outside th[e] code." *Id.* § 31.004. The State's interpretation and application of the Texas Election Code and national election laws are at issue here. (Pls.' Am. Compl., Dkt. 14, at ¶ 12). So are the State's issuance of written directives and instructions related to that interpretation of state and national election law, and the State's provision of assistance and advice to local election authorities. *Id.* ¶ 14.

Plaintiffs therefore have shown the State Defendants have "some connection" with the complained act, *Okpalobi*, 244 F.3d at 416, and therefore that the State Defendants are properly named defendants.

        iii.    *Allegations of Ongoing Injury*

Defendants finally argue, in their Reply to Plaintiffs' Memorandum in Opposition to their Motion to Dismiss, that "Plaintiffs have not pointed to an ongoing violation of federal law that would be remedied by prospective injunctive relief." (Reply to Response to Motion, Dkt. 25, at 1). Defendants rightfully state that, "[t]o have standing to seek an injunction against purportedly illegal future conduct by a state official, a plaintiff must show a 'real and immediate' threat of injury." *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 – 03 (1983)).

The argument that Plaintiffs have failed to allege ongoing injury, however, is also based on the State Defendants' erroneous framing of Plaintiffs' claims. Plaintiffs are not "bas[ing] their claim on an alleged past miscommunication and then generally alleg[ing] hypothetical fears." *Id.* at 2. Instead, Plaintiffs are claiming that the Texas Election Code Interpreter Provisions conflict with Section 208 of the VRA, that the State Defendants are responsible for maintaining uniformity in the interpretation and application of those Provisions, and that they assist and advise local election officials to restrict voter choice of "interpreters." Plaintiffs' injury is not the result of a "miscommunication," but of a correct and sanctioned application of Texas Election Law.

Insofar as that law remains in force and Defendants continue to urge the application of that law, there is a "reasonable likelihood" that Plaintiffs will again be subjected to the complained conduct. *Wallace v. Tex. Tech Univ.*, 80 F. 3d 1042, 1047 n.3 (5th Cir. 1996). Plaintiffs have therefore sufficiently pleaded claims for prospective relief.

    2.  <u>Defendants' Motions to Dismiss Plaintiff OCA – Greater Houston</u>

Both Motions to Dismiss contend Plaintiff OCA – Greater Houston has suffered no injury, and thus lacks "standing" to sue. The State Defendants make the argument generally – standing requires injury, and OCA – Greater Houston has not established the requisite injury to support a suit in federal court. Williamson County makes the argument both generally and particularly – OCA – Greater Houston has not been injured, and it has not been injured by Defendant Williamson County.

Federal courts possess jurisdiction over only those disputes that constitute cases or controversies. *Raines v. Byrd*, 521 U.S. 811, 818 (1997). An organization has standing to sue on its own behalf insofar as it has suffered injury in fact. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).  To have standing, "an association or organization must satisfy the well-known requirements of *Lujan*." *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 237 (5th Cir. 2010). Those are

> First, the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized; and (b) 'actual or imminent, not "conjectural" or "hypothetical."' Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.' Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'

*Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 – 61 (1992)) (alterations in original).

Plaintiff OCA – Greater Houston alleges that it has suffered injury in fact. It is a not-for-profit organization dedicated to the mission of "advocating for and protecting and advancing the rights of Chinese Americans and Asian Pacific Americans," including by "promot[ing] civic participating among Asian Americans" through "advocating voter registration and educating its members about the voting process." (Pls.' Am. Compl., Dkt. 14, ¶ 9). Many of OCA – Greater Houston's members are limited English proficient, *id.*, and "will not be able to effectively or fully participate in the election process without access to interpreters of their choice." *Id.* ¶ 10. Restriction on interpreter assistance

> has already required and will require OCA – Greater Houston to expend its limited funds and other resources to educate its members and other Asian American voters on how to

vote – including instructions on requirements for interpreters of voters' choice – as well
as provide other assistance in connection
with upcoming elections. *Id.*

OCA – Greater Houston alleges that "[t]hese efforts would be unnecessary, and the expenses not
incurred, if the Defendants were to comply with their legal obligations in accordance with Section 208 of
the VRA." *Id.*

While "[n]ot every diversion of resources to counteract the defendant's conduct . . . establishes an
injury in fact," *Kyle*, 626 F. 3d, at 238, the question at the pleading stage is whether plaintiffs have
sufficiently alleged a concrete and particular injury that is caused by defendants' conduct and
redressable by a favorable decision. *Cf. Havens Realty Corp.*, 455 U.S. at 379 ("If, *as broadly alleged*,
petitioners' steering practices have perceptibly impaired HOME's ability to provide counseling and
referral services . . . there can be no question that the organization has suffered injury in fact."
(emphasis added)).   OCA – Greater Houston alleges that State Defendants' conduct "impairs" its ability
to educate and assist its members and other Asian Americans with regard to a central part of the
organization's mission. It alleges the State's interpretation and application of the VRA has already and
will continue to result in a "drain on the organization's resources." *Id.* (finding organizational standing
when defendant practices "impaired [the organization's] ability to provide counseling and referral
services" and resulted in a "drain on the organization's resources"). Other courts have considered
similar allegations sufficient to support standing. *See, e.g.*, *Harkless v. Brunner*, 545 F. 3d 445 (6th Cir.
2008); *Florida State Conference of NAACP v.* Browning, 522 F. 3d 1153, 1164 – 66 (11th Cir. 2011);
*Crawford v. Marion Cnty. Election Bd.*, 472 F. 3d 949, 951 (7th Cir. 2007). Accordingly, OCA – Greater
Houston has sufficiently alleged that it itself has suffered injury in fact, and the State Defendants'
Motion to Dismiss is denied insofar as it asks the Court to dismiss Plaintiff OCA – Greater Houston.[4]

---

[4] It is not necessary to, and the Court declines to, reach the issue of whether OCA – Greater Houston also has third-party
standing or associational standing.

While OCA has sufficiently alleged injury by the State Defendants' interpretation and enforcement of the VRA, OCA – Greater Houston has not shown how it is injured by Williamson County. The organization has not alleged that it has members in Williamson County, that it advocates for and protects and advances the rights of Asian Americans in Williamson County, that it has or will expend funds and other resources to educate voters in Williamson County, or that its capacity to carry out its mission has or will be impaired in Williamson County. Accordingly, OCA – Greater Houston's claims against Williamson County are dismissed.[5]

**CONCLUSION**

State Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Dkt. 21) is DENIED.

Williamson County's Motion to Dismiss Plaintiff OCA – Greater Houston's claims against it (Dkt. 22) is GRANTED.

SIGNED on December 3, 2015.

ROBERT L. PITMAN

UNITED STATES DISTRICT JUDGE

---

[5] This dismissal does not affect Plaintiff Das's claims against Williamson County or the Williamson County Election Department.