UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| OCA – GREATER HOUSTON, et al., | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Civil Action No. 1:15-cv-00679-RP |
| | § | |
| STATE OF TEXAS, et al., | § | |
| *Defendants*. | § | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

KEN PAXTON
Attorney General of Texas

JEFFERY C. MATEER
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil
Litigation

ANGELA V. COLMENERO
Chief - General Litigation Division

LAURA A. BARBOUR
Texas Bar No. 24069336
MATTHEW DEAL
Texas Bar No. 24087397
Assistant Attorneys General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 473-0447
FAX:  (512) 320-0667
laura.barbour@texasattorneygeneral.gov
matthew.deal@texasattorneygeneral.gov

ATTORNEYS FOR STATE DEFENDANTS
April 29, 2016

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................................................III

INTRODUCTION AND SUMMARY OF THE ARGUMENT .................................. 1

BACKGROUND ................................................................................................... 3

    A.    Both federal and state law permit Texas voters to receive assistance from the person of their choice. ................................................................................... 3

    B.    Williamson County alone prevented Mr. Saurabh Das from assisting his mother. ........................................................................................................... 4

    C.    Neither OCA nor its members have been harmed. ........................................ 5

ARGUMENTS AND AUTHORITIES ................................................................... 5

    A.    The Standard of Review for a Motion for Summary Judgment: ................... 5

    B.    Mallika Das lacks standing. .......................................................................... 6

        1.    The State Defendants did not cause Mrs. Das's injury. ....................... 6

        2.    Plaintiff cannot trace her alleged injury to State Defendants' conduct. ............... 7

        3.    Political subdivisions, and not the Secretary of State, carry out elections in Texas. ............................................................................... 8

    C.    OCA lacks standing. .................................................................................... 10

        1.    OCA lacks organizational standing. ................................................... 10

            a.    OCA has not suffered an "injury in fact." ............................... 11

            b.    OCA's alleged injury is not "fairly traceable" to the State Defendants. ......................................................................... 13

            c.    Redressability is speculative. ................................................... 14

        2.    OCA lacks associational standing. ..................................................... 14

    D.    Texas election law comports with the Voting Rights Act. .......................... 15

        1.    Texas Election Code, Chapter 64, Subchapter B: Assisting Voter ..... 16

        2.    Texas Election Code, Chapter 61, Subchapter B: Interpreter ............ 18

CONCLUSION AND PRAYER ........................................................................... 20

CERTIFICATE OF SERVICE ........................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547
    (5th Cir. 2010) ................................................................................................ 15

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................ 6

*Friends for Am. Free Enter. Ass'n v. Wal-Mart Stores, Inc.,* 284 F.3d 575
    (5th Cir. 2002) ................................................................................................ 15

*Hunt v. Wash. St. Apple Adver. Comm'n,* 432 U.S. 333 (1977) ................................. 14

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377 (2014) ................. 6, 8, 10

*Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421 (5th Cir. 1997) ........................... 9

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ......................................... passim

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348,
    89 L.Ed.2d 538 (1986) ..................................................................................... 6

*NAACP v. City of Kyle, Tex.*, 626 F.3d 233 (2010) ......................................... passim

*Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) ....................................................... 7

*Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577 (5th Cir. 1986) ....................... 6

*Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315 (5th Cir. 2002) ...................................... 6

*Rodrigue v. Western and Southern Life Ins. Co.*, 948 F.2d 969 (5th Cir. 1991) ........... 6

*Tex. Peace Officers Ass'n v. City of Galveston*, 944 F.Supp. 562 (S.D. Tex. 1996) ......... 15

*U.S. v. Berks County, Pa.*, 250 F. Supp. 2d 525 (2003) ............................................. 17

**Statutes**

42 U.S.C. § 1973aa-6 .................................................................................................. 1

52 U.S.C.A. § 10503(c) ............................................................................................. 15

52 U.S.C.A. § 10508 ......................................................................................... 1, 3, 16

Tex. Election Code Ann. § 12.001 ............................................................................. 17

Tex. Election Code Ann. § 31.005 ............................................................................... 9

Tex. Election Code Ann. § 31.005(a) ........................................................................... 9

Tex. Election Code Ann. § 31.005(b) ........................................................................... 9

Tex. Election Code Ann. § 61.031 ............................................................................. 18

Tex. Election Code Ann. § 61.032 ............................................................................. 18

Tex. Election Code Ann. § 61.033 ....................................................................... 1, 2, 3

Tex. Election Code Ann. § 61.034 ................................................................... 3, 4, 7, 18

Tex. Election Code Ann. § 61.035 ................................................................................ 4, 19

Tex. Election Code Ann. § 62.003 ................................................................................ 19

Tex. Election Code Ann. § 64.031 ....................................................................... 3, 15, 16, 18

Tex. Election Code Ann. § 64.031(2) ........................................................................... 3, 16

Tex. Election Code Ann. § 64.032 ................................................................................ 17

Tex. Election Code Ann. § 64.032(b) ........................................................................... 20

Tex. Election Code Ann. § 64.032(c) ........................................................................... 3, 20

