UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| OCA – GREATER HOUSTON and | § | |
| MALLIKA DAS, | § | |
| *Plaintiffs*, | § | |
| | § | |
| | § | Civil Action No. 1:15-cv-00679-RP |
| v. | § | |
| | § | |
| STATE OF TEXAS, et al., | § | |
| *Defendants*. | § | |

---

**STATE DEFENDANTS' RESPONSE
TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

---

KEN PAXTON
Attorney General of Texas

JEFFERY C. MATEER
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil
Litigation

ANGELA V. COLMENERO
Chief - General Litigation Division

LAURA A. BARBOUR
Texas Bar No. 24069336
MATTHEW DEAL
Texas Bar No. 24087397
Assistant Attorneys General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 473-0447
FAX: (512) 320-0667
laura.barbour@texasattorneygeneral.gov
matthew.deal@texasattorneygeneral.gov

ATTORNEYS FOR STATE DEFENDANTS
May 6, 2016

**Table of Contents**

Table of Authorities ...................................................................................................................iii

**I.**     Introduction ........................................................................................................... 1

**II.**    Mrs. Das lacks standing. .......................................................................................... 4

**III.**   OCA-GH lacks standing. .......................................................................................... 5

**IV.**    Texas election law comports with Section 208................................................... 6

**V.**     Conclusion .............................................................................................................. 8

# TABLE OF AUTHORITIES

**Cases**
*Wallace v. Tex. Tech Univ.*, 80 F.3d 1042 (5th Cir. 1996) .................................................... 4

**Statutes**
42 U.S.C. § 1988 ..................................................................................................... 2
52 U.S.C. § 10310(e) .............................................................................................. 2
52 U.S.C. § 10503 .................................................................................................. 5
Acts 1985, 69th Leg., Ch. 211, Sec. 1, eff. Jan. 1, 1986 .......................................... 8
Tex. Admin. Code Ann. § 81.113 ........................................................................... 7
Tex. Election Code Ann. §  64.031 ..................................................................... 1, 2
Tex. Election Code Ann. §  64.032 .................................................................. 1, 2, 7
Tex. Election Code Ann. § 61.033 .......................................................................... 7
Tex. Election Code Ann. § 61.034 .......................................................................... 7
Tex. Election Code Ann. § 61.035 .......................................................................... 7
Tex. Election Code Ann. § 64.032(c) ...................................................................... 2
Tex. Election Code Ann. § 64.0321 .................................................................... 1, 2
Tex. Election Code Ann. ch. 61 ......................................................................... 4, 8
Tex. Election Code Ann. ch. 61, subch. B .......................................................... 1, 7
Tex. Election Code Ann. ch. 64 ................................................................... 3, 4, 7, 8
Tex. Election Code Ann. ch. 64, subch.B ........................................................... 1, 7

COMES NOW the State of Texas and Carlos Cascos, in his official capacity as Secretary of State of Texas ("Secretary of State" and, collectively, "the State Defendants"), and submit their Response to Plaintiffs' Motion for Summary Judgment:

## I.  Introduction

This case arises from Williamson County election guidance that conflated two provisions of the Texas Election Code: the "assistor" and "interpreter" provisions. *See* Chapter 64, Subchapter B and Chapter 61, Subchapter B of the Texas Election Code, respectively. On October 31, 2014, Mr. Saurabh Das asked a Williamson County poll worker if he could "translate" the ballot for his mother. Dkt. 14 at ¶ 24, Exhibit 2, Deposition of Saurabh Das ("Das Depo.") at 13:6-14. The poll worker – following Williamson County's improper guidance—denied the request, not recognizing that Sections 64.031, 64.032, and 64.0321 of the Texas Election Code allowed Mr. Das to render broad assistance (including ballot translation) to his limited-English proficient mother. Dkt. 14 at ¶ 28; Das Depo., at 13:11-14. Under existing Texas law, Mr. Das should have been permitted to join his mother in the voting booth in order to interpret the ballot.[1]