Tex. Election Code Ann. ch. 61 ................................................................................... 16

Tex. Election Code Ann. ch. 61, sub ch.B .................................................................... 18

**Rules**

Fed. R. Civ. P. 56(a) .................................................................................................. 5

TO THE HONORABLE JUDGE PITMAN:

Defendants, the State of Texas and Carlos Cascos, in his official capacity as Secretary of State of Texas ("Secretary of State" and, collectively, "the State Defendants"), file this Motion for Summary Judgment. In support of their Motion, the State Defendants respectfully submit the following:

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

This case is about one Texas county's erroneous implementation of Texas Election Code provisions that provide limited-English proficient voters with assistance, in accordance with Section 208 of the Voting Rights Act of 1965 ("Section 208"). 52 U.S.C.A. § 10508 (formerly codified at 42 U.S.C. § 1973aa-6). Specifically at issue is the manner in which a Williamson County poll worker applied Texas law when he followed county-specific guidance that barred Mr. Saurabh Das from accompanying his mother to the voting machine (because Mr. Das was not registered to vote in Williamson County). While Mr. Das may not have met the requirements of an "interpreter" under the Texas Election Code, he did meet the requirements of an "assistor." Williamson County's guidance, however, conflated the two provisions.

Mrs. Das sued the State of Texas, the Secretary of State, Williamson County, and the Williamson County Elections Department (together with Williamson County, "Williamson County"), alleging that the Williamson County poll worker's refusal to allow her son to accompany her to the voting machine violated Section 208. She seeks a declaratory judgment from all Defendants, ". . . declaring that Texas Election Code § 61.033 violates and is inconsistent with the provisions of Section 208 . . . ." (Dkt. 14 at p. 8.) Mrs. Das also asks this Court to enjoin all Defendants, ". . . from engaging in any act or practice that denies the rights secured by Section 208 . . . [and] . . . [r]equire Defendants to develop and implement a remedial plan to ensure that voters

are permitted assistance from persons of their choice when they cast their ballots . . . ."[1] *Id.* Mrs. Das settled with Williamson County. Under the terms of that agreement, Mrs. Das withdrew her claims against Williamson County; in exchange, Williamson County changed its guidance above and beyond what was required to permit Mrs. Das to bring her son into the polling booth; in other words, it now subjects interpreters to the same restrictions as assistors by adding and removing qualifications applicable to interpreters.[2]

Mrs. Das cannot tie her injury to any action of the State Defendants. Her injury stems from Williamson County guidance that did not conform to the Texas Election Code. Furthermore, Mrs. Das is under no threat of future harm because, should she choose to vote again, her son is permitted to assist her at the voting booth; just as he was when she voted in 2014, notwithstanding the incorrect actions of the Williamson County poll worker at that time. Accordingly, Mrs. Das lacks standing to sue the State Defendants.

The Organization of Chinese Americans—Greater Houston ("OCA") similarly lacks an injury sufficient to support standing to sue the State Defendants. First, OCA cannot establish organizational standing because it has suffered no personal injury. At most, when already on site or on a phone call, OCA volunteers now encourage voters to specify that persons helping them are "assistors." But OCA cannot demonstrate any significant diversion of funds. *NAACP v. City of Kyle, Tex.*, 626 F.3d 233, 238 (2010) ("an organization may establish injury in fact by showing

---

[1] The State of Texas cannot be enjoined: ". . . Plaintiffs agree that Sovereign Immunity applies to the State of Texas in regard to the Section 1983 claim." *See* Dkt. 15, p. 1.

[2] Whereas Williamson County's previous guidance improperly conflated a requirement applicable to interpreters (residence) with a requirement applicable to assistors, Williamson County's settlement now improperly conflates the assistor and interpreter provisions in the opposite direction. While it previously imposed all interpreter requirements on an assistor, it now imposes all assistor requirements on interpreters. This is not consistent with Texas law, and was not necessary to allow a voter to bring an assistant into the voting booth to translate the ballot, which is already permitted under existing Texas law.

that it had diverted significant resources to counteract the defendant's conduct"). Second, OCA cannot establish associational standing because its members themselves have not sustained any injury sufficient to independently establish standing.

Furthermore, there is no conflict between federal and state law. Texas law affords the same protections as Section 208 of the Voting Rights Act.

## BACKGROUND

**A.  Both federal and state law permit Texas voters to receive assistance from the person of their choice.**

Section 208 addresses "voting assistance for blind, disabled, or illiterate persons" and provides as follows:

> Any voter who requires assistance to vote by reason on blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union.

52 U.S.C.A. § 10508.

The state corollary to Section 208 is found in Texas Election Code section 64.031, under which a "voter is eligible to receive assistance in marking the ballot" if, among other things, the voter "cannot prepare the ballot because of . . . an inability to read the language in which the ballot is written." Tex. Election Code Ann. § 64.031(2). Upon the voter's request, "the voter may be assisted by any person selected by the voter other than the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs." *Id.* at § 64.032(c). This language mirrors Section 208, and all parties agree that this "assistor" provision is consistent with Section 208 of the Voting Rights Act. (Dkt. 14 at ¶ 20.)