Should Mrs. Das vote in the future in Williamson County (the county in which she is registered[2]), there is no evidence to suggest that she will experience the same problem; her son will be permitted to assist her at the voting booth, just as he was when she voted in 2014, notwithstanding the Williamson County poll worker's incorrect action at that time. Furthermore, there is no indication that this type of confusion is widespread, yet Plaintiffs seek sweeping,

---

[1] As indicated in Defendants' Motion for Summary Judgment, Williamson County's attempt to accommodate Mrs. Das overcorrects by imposing all assistor requirements on interpreters. *See* Exhibit 1 ("Williamson County Elections Department Poll Worker Training Guide") at 3-23, ¶4. This provision is inconsistent with Texas law, and was not necessary to allow a voter to bring an assistant into the voting booth to translate the ballot, which is already permitted under existing Texas law. Dkt. 45 at 6.
[2] Das Depo. at 6:18-22.

statewide invalidation of the "interpreter" provision of the Texas Election Code. Dkt. 14 at 8. They seek to enjoin enforcement of this provision, and they ask this Court to order the State Defendants – who had zero involvement in the October 31, 2014, incident – to "develop a remedial plan" that would ensure compliance with Section 208.[3] *Id.* This request is mooted by the existence of the "assistor" provision, pursuant to which voters like Mrs. Das may already seek assistance (including translation) from registered voters of their choosing, subject to the same employer and union-related restrictions as Section 208. Tex. Election Code Ann. § 64.032(c).

Plaintiffs nevertheless exaggerate the State Defendants' involvement in this matter:

- "State Defendants . . . are, in fact, actively erecting an obstacle to the right to assistance secured by the VRA's Section 208." Dkt. 44 at 7.

- "There is no doubt that State Defendants actively facilitate and encourage enforcement of the Texas Election Code in a manner that contradicts Section 208 by restricting the voters' choice of an interpreter to persons registered to vote in the same county. As such, there are no material facts in dispute as to whether State Defendants' conduct constitutes a violation of Section 208." *Id.* at 8.

First, it is axiomatic that the State Defendants would not "…actively [erect] an obstacle to the right to assistance secured by the VRA's Section 208," but simultaneously enshrine that very right to assistance through a state equivalent: Tex. Election Code Ann. §§ 64.031, 64.032, and 64.0321. One does not beget the other. Second, the right to an interpreter is additive rather than restrictive. When properly interpreted, it cannot be said to impede a voter's right to assistance; a right that includes ballot interpretation, and which—by Plaintiffs' admission—is the only task in which Mrs. Das sought to have her son participate. *See, e.g.*, Dkt. 44 at 10 ("[a]t the request of Ms. Das, Saurabh Das intended to assist his mother in voting by performing translating services that she

---

[3] Plaintiffs also seek attorney's fees pursuant to 42 U.S.C. § 1988 and 52 U.S.C. § 10310(e). Dkt. 44 at 23. The State Defendants assert that such an award would be unjust under these circumstances because, among others reasons, Plaintiffs lack standing to bring their claims against the State Defendants (see below). Plaintiffs are also the beneficiaries of pro bono representation.

indicated were needed to understand the ballot"); Dkt. 44 at 11 ("Saurabh observed Ms. Das as she operated the voting machines to cast her ballot and noted that she appeared uncomfortable and confused.")

Plaintiffs do not make a single claim about any difficulty Mrs. Das had in communicating with a poll worker. There is thus no evidence to suggest that any particular voter has been hindered by any provision of the Texas Election Code. Instead, the legislative history recounted by Plaintiffs indicates that the purpose of Section 208 was to allow the very assistance Chapter 64 of the Texas Election Code already covers; assistance in reading and writing; i.e., understanding the ballot. *See, e.g.*, Dkt. 44 at 6 ("Section 208 was meant to ensure that blind or disabled persons or those *unable to read or write in Engli*sh (*i.e.*, LEP citizens) could receive voting assistance from a person of their own choosing.") (emphasis added); at n. 1 (referring to issues with voters possibly not being able to "understand the office for which the various candidates are running," as well as not understanding "the various propositions, ranging from bond authorizations to constitutional amendments," all of which are issues which can only occur when the voter is in the ballot box filling out a ballot); at 7 (referring to voters "casting a ballot in the presence of" someone).