This dispute hinges on the supplemental "interpreter" provisions found in Texas Election Code sections 61.033 and 61.034: "If the voter cannot comprehend the language in which the ballot is printed, an interpreter may accompany the voter to the voting station for the purpose of

translating the ballot to the voter." Tex. Election Code Ann. § 61.034. This aid may be provided in addition to the services of an "assistor." In order to serve as an interpreter, "a person must be a registered voter of the county in which the voter needing the interpreter resides."[3] *Id*. at § 61.033.

### B.  Williamson County alone prevented Mr. Saurabh Das from assisting his mother.

Mrs. Mallika Das asserts that she is limited-English proficient. (Dkt. 14 at ¶ 7.) She was born in India and is a native speaker of Bengali, an Indian dialect. [Exhibit 2, *Deposition of Saurabh Das* ("Das Depo.") at 5:16-17, 13:15-19.] Mrs. Das moved to the United States nearly two decades ago, in 1995-96, is a U.S. citizen, and speaks English. (Das Depo. at 5:18-22; 14:16-17.)  2014 is not the first time Mrs. Das voted. (*See, e.g.,* Mrs. Das "voted previously in 2012 in Williamson County without the aid of her son . . . ." (Dkt. 14 at ¶ 24.))

Mrs. Das again voted in Williamson County in October 2014. (Das Depo. at 16:6-8, Dkt. 14 at ¶ 24.) On this occasion, she sought her son's assistance and asked a poll worker whether it was permissible for her son to act as a translator. (Dkt. 14 at ¶¶ 24-29; Das Depo. at 13:6-10.) At that time, Williamson County guidance required that anyone seeking to serve as both an assistor and an interpreter be registered to vote in Williamson County. *See* Exhibit 1, Williamson County Elections Department Poll Worker Training Guide, at pp. 3-23 ¶ 4. Likely based on that incorrect guidance, the Williamson County poll worker did not permit Saurabh Das to join his mother in the voting booth to translate the ballot.[4] Mrs. Das ultimately proceeded to vote without her son's assistance. (Das Depo. at 15:7-15, 16:6-8.)

---

[3] Like an "assistor," an "interpreter" must also take an oath. Tex. Election Code Ann. § 64.034 and § 61.035, respectively.

[4] In order to serve as an interpreter in Williamson County, one must be registered to vote in Williamson County. Texas Election Code Ann. § 61.033. Saurabh Das is registered to vote in Travis County. (Das Depo at 6:14-17.)

### C.  Neither OCA nor its members have been harmed.

Saurabh Das later learned of a "plan to sue for exactly this issue." (Das Depo. at 19:15-23.) OCA determined that it, too, was somehow allegedly harmed by the incident that occurred in Williamson County. (Dkt. 14 at ¶ 10.) But OCA has not had to devote significant resources to educate its members about receiving assistance at the polls outside of its normal activities. Moreover, Mrs. Das is not a member of OCA, and none of OCA's members have alleged similar injuries as part of this lawsuit.[5] [Exhibit 3, *Deposition of Deborah Chen* ("Chen. Depo") at 19:22-24.]

Both OCA and Mrs. Das fashion their claims as violations of Section 208 of the Voting Rights Act and its explicit protections for illiterate voters. Additionally, although the only actual injury arose in Williamson County, they seek to tie their alleged injuries to the State Defendants.

The State Defendants are in full compliance with Section 208. Contrary to Mrs. Das's claims, Chapters 61 and 64 of the Texas Election Code do not infringe on the ability of illiterate and limited-English proficient voters to effectively cast ballots in Texas. Accordingly, State Defendants request that their Motion for Summary Judgment be granted and Plaintiffs' claims against them be denied.

### ARGUMENTS AND AUTHORITIES

### A.  The Standard of Review for a Motion for Summary Judgment:

Summary judgment is appropriate when the record discloses "that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and

---

[5] Deborah Chen, OCA's representative, vaguely recounted two adverse voting experiences orally reported by members (presumably in Harris County). (Chen Depo. at 73:16-74:3, 77:1-78-12.) OCA does not keep a record of these types of occurrences, and none are affirmatively alleged as part of this lawsuit. (*Id.* at 79:17-22.)

upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Pleadings, depositions, admissions, and answers to interrogatories, together with affidavits, must demonstrate that no genuine issue of material fact remains. *Id.* at 324. To that end, a court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). If the record, taken as a whole, "could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Rodrigue v. Western & Southern Life Ins. Co.*, 948 F.2d 969, 970-71 (5th Cir. 1991) (citing *Matsushita Election Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

A motion for summary judgment made pursuant to Rule 56 "must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate . . . prior to trial, that the claims and defenses have no factual basis." *Celotex* at 327.

## B. Mallika Das lacks standing.

### 1. The State Defendants did not cause Mrs. Das's injury.

Mrs. Das lacks standing to assert her claims against the State Defendants. In order to have standing, Mrs. Das "…must have suffered or be imminently threatened with a concrete and particularized "injury in fact" that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable decision." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1386 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Failure to establish any of these three elements deprives the federal court of jurisdiction . . . ." *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002). Additionally, Article III

standing is lacking where a plaintiff sues a state official who is without power to take the complained of action, and whose actions have not caused, or could not cause, any injury to her. *See Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir. 2001) (plaintiffs failed to establish Article III standing with respect to the governor, who had no authority to enforce the allegedly unconstitutional statute.)