Furthermore, the set of facts at issue occurred in Williamson County, Texas. Dkt. 14 at ¶¶ 24-29. The record is void of any facts to support the notion that the State Defendants "actively facilitate and encourage enforcement" of Texas election law in a manner contrary to Section 208. Dkt. 44 at 8. Conversely, the record indicates that the State Defendants played no role in the October 31, 2014, incident and that Plaintiffs never consulted the Secretary of State for statutory guidance or interpretation. Das Depo. at 11:2-6, 12:6-8, 18:12-14. Neither Mrs. Das nor her son ever researched Texas law, nor did they check the Secretary of State's website regarding voter assistance. *Id.* Finally, Plaintiffs put forth no evidence to suggest that any Williamson County

election officials contacted the Secretary of State's office regarding the issue. Plaintiffs' alleged grievances relate only to one Williamson County poll worker's misinterpretation and improper conflation of Chapters 61 and 64 of the Texas Election Code.[4] For these reasons, the State Defendants respectfully request that this Court deny Plaintiffs' Motion for Summary Judgment.

**II.  Mrs. Das lacks standing.**

Plaintiffs recite the *Lujan* standard: "*Lujan* requires a plaintiff to show that he or she has suffered an injury in fact that is fairly traceable to the challenged acts of the defendant and that is likely to be redressed by a favorable judicial decision." Dkt. 44 at 18-19. Mrs. Das's injury, however, is not "fairly traceable" to the State Defendants because the error that forms the basis of her grievance was based on a political subdivision's misinterpretation of state law. Furthermore, Mrs. Das has not suffered any injury that is not already addressed by the Texas Election Code in its current state.

Mrs. Das's alleged injury was not caused by provisions of Texas law or by the Secretary of State's guidance. Citing an earlier ruling from this Court, Plaintiffs write that, ". . . there is a 'reasonable likelihood' that Ms. Das will again be subject to harm '[i]nsofar as the law remains in force and Defendants continue to urge the application of that law.'" Dkt. 44 at 19, citing Dkt. 27 at 9 (citing *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 n.3 (5th Cir. 1996). This assertion lacks credibility because the only help Ms. Das herself has ever asserted that she needed was help translating the ballot, which is already permitted under Texas law.[5]

---

[4] Plaintiffs also provide no credible evidence from any other voter suggesting any similar event has occurred in any other election in either Williamson County or any other county in Texas.

[5] In addition, while Plaintiffs only note that Ms. Das voted previously in 2012, Ms. Das has in fact voted in Texas elections for over 10 years, since at least 2004. *See* Exhibit 3, Declaration of Brian Keith Ingram.

**III. OCA-GH lacks standing.**

Plaintiffs claim that, ". . . there can be no reasonable dispute that [Organization of Chinese Americans—Greater Houston ("OCA-GH")] also has independent standing." Dkt. 44 at 19. The State Defendants assert the reverse because the record suggests otherwise: There can be no reasonable dispute that OCA-GH *lacks* independent standing because OCA-GH has not been injured.

Unlike Williamson County, Harris County—home to OCA-GH—is a "qualifying jurisdiction" that provides voting materials to "language minorities" in accordance with 52 U.S.C. § 10503 ("Section 203"). Plaintiffs' Motion for Summary Judgment provides some background information in this regard:

> Section 203 requires the availability of bilingual voting materials (*i.e.*, registration or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process, including ballots) in state or political subdivisions having a threshold amount of LEP voters (*e.g.*, more than 5% or more than 10,000 voting-age citizens of a single language minority).