Although Mrs. Das has asserted claims against the Secretary of State, she has failed to offer any facts that connect him with her injury: (Das Depo. at 11:2-6 (Q: …Did you visit the Secretary of State's website before this particular voting instance when you helped your mother? A: No, I didn't.), 12:6-8 ("Do you recall whether you saw any materials that have been published by the Secretary of State? A: No, I don't remember."), *id.* at 18:12-14 (Q: Did you reach out to anybody at the Secretary of State's Office after the fact? A: No.")

Instead, it appears that Mrs. Das joined the Secretary of State as a defendant solely because he serves as the chief election officer of the State. *See* Dkt. 14 ¶ 13 ("The Secretary of State serves as the Chief Election Officer of Texas and is responsible for administering the Texas Election Code.").

### 2. Plaintiff cannot trace her alleged injury to State Defendants' conduct.

Any injury suffered by Mrs. Das was not caused by the State Defendants:

- The State Defendants did not "fail[] to allow Mrs. Das the person of her choice to assist her by interpreting the ballot for her."  (Dkt. 14 ¶¶ 33, 38.)

- The State Defendants did not "fail[] to allow eligible voters to receive necessary assistance from any person of their choice, other than their employers or union officials . . . ." (Dkt. 14 ¶¶ 34, 39.)

- The Secretary of State did not "depriv[e] Plaintiffs of rights and privileges under Section 208 of the VRA under the color of Texas Election Code Ann. § 61.034 . . . ." (Dkt. 14 ¶ 40.)

- Williamson County's guidance inappropriately applied the rules governing an interpreter to an assistor. *See* Ex. 1, at pp. 3-23, ¶ 4.

Prior to the settlement between Mrs. Das and Williamson County, Williamson County's guidance stated that any person serving as both an assistor and an interpreter must meet the requirements of an interpreter, improperly conflating the two.[6] *See* Ex. 1 at pp. 3-23, ¶ 4 ("If the assistant in an interpreter, the interpreter must be a registered voter of the voter's county." (Texas Election Code Sec. 61.033)).

This guidance might lead a poll worker to improperly deny a voter's request to have her son accompany her to the voting machine to translate the ballot. But the Secretary of State does not author county election guidance. Consequently, Mrs. Das cannot tie Williamson County's instructions to the State Defendants.

Nor can Mrs. Das show how the Secretary of State's website and the Handbook for Election Judges and Clerks, which instruct election officers to follow the both the assistor and interpreter provisions of the Texas Election Code, caused her injury. (Dkt. 14 ¶ 14.) In essence, Mrs. Das complains that the Secretary of State instructs county officials to follow Texas law. But Texas law explicitly enables Mrs. Das to receive assistance from her son at the voting booth to translate the ballot. Thus, Mrs. Das cannot show how the Secretary of State's guidance caused her injury. Because Mrs. Das failed to establish an injury-in-fact that is fairly traceable to any alleged actions of the State Defendants, she lacks standing to bring this action against them. *See Lexmark*, 134 S.Ct. at 1386.

### 3.   Political subdivisions, and not the Secretary of State, carry out elections in Texas.

Although the Secretary of State is the chief election officer, this title does not make him a necessary party to every election-related proceeding, and it especially does not make him a

---

[6] *But see* footnote 2, *supra*.

necessary party in this case; wherein all of the facts alleged by Mrs. Das complain of actions taken by local election officers. (Dkt. 14 ¶¶ 24-29.)

Plaintiffs allege that the Secretary of State failed "to instruct voting officials to comply with their legal obligations under Section 208."  (Dkt. 14 ¶ 14.) Texas Election Code section 31.005, however, merely provides that "[t]he secretary of state may take appropriate action to protect the voting rights of the citizens of this state from abuse by the authorities administering the state's electoral processes." Tex. Election Code Ann. § 31.005(a) (emphasis added). That section further provides that the secretary may take action to correct any official conduct impeding a citizen's voting rights. *Id.* 31.005(b).

Texas Election Code section 31.005 "merely authoriz[es] the Secretary of State to take some action, but do[es] not confer on him a legal duty to take the contemplated action." *Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421 (5th Cir. 1997) (reversing the district court's determination that the Secretary of State had a duty to warrant that local election authorities followed the Americans with Disabilities Act). Thus, even though Williamson County's prior guidance incorrectly interpreted Texas law, the Secretary of State was under no duty to (nor does it or did it have any enforcement authority to) correct the improper county guidance regarding interpreters and assistors. In fact, if the Secretary of State does have such a duty or the enforcement authority, the Secretary of State would be required to inform Williamson County that its settlement agreement with Plaintiffs violates the Texas Election Code *vis-a-vis* the qualifications of an interpreter and prohibit it from enforcing that settlement agreement with respect to the interpreter qualifications; a result Plaintiffs surely cannot be advocating. Specifically, the settlement both removes the qualification that the interpreter be a registered voter in the voter's county, and adds the qualification that the interpreter not be an employer, agent of the employer, or officer or agent

of the voter's union. Neither of those qualifications (or lack thereof) are provided for in the Texas Election Code, and thus facially violate the Texas Election Code.