Dkt. 44 at 1-2. These protections set Harris County apart from smaller counties like Williamson, ". . . where the qualifying thresholds of Section 203 are not met, and English-only voting materials are permitted." Dkt. 44 at 6. OCA-GH does not allege specific instances of voter confusion in its home county like that allegedly experienced by Mrs. Das in Williamson County.[6]

Plaintiffs express concern over the "arduous endeavor" that OCA-GH must undertake when informing its members "…about the requirements of the Texas Election Code's Interpretation Provisions, which undoubtedly frustrates OCA-GH's mission to promote civic

---

[6] Plaintiffs overstate the record on this point. Dkt. 44 at 12. While it is true that OCA-GH's representative vaguely recounted two adverse voting experiences orally reported by members (presumably in Harris County), OCA-GH does not keep a record of these types of occurrences, and none is affirmatively alleged as part of this lawsuit. *See* Exhibit 4, Deposition of Deborah Chen ("Chen Depo.") at 73:16-74:3, 77:1-78-12, 79:17-22.)

participation among Asian Americans." Dkt. 44 at 21. First, the "arduous endeavor" is carried out by providing specific instructions to members; namely, that they should tell poll workers that their ". . . helper is an 'assistor' not an 'interpreter' or 'translator.'" Dkt. 44 at 21. OCA-GH's representative described the practical implications of this explanation: ". . . it just costs us more time . . . if we didn't have to go and explain all of that, maybe it would have just been a five-minute conversation versus us having to stop and explain all of this. You know, it becomes a 10- or 15-minute conversation."[7] Chen Depo. at 47:1-8. A conversation that OCA-GH volunteers are already having with members, even if extended by five to ten minutes, does not constitute an "arduous endeavor." Second, a conservation about how to receive voting assistance cannot "frustrate" OCA-GH's mission to educate and encourage civic participation. Volunteers merely extend a conversation that they are already having in the context of their stated mission.

**IV. Texas election law comports with Section 208.**

Plaintiffs write that, "All parties and the Court agree that the Assistance Provisions do not place restrictions on voter choice beyond those found in the VRA." Dkt. 44 at 16. They continue: "All parties and the Court also agree, however, that the Interpretation Provisions **_do_** place restrictions beyond those found in Section 208 insofar as they are enforced to limit voter choice of an interpreter to persons registered to vote in the same county." *Id*. (emphasis in original).

The latter assertion obscures the record. Like Section 208, the interpreter provisions impose restrictions on who may aid the voter; but those restrictions do not undermine Section 208. *See*

---

[7] This alleged injury is repeated in multiple instances: (1) "It's not about, you know, financially how much we've allocated . . . it costs potentially more time for, you know, volunteers that we have." Chen Depo. at 89:11-25. (2) ". . . five minutes versus having to spend, you know, 10 or 15 minutes trying to explain: Well, you know, if and when you do go to vote, you know, be sure to bring your voter ID, you know, be sure you understand what it means, you know, to be—if you're brining an assistant or you're bringing a translator—like, that costs us more in time." *Id.* at 90:16-22. (3) ". . . it costs each volunteer 15 minutes to talk to someone instead of just 5 minutes . . . ." *Id.* at 91:14-16.

Tex. Election Code Ann. §§ 61.033, 61.035. When properly followed by political subdivisions tasked with administering elections, the interpreter provisions are supplemental to both Section 208 and its state equivalent, the assistor provision. *See* Tex. Election Code Ann., Chapter 64, Subchapter B.