Accordingly, Plaintiffs cannot establish that the Secretary of State caused them a cognizable injury by failing to act, and therefore lack standing to pursue their claims against the Secretary of State. *See Lexmark*, 134 S.Ct. at 1386.

## C. OCA lacks standing.

OCA's alleged injuries do not meet the Fifth Circuit's standard for either organizational or associational standing. Furthermore, its claims are based on Mrs. Das's voting experience in Williamson County; not its own (or those of its members).

### 1. OCA lacks organizational standing.

This Court previously determined that OCA's Amended Complaint met threshold organizational standing requirements. (Dkt. 27, p. 11) However, evidence compiled during discovery demands a reassessment of this earlier finding. The record strongly suggests that OCA in fact lacks organizational standing.

"To have standing, an association or organization must satisfy the well-known requirements of Lujan." *NAACP*, 626 F.3d at 237. These requirements are as follows:

> First, the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized; and (b) 'actual or imminent, not "conjectural" or "hypothetical."' Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.' Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'

*Id.* (quoting *Lujan*, 504 U.S. at 560-61) (alterations in original). Each of these three elements is scrutinized below:

### a. OCA has not suffered an "injury in fact."

OCA's alleged injury is neither concrete nor particularized; it is neither actual nor imminent. OCA nevertheless attempts to establish injury-in-fact by claiming that the State Defendants' conduct "has already required and will require [it] to expend its limited funds and other resources to educate its members and other Asian American voters on how to vote . . . ." (Dkt. 14 at ¶ 10.) The testimony of OCA's representative, Deborah Chen, suggests otherwise.

In *NAACP v. City of Kyle,* the Fifth Circuit noted that "[n]ot every diversion of resources to counteract the defendant's conduct, however, establishes injury in fact." 626 F.3d at 238. In that case, the court found that the plaintiffs lacked an injury-in-fact because they could not demonstrate any diversion of resources that "concretely and perceptibly impaired" their ability to carry out their stated purpose, noting that "[a]t most, they have established 'simply a setback to the organization's abstract social interests.'" *Id.* at 239. The Fifth Circuit based its finding on the following observations:

- The organization's activities to counteract the alleged harmful conduct ("which basically boil down to examining and communicating about developments in local zoning and subdivision ordinances") appeared no different from the organization's routine lobbying activities;

- The organization did not identify "any specific projects that [it] had to put on hold or otherwise curtail" in order to respond to the alleged harmful conduct; and

- The organization "only conjectured that the resources that [it] had devoted to the revised ordinances could have been spent on other unspecified [organizational] activities."

*Id.* at 238-39.

OCA is a nonprofit organization that "promotes civic participation among Asian Americans." (Dkt. 14 at ¶ 9.) In 2016, OCA will carry out its broad mandate with a projected annual budget between $130,000 and $140,000. (Chen Depo. at 24:13-25, 25:1.) OCA relies on annual dues, private donations, and corporate sponsorships, but the bulk of its activities are

financed through outside grants. (*Id.* at 25:2-26:13.) Among other projects, OCA leads a Get-Out-the-Vote initiative, which covers OCA's election-related activities, including educating members about voting assistance. (*Id.* at 6:9-19, 30:14-15, 31:15-16, 32:3-4, 18:2-4.)

Largely self-funded in the past, in recent years Get-Out-The-Vote has been financed entirely through an annual grant of approximately $20,000. (*Id.* at 32:19-25, 33:12-15, 35:6-36:15.) OCA has never exhausted its annual grant, nor has it been forced to dip into reserve funds. (*Id.* at 86:10-17.) No other projects (gala dinner, film festival, book talks, etc.) have been negatively impacted, put on hold, or suffered from a reduction in funds due to any alleged injury because all projects are equally prioritized and independently funded. (*Id.* at 37:9-24.) In 2016, OCA plans to use Get-Out-the-Vote grant funds to print and circulate postcards that highlight important voting dates, staff phone banks, and expand community outreach at senior and community centers. (*Id.* at 41:3-42:24.)

OCA's efforts to counteract the State Defendants' alleged harmful conduct appear no different from its routine Get-Out-the-Vote project activities. At most, educating voters on assistance under Texas election laws poses an inconvenient distraction to staff and volunteers already on site to help educate voters: "…it just costs us more time . . . if we didn't have to go and explain all of that, maybe it would have just been a five-minute conversation versus us having to stop and explain all of this. You know, it becomes a 10- or 15-minute conversation."[7] (*Id.* at 47:1-

---

[7] This "injury" is repeated in multiple instances: (1) "It's not about, you know, financially how much we've allocated . . . it costs potentially more time for, you know, volunteers that we have." (Chen Depo. at 89:11-25) (2) ". . . five minutes versus having to spend, you know, 10 or 15 minutes trying to explain: Well, you know, if and when you do go to vote, you know, be sure to bring your voter ID, you know, be sure you understand what it means, you know, to be—if you're bring an assistant or you're bringing a translator—like, that costs us more in time." (*Id.* at 90:16-22.) (3) ". . . it costs each volunteer 15 minutes to talk to someone instead of just 5 minutes . . . ." (*Id.* at 91:14-16.)