Plaintiffs also assert that, "…in certain circumstances involving LEP voters, the duties of a chosen interpreter overlap with those of a chosen assistor at least inside the ballot box." Dkt. 44 at 16. The two provisions overlap; but they do not collide. In circumstances where they are both at play, an assistor of the voter's choosing may interpret the ballot for the illiterate or limited-English proficient voter, so long as that assistor qualifies under Section 64.032 of the Texas Election Code.[8]

Plaintiffs seek to reinforce their position by arguing that, "[t]he Office of the Secretary of State adopted TAC §81.113 as an emergency measure . . . ." Dkt. 44 at 17. But nothing in the emergency rule is inconsistent with either Chapter 61 or Chapter 64 because the emergency rule, like the Voting Rights Act, applies only to "assistance to vote by reason of blindness, disability, or inability to read or write . . . ." In other words, it does not cover communication with poll

---

[8] As noted in Defendants' Motion for Summary Judgment, while Section 61.034 of the Election Code authorizes an interpreter to translate the ballot inside the voting station, the Secretary of State has taken, and will continue to take, the position that once the interpreter wishes to enter the voting booth, the interpreter must also qualify as, and take the oath of, an assistor under Chapter 64. For example, a voter's employer would not be able to enter the voting booth with the voter to translate as an "interpreter" (because the employer could not translate as an "assistor"). However, if, for example, a voter's hypothetical employer was attempting to help an employee voter communicate with a poll worker outside of the voting booth, but in the polling place, the Secretary of State would take the position that action does not violate either the assistor provisions in the Texas Election Code, or the Voting Rights Act, because it is outside the bounds of both of the two statutes. Accordingly, the interpreter provisions offer additional options for voters, beyond minimum Voting Rights Act requirements. A simple restriction on who may serve as an interpreter, when it does not include other restrictions which apply to assistors, cannot conflict with the Voting Rights Act.

workers, but rather assistance inside the polling place to read or write on the ballot, which is the exact subject matter already covered in the Texas Election Code. In addition, it is clear from a review of the Texas Register that the emergency rule and its subsequent regularly adopted rule became obsolete once the Election Code, as organized now, and including Chapters 61 and 64, was adopted effective January 1, 1986. *See, e.g.*, Acts 1985, 69th Leg., Ch. 211, Sec. 1, eff. Jan. 1, 1986.[9]

## V.  Conclusion

Based on the foregoing, the State Defendants respectfully request that Plaintiffs' Motion for Summary Judgment be denied.

---

[9] The emergency version of Rule 81.113 expired on June 16, 1984; the regular version was adopted in the July 20, 1984, version of the Texas Register. (*See* Exhibit 5, 9 Tex. Reg. 3925 (1984); Exhibit 6, 9 Tex. Reg. 1181-82, 1187 (1984).) The Regular version of Rule 81.113 was proposed for repeal in the May 6, 1986, version of the Texas Register (*See* Exhibit 7, 11 Tex. Reg. 2052-2128, 2042 (1986)), with no apparent substitute, in light of the new version of the Texas Election Code. It was repealed effective June 27, 1986 (*see* Exhibit 8, 11 Tex. Reg. 2740 (1986)) because it "was promulgated under the former Texas Election Code that was repealed effective January 1, 1986," and was "made in conjunction with the adoption of new sections promulgated under the new Texas Election Code which went into effect January 1, 1986." The order adopting the repeal specifically stated that, "[t]he repealed sections are obsolete, as they were promulgated under the old Texas Election Code." *Id.* at 2739.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFERY C. MATEER
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ANGELA V. COLMENERO
Chief - General Litigation Division


*/s/ Mathew Deal*
LAURA A. BARBOUR
Texas Bar No. 24069336
MATTHEW DEAL
Texas Bar No. 24087397
Assistant Attorneys General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 473-0447
FAX:  (512) 320-0667
laura.barbour@texasattorneygeneral.gov
matthew.deal@texasattorneygeneral.gov

ATTORNEYS FOR STATE DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been sent by electronic notification through ECF by the United States District Court, Western District of Texas, Austin Division, on May 6, 2016 to:

David M. Hoffman                        Jerry Vattamala
FISH & RICHARDSON, P.C.                  Asian American Legal Defense and Education Fund
111 Congress Avenue, Suite 810           99 Hudson Street
Austin, Texas 78701                      New York, New York 10013


                    */s/ Matthew Deal*
                    MATTHEW DEAL
                    Assistant Attorney General