8.) OCA used Get-Out-the-Vote grant funds to "hire people to offset" volunteer time that could be been spent on additional mailers, "gas to be able to take seniors to go vote . . . ," or ". . . better, you know, snack food or—or lunch for the people who are, you know, volunteering during the exit survey."[8] (*Id.* at 94:13-95:4.) To the extent that they are not purely conjectural, these alternative uses of Get-Out-the-Vote funds is consistent with regular Get-Out-the-Vote activities.

An extended conversation does not satisfy the injury-in-fact standard set forth in *Lujan* and clarified in *NAACP*. OCA cannot demonstrate any diversion of resources that "concretely and perceptively impaired" their ability to carry out their Get-Out-the-Vote project (or any other project, for that matter). *See NAACP*, 626 F.3d at 239. Without an injury-in-fact, OCA lacks standing to pursue its claims.

### b.   OCA's alleged injury is not "fairly traceable" to the State Defendants.

OCA also fails to meet the second prong of Lujan: ". . . there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant . . . .'" *NAACP*, 626 F.3d at 237 (quoting *Lujan*, 504 U.S. at 560-61) (alterations in original).

First, OCA has not suffered an injury (*see* above). Second, the voting materials that they provide to their members are received from the Harris County Clerk's Office; not from the Secretary of State. (Chen Depo. at 18:5-15.) The postcards that OCA distributes include the website and phone number for the Harris County Clerk's Office and do not include any information about voter assistance. (*Id.* at 43:15-18; 44:9-12.) OCA does not provide its members with voting

---

[8] Independent contractors hired out of the Get-Out-the-Vote grant in 2015 helped to staff phone banks and stamp and label cards. (*Id.* at 96:3-14.) If OCA receives the same $20,000 Get-Out-the-Vote grant in 2016, they hope to hire additional independent contractors for these types of community outreach activities. (*Id.* at 97:8-25.)

instructions issued by the State Defendants; nor does it counsel its members to consult the Secretary of State's office or website. (*Id.* at 44:5-8, 84:2-5.)

In short, OCA fails to establish any causal connection between its alleged injury and the State Defendants. The only concrete injury alleged in this matter is the result of the independent action of a third party based on guidance that conflicted with Texas law.

### c.   Redressability is speculative.

OCA fails to satisfy the third prong of Lujan: ". . . it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *NAACP*, 626 F.3d at 237 (quoting *Lujan*, 504 U.S. at 560-61). But because the Secretary of State has no enforcement authority over the counties with respect to the assistor—interpreter provisions, and does not implement the assistor—interpreter provisions at a local level, even a change in the Secretary's guidance does not guarantee that a local official will not misinterpret Texas law.

### 2.   OCA lacks associational standing.

An association has standing to sue on behalf of its members when (1) its members have standing to sue in their own right; (2) the interests at issue are germane to the association's purpose; and (3) the participation of individual members in the lawsuit is not required. *Hunt v. Wash. St. Apple Adver. Comm'n,* 432 U.S. 333, 343 (1977). The State Defendants agree that the second prong is met. The first and third are lacking.

OCA's members do not have standing to sue the State Defendants in their own right. Even if one election official in one precinct in one county improperly deprived Mrs. Das of assistance at the ballot box from the person of her choice, this isolated and county-specific incident does not confer standing on OCA and its members.

First, OCA-Houston admits that Mrs. Das is not a member of their organization. (Chen Depo at 19:22-24.) OCA cannot sue under an associational standing theory if the allegedly

aggrieved party is not one of its members. *See Tex. Peace Officers Ass'n v. City of Galveston*, 944 F.Supp. 562, 564 (S.D. Tex. 1996) ("As it is, Plaintiffs fail to plead the most basic requirement of associational standing—that individual Plaintiffs are members of the organization."). Any other alleged injury to OCA's members is therefore conjectural and thus fails to establish an injury-in-fact. *See Lujan*, 504 U.S. at 560.

Second, participation of OCA's individual members would be required. The third prong is prudential and focuses on "matters of administrative convenience and efficiency" with regard to the claims asserted and the relief requested. *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 551 (5th Cir. 2010). Pleading for equitable relief does not automatically satisfy the third prong of the associational standing test. *See Friends for Am. Free Enter. Ass'n v. Wal-Mart Stores, Inc.,* 284 F.3d 575, 577 (5th Cir. 2002). Here, the voting experiences of OCA members may vary significantly from one county to another, in part because bilingual materials may be available in one county and not in another. 52 U.S.C.A. § 10503(c) (Applicable to covered jurisdictions as respects languages identified by the federal government.) Thus, they also prevent the efficiency sought by the third *Hunt* prong. In short, OCA cannot establish associational standing.

### D. Texas election law comports with the Voting Rights Act.

Texas election law provides limited-English proficient voters with assistors of their choice. Assistors may accompany voters into the voting booth, pursuant to Chapter 64 of the Texas Election Code. Nothing prevents an assistor from translating for a voter, and in fact, the assistor provisions make clear that a function of an assistor may be to translate the ballot. *See, e.g.*, Tex. Election Code § 64.031 (referring to "inability to read the language"); § 64.0321 (referring to "reading the ballot to the voter"). Texas law also permits interpreters, but the qualifications are different. The selected interpreter must be registered in the same county as the voter, but there is

nothing prohibiting the interpreter from being an employer, agent of the employer, or officer or agent of the voter's union. *See* Texas Election Code, Chapter 61.

### 1.  Texas Election Code, Chapter 64, Subchapter B: Assisting Voter

The Voting Rights Act entitles a voter to assistance at the ballot box. *See* 52 U.S.C.A. § 10508. The state equivalent, Chapter 64 of the Texas Election Code, addresses voting procedures generally. Section 64.031 outlines assistance eligibility:

> A voter is eligible to receive assistance in marking the ballot, as provided by this subchapter, if the voter cannot prepare the ballot because of:
>
> (1)      a physical disability that renders the voter unable to write or see; or
>
> (2)      an inability to read the language in which the ballot is written.

Tex. Election Code Ann. § 64.031. Thus, a voter who is limited-English proficient is entitled to assistance under section 64.031(2). The history behind the assistance provisions in the Voting Rights Act make it clear that the provisions were intended to avoid undue influence on the voter because of the voter's inability to read the ballot, and avoid the voter being intimidated inside the polling booth. *See, e.g.*, Plaintiffs' Ex. A at 5 ("The Committee has concluded that the only kind of assistance that will make fully 'meaningful' the vote of the blind, disabled, or those who are unable to read or write, is to permit them to bring into the voting booth a person whom the voter trusts and who cannot intimidate him. Since blind, disabled, or illiterate voters have the right to 'pull the lever of a voting machine', they have the right to do so without fear or intimidation or manipulation.") This is precisely what Sections 64.031, 64.032 and 64.0321 of the Texas Election Code do. Section 64.031 includes examples of authorized assistance, none of which prohibits an assistor from translating for a voter inside the voting booth, and all of which are designed to permit the voter to cast a ballot free of fear, intimidation, or manipulation inside the voting booth.

In short, both Texas law and the Voting Rights Act provide voters unable to read the ballot with an assistor of their choice, provided that the assistor is not also the voter's employer, an agent of their employer, or an officer or agent of their union. Indeed, Plaintiffs admit that "[r]elevant parts of [Texas Election Code section 64.032] substantially mirror Section 208" of the Voting Rights Act." (Dkt. 14 ¶ 20.)

In a similar case out of the Third Circuit, *U.S. v. Berks County, Pa*., the U.S. Department of Justice brought an action against Berks County, Pennsylvania, alleging violations of the Voting Right Act.[9] *U.S. v. Berks County, Pa*., 250 F. Supp. 2d 525, 530-31 (2003). The facts in that case, nearly identical to ours, bear repeating:

> Due to the lack of bilingual materials and assistance available at the polling places, many voters attempt to bring bilingual friends or family members to the polling places to assist them. However, in certain instances, poll workers have not permitted voters to bring their assistors of choice with them. One voter had accompanied to the polling place her elderly mother, who was born in Puerto Rico and speaks little English, and attempted to enter the voting booth to assist her, but was told by a poll worker that she could not enter the booth.

*Id*. at 530-31 (internal citations omitted). The court found that a violation of Section 208 was likely: "When voters are denied the right to bring their assistor of choice into the voting booth, they feel uncomfortable with the process, do not understand the ballot, and cannot cast a meaningful vote." *Id*. at 538 (emphasis added). Thus, the Court's findings were specific to the inside of the voting booth.

---

[9] Interestingly, although the parties stipulated that, "Berks County is a County within the Commonwealth of Pennsylvania and is governed by the laws of that State," the Pennsylvania Secretary of State, as that State's chief election officer, was not included as a party to the action. *U.S. v. Berks County Pa.*, 277 F. Supp. 2d 570, 573 (2003). This is because, as in Texas, each county in Pennsylvania and its elections officials maintain "statutory powers, duties, and responsibilities concerning the conduct of elections within [that County]." *Id*; *see also* Tex. Election Code § 12.001 ("county tax assessor-collector is the voter registrar for the county unless the position of county elections administrator is created or the county clerk is designated as the voter registrar.")

The State Defendants agree that limited-English proficient voters in Texas (historically unlike their Pennsylvania counterparts) are entitled to an assistor of their choice (including children of limited-English proficient voters who are registered to vote in neighboring precincts) who may accompany them into the voting booth. An assistor of the voter's choice may read the ballot to the voter (in a foreign language, if necessary), direct the voter to read the ballot, mark the voter's ballot, or direct the voter to mark the ballot. Tex. Election Code Ann. § 64.0321. As stated above, a voter like Mrs. Das is eligible to receive this assistance if she cannot prepare her own ballot due to "an inability to read the language in which the ballot is written." *Id. at* § 64.031. Both parties agree that this level of assistance conforms to both the letter and spirit of the Voting Rights Act, Section 208. (Dkt. 14 at ¶ 20.)

### 2. Texas Election Code, Chapter 61, Subchapter B: Interpreter

Texas law also provides voters with access to interpreters, pursuant to Texas Election Code, Chapter 61, Subchapter B. This interpreter provision requires that election officers communicate only in English when "performing an official duty in connection with the election," unless the voter cannot communicate in English, in which case the "election officer may communicate with the voter in a language that the voter and officer understand." Tex. Election Code Ann. § 61.031.

Section 61.032 provides an option in case the election official and voter cannot communicate in a common language[10]. Unlike the assistor provisions, the interpreter provisions

---

[10] While Section 61.034 of the Election Code authorizes an interpreter to translate the ballot inside the voting station, the Secretary of State has taken, and will continue to take, the position that once the interpreter wishes to enter the voting booth, the interpreter must also qualify as, and take the oath of, an assistor under Chapter 64. For example, a voter's employer would not be able to enter the voting booth with the voter to translate as an "interpreter" (because the employer could not translate as an "assistor".) However, if, for example, a voter's hypothetical employer was attempting to help an employee voter communicate with a poll worker outside of the voting booth, but in the polling place, the Secretary of State would take the position that action does not violate either the assistor provisions in the Texas Election Code, or the Voting Rights Act, because it is outside the bounds of both of the two statutes. Accordingly, the interpreter provisions offer

---

restrict who may serve as an interpreter to a registered voter of the county, but they do not exclude a voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs. *See, e.g.*, § 61.033 ("Any person who wishes to serve in this capacity "must be a registered voter of the county in which the voter needing the interpreter resides" and must also take an oath.) In addition, Texas law requires the interpreter must swear to "correctly interpret and translate each question, answer, or statement addressed either to the voter by any election officer to an election officer by the voter." *Id.* § 61.035. The danger here is straightforward: If an election officer cannot understand the translation, then the officer cannot verify that the interpreter is providing the voter with accurate and proper instructions.

The oath requirement recognizes that the interpreter is performing official duties at the direction of the election officer. Indeed, election officers also take an oath before performing official functions, affirming that they will faithfully perform their duties and will not attempt to influence a vote or voter. *Id.* § 62.003. Those providing assistance under Chapter 64 are also required to take an oath. *Id.* § 64.034. They must swear that they will not attempt to influence a vote or voter, that they will confine their assistance to answering the voter's questions and reading the ballot, and that they will prepare the ballot as the voter directs. *Id.*

Even if the interpreter provisions were removed from the Texas Election Code, Texas law would still comply with Section 208. The assistor provisions, standing alone, provide Texas voters with the help they are entitled to under the Voting Rights Act. Nothing prevents an individual from acting as both an interpreter and an assistor, provided that the individual meets the qualifications

---

additional options for voters, beyond minimum Voting Rights Act requirements. A simple restriction on who may serve as an interpreter, when it does not include other restrictions which apply to assistors, cannot conflict with the Voting Rights Act.

in both Sections 64.032(b) and 64.032(c) of the Texas Election Code. Similarly, nothing prevents a voter from receiving aid from an assistor and an interpreter. Accordingly, the restrictions on who may serve as an interpreter cannot be read as limiting the assistance to which voters are entitled under both Section 208 and state equivalent assistor provisions.

When properly applied, these dual provisions provide limited-English proficient and illiterate voters with ample aid to properly execute their ballots. They comport with the Voting Rights Act. Accordingly, and because there is no genuine issue of material fact regarding the language contained in these provisions, the State Defendants are entitled to judgment as a matter of law.

## CONCLUSION AND PRAYER

For the foregoing reasons, Defendants respectfully request that the Court grant its Motion for Summary Judgment, and dismiss Plaintiff's lawsuit with prejudice.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFERY C. MATEER
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ANGELA V. COLMENERO
Chief - General Litigation Division

/s/ *Matthew Deal*
LAURA A. BARBOUR
Texas Bar No. 24069336
MATTHEW DEAL
Texas Bar No. 24087397
Assistant Attorneys General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 473-0447
FAX:  (512) 320-0667
laura.barbour@texasattorneygeneral.gov
matthew.deal@texasattorneygeneral.gov

ATTORNEYS FOR STATE DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been sent by electronic notification through ECF by the United States District Court, Western District of Texas, Austin Division, on April 29, 2016 to:

David M. Hoffman
FISH & RICHARDSON, P.C.
111 Congress Avenue, Suite 810
Austin, Texas 78701

Henry W. Prejean
Assistant County Attorney
Williamson County Attorney's Office
405 Martin Luther King Street, Box 7
Georgetown, Texas 78626

Jerry Vattamala
Asian American Legal Defense and Education
Fund
99 Hudson Street
New York, New York 10013

_/s/ Matthew Deal_____
MATTHEW DEAL
Assistant Attorney General