IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **OCA-GREATER HOUSTON,** *et al.*,<br><br>    **Plaintiffs,**<br><br>    v.<br><br>**STATE OF TEXAS,** *et al.*,<br><br>    **Defendants.** | **CIVIL ACTION NO. 1:15-cv-00679-RP** |

**REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT (DKT. 44)**

Plaintiffs Mallika Das and Organization of Chinese Americans-Greater Houston ("OCA-GH" and, collectively, "Plaintiffs") hereby file their Reply in Support of Plaintiffs' Motion for Summary Judgment (Dkt. No. 44). Plaintiffs respectfully show the Court as follows:

## I. INTRODUCTION

Plaintiffs have respectfully requested this Court to enter summary judgment in favor of their claims against Defendants the State of Texas and Carlos Cascos, in his official capacity as Secretary of State ("Secretary of State" or "Secretary" and, collectively, "State Defendants"), under Section 208 of the Voting Rights Act of 1965 (the "VRA"), 52 U.S.C. § 10508 (formerly 42 U.S.C. § 1973aa-6), and 42 U.S.C. § 1983 ("Section 1983"). In the Motion supporting this request, Plaintiffs demonstrated that there is no dispute as to any *material* fact in this case. State Defendants responded to Plaintiffs' Motion by asserting both Ms. Das and OCA-GH lack standing to sue, and Texas election law comports with the VRA's Section 208. These assertions, however, are without merit for at least the reasons discussed below.

## II. ARGUMENT

### A. State Defendants have failed to raise a fact issue regarding the standing of Plaintiff Das.

All parties agree that the appropriate legal test for Article III standing, as set forth in *Lujan*, requires an injury in fact that is fairly traceable to the challenged acts of the defendant and that is likely to be redressed by a favorable judicial decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). Thus, State Defendants' contention that Ms. Das lacks standing to sue rests solely on the flawed *factual* assertions that (1) her injury was entirely caused by the conduct of Williamson County and (2) is already addressed by the Texas Election Code.

On their first point, in an attempt to shift blame to local officials, State Defendants observe that Williamson County's election guidance conflates certain provisions of Texas election law (*i.e.*, Tex. Elec. Code §§ 64.031-64.035 (the "Assistance Provisions") and §§ 61.031-61.036 (the "Interpretation Provisions")).[1] While State Defendants correctly point out that guidance from Williamson County is flawed, the State's guidance is equally flawed. Importantly, Plaintiffs' Motion for Summary Judgment is *entirely* focused on State Defendants' conduct, not Williamson County's. *See* Dkt. 44 at 4-5, 14-15 (citing Exs. C-G). State Defendants' Response, however, simply ignores their own culpable conduct. In any event, State Defendants' focus in this case on Williamson County has (perhaps unintentionally) illuminated the clear causal connection between the Secretary of State's guidance on the Interpretation Provisions and the harm to Ms. Das. In fact, a direct comparison (provided below) of text from Williamson County's training guide (*see* Dkt. 48, Ex. 1) and the Secretary's website (*see* Dkt. 44, Ex. C) shows that the County's flawed guidance is identical in effect to the Secretary's. State Defendants admit that "[t]his guidance might lead a poll worker to improperly deny a voter's request to have her son accompany her to the voting machine to translate the ballot." Dkt. 45 at 8.

---

[1] Notably, State Defendants' Response has *conflated* their various attempts to "pass the buck" to Williamson County throughout this case, alleging, on the one hand that "Williamson County's improper guidance" led its poll worker to deny Plaintiff Das her right to a chosen assistor, and on the other hand, that it was the rogue poll worker's "incorrect action at that time" which caused Plaintiff Das's harm. *See* Dkt. 48 at 1, 4. To the extent State Defendants maintain that the improper guidance is at fault, this undermines their assertion that: "Should Ms. Das vote in the future in Williamson County . . . there is no evidence that she will experience the same problem." Of course, if Williamson County's guidance remains unchanged, as is probable absent the requested relief, it is exceedingly likely that Plaintiff Das, and others similarly situated, will be denied the right to a chosen assistor.

| **Williamson County's Training Guide** | **Secretary of State's Website** |
|---|---|
| "***If the assistant is an interpreter***, the interpreter must be a registered voter of the voter's county." | Under the heading "***Voter Assistance***," stating "If you cannot speak English . . . you may select any registered voter of your county to help you communicate with election officials. If you cannot read the languages on the ballot, ***your interpreter*** may translate the ballot for you in the voting booth." |

State Defendants' second point that Texas election law appropriately addresses the harm to Ms. Das is incorrect and not dispositive on, or even relevant to, the issue of standing in this case. As an initial matter, State Defendants' assertion rests on the improper premise that the Assistance Provisions *alone* are sufficient to allow Ms. Das to obtain help with translating the ballot in future. This premise is inappropriately applied here because it is contrary to reality. In fact, the Assistance Provisions do not operate *alone* in a vacuum, but together with various other portions of the Texas Election Code, including the Interpretation Provisions. As Plaintiffs have previously stated, a flawed law remains a flawed law, no matter how many flaw*less* laws surround it. State Defendants do not deny that the Interpretation Provisions list "**translating** the ballot" as a service that can be provided only if the prospective interpreter is registered in the same county as the voter. Nor do State Defendants deny that the Interpretation Provisions are the basis upon which Ms. Das was prevented from receiving translation assistance from her son. Instead, State Defendants argue that Williamson County and its poll worker should have known that the Assistance Provisions supersede the Interpretation Provisions where the scope of these laws overlap and conflict on the issue of ballot translation. State Defendants' proffered construction, however, is not clear from a plain reading of the statutory text[2] or even consistent

---

²     Note that only the Interpretation Provisions expressly recite the word "translating."

with guidance promulgated by the Secretary of State.  Thus, the fact that Ms. Das required help in translating the ballot, as opposed to communicating with poll workers, does not affect her standing to sue State Defendants.  Again, as Plaintiffs have previously stated, the current regime, as promulgated and enforced by State Defendants, essentially creates a "secret password" to rights under the VRA.  Thus, only voters that know or remember to call their "translator" an "assistor" receive the full protection of the VRA, while other voters, such as Ms. Das, are deprived their rights under color of state law.

> **B.    State Defendants have failed to raise a fact issue regarding the organizational standing of Plaintiff OCA-GH.**

On the issue of OCA-GH's standing to sue, State Defendants do not dispute or object to any of the evidence presented in Plaintiffs' Motion for Summary Judgment, but merely allege that such evidence does not amount to an injury in fact.[3]  State Defendants' incorrect legal conclusion, however, fails to account for the extensive prior legal precedent holding that standing requires only a *minimal* showing of injury, so long the alleged injury is concrete and particularized, and actual or imminent, not conjectural or hypothetical.[4]  Thus, State Defendants' attempt in their Response to merely trivialize, as opposed to directly contradict, the harm to

---

[3]   Note that State Defendants improperly assert a "diversion of interests" test for the injury in fact prong in their own summary judgment motion, but do not do so here.

[4]   *See, e.g.*, *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-84, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000) ("We have held that environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity."); *Association of Community Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 358 (5th Cir. La. 1999) ("An alleged injury . . . need not measure more than an identifiable trifle."); *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689 n.14, 37 L. Ed. 2d 254, 93 S. Ct. 2405 (1973) (expressly rejecting the argument that the injury in fact requirement was limited to *<u>significant</u>* injuries, noting that it has upheld the standing of plaintiffs with no more at stake in the outcome of an action than a fraction of a vote, a $5 fine and costs, and a $1.50 poll tax."); *Lujan* at 562-63 (finding that even the mere desire to observe an animal species for purely esthetic purposes is "undeniably a cognizable interest for purposes of standing.").

OCA-GH necessarily fails to raise a question of material fact that prevents summary judgment for Plaintiffs.  In fact, various other courts have established that the injury-in-fact prong of the standing inquiry is met where a nonprofit organization with an interest in promoting civic participation demonstrates a legitimate burden on organizational resources – including the resource of manpower.[5]  In this case, the evidence presented in Plaintiffs' Motion for Summary Judgment demonstrates a very real and present injury to OCA-GH that is not only uncontroverted in State Defendants' Response, but admitted in their own independent summary judgment motion.  *See* Dkt. 45 at 12 ("educating voters on assistance under Texas election law poses an inconvenient distraction to staff and volunteers"); *see also* Deposition of OCA-GH representative Deborah Chen, referenced as Ex. N in Plaintiffs' Motion, at 28:10:24 ("I say "manpower" very specifically because we are majority, you know, throughout our history, volunteer run. . . We're very subject to, you know, our volunteer manpower"); *see also* Dkt. 45 at 13 ("OCA used Get-Out-the-Vote grant funds to 'hire people to offset' volunteer time that

---

[5]  *See, e.g.*, *Veasey v. Perry*, 29 F. Supp. 3d 896, 902-04 (S.D. Tex. 2014) (citing *Havens*, "[i]n situations where a violation of individuals' rights will cause a drain on the resources of an association committed to the individuals'' rights, the association has stated a case or controversy sufficient to confer standing on the association."); *Crawford v. Marion County Election Bd.*, 472 F.3d 949, 951 (7th Cir. Ind. 2007) (citing *Havens*, "the new law injures the Democratic Party by compelling the party to devote resources to getting to the polls those of its supporters who would otherwise be discouraged by the new law from bothering to vote"; and citing *Friends of Earth*, "[t]he fact that the added cost has not been estimated and may be slight does not affect standing, which requires only a minimal showing of injury."); *Fla. State Conf. of the NAACP v. Browning*, 522 F.3d 1153 (11th Cir. Fla. 2008) (evidence demonstrating the diversion of personnel and time to educating volunteers and voters on compliance with state voter registration statute is sufficient to show a concrete injury); *Mississippi State Chapter, Operation Push v. Allain*, 674 F.Supp. 1245, 1261 (N.D. Miss. 1987) (citing *Havens*, "[i]nasmuch as the plaintiffs have shown that the challenged statutes . . . burden their organizational efforts to assist prospective voters in registering, the court finds that all of the plaintiffs have standing to sue. . . ."); *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1353-54 (11th Cir. 2005) (an organization conducting voter registration has a protected interest under the NVRA in having individuals it registers be processed properly and a state's actions negatively impacting that interest confer standing on the organization to bring suit on its own behalf).

could be spent on additional mailers[.]"); *see also* Ex. N at 102:2-103:11 ("And that's you know, a very you know, concrete example of how it, you know, costs us in terms of resources, you know, extra volunteer and manhours."). Thus, it appears all parties agree that State Defendants' conduct has been a constant drain on OCA-GH's limited resources – specifically, manpower and grant funds. The only point on which the parties disagree is the extent of the burden, which is irrelevant to the legal issue of standing.

      **C.    Texas Election Law Conflicts with Section 208 of the VRA.**

Despite State Defendants' repeated attempts to argue the contrary, their explanation of the Texas Election Code's Assistance and Interpretation Provisions does not comport with the VRA's Section 208. The arguments State Defendants assert in their Response, similar to their summary judgment motion, directly conflict with this Court's prior discussion on the matter. *See* Dkt. 27 at 7 ("In short, the State Defendants get the VRA wrong. The Assistance Provisions, insofar as they honor the VRA's requirement of voter choice only at the ballot box, are insufficient to implement Section 208. And the Interpretation Provisions, insofar as they restrict voter choice of interpreter, flatly contradict Section 208."). Thus, this latest attempt, which is devoid of any authority whatsoever, must also fail for the same reasons this Court rejected State Defendants' previous arguments. In particular, State Defendants' interpretation of both the VRA and the Assistance Provisions is flawed because it dictates that these election laws are limited only to ballot-box activities. As noted in Plaintiffs' Motion, it is nonsensical and impractical to assert that Section 208 enables assistance in the unsupervised ballot box by a person whom the voter trusts, yet does not secure a role for this person when the voter enters the polling station, communicates with election officers, etc. Indeed, as aptly stated by this Court, and similarly stated by other authorities: "Making meaningful the right to vote does not begin or end at the ballot box." Dkt. 27 at 7; s*ee also* S. Rep. No. 97-417 (1982), referenced as Ex. A in Plaintiffs'

Motion, at 62-63 (noting that state provisions cannot "deny the assistance at some stages of the voting process during which assistance [is] needed."); *see also* A Citizen's Guide to Understanding the Voting Rights Act, referenced as Ex. B in Plaintiffs' Motion, at 59 ("[S]ection 208 [] allows voters . . . to receive assistance in registering to vote and in voting from virtually any person whom the voter chooses."); *see also United States v. Berks County, Pa.*, 250 F. Supp. 2d 525 at 527 (E.D. Pa. 2003) ("[T]he meaningful right to vote extends beyond the immediate four corners of the voting machine.").

Having conclusively established that the scope of Section 208 is *not* limited to the ballot box, an application of State Defendants' own logic mandates that the Assistance Provisions are also not limited in this way. Indeed, State Defendants' Response and summary judgment motion observe that Assistance Provisions are equivalent to, and intended to substantially mirror, Section 208. *See* Dkt. 45 at 17; Dkt. 48 at 2. Further still, even a cursory textual analysis of the Assistance Provisions suggests that the scope of protection is not limited to the ballot box. In fact, § 64.0321 notes that "assisting a voter ***includes*** [certain enumerated] conduct by a person other than the voter that occurs while the person is in the presence of the voter's ballot[.]" According to the Texas Code Construction Act, the words "'[i]ncludes' and 'including' are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded." Thus, even the express statutory definition of "assistance" cannot support State Defendants' interpretation. In fact, the reasonable inference from this conspicuous choice of the open-ended term "includes" is that the drafters did not intend for the Assistance Provisions to have limited scope, otherwise they would have used a closed term, such as "consists of."

With the Assistance Provisions clearly not limited to the ballot box, State Defendants' arguments that the Interpretation Provisions provide some measure of *extra* assistance to voters likewise ring false. The permissible duties of an interpreter are entirely subsumed by those of an assistor, yet the qualifications are different and more restrictive when applied to LEP voters. On its face, this paradigm is a direct violation of Section 208.[6]

### III.   CONCLUSION

For the reasons described above, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for Summary Judgment.

---

[6]   Indeed, it seems the only possible interpretation of these provisions that fully comports with Section 208 of the VRA is that the Interpretation Provisions further expand, for a limited subset of activities, the scope of persons that must be permitted to assist the voter if chosen. Thus, under a proper interpretation of Texas election law, a voter must be entitled to select any person for communicating with poll officials and translating the ballot, so long as the selected person is either (1) not an employer voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs (*see* Assistance Provisions); or (2) registered to vote in the same county (*see* Interpretation Provisions).

Dated: May 13, 2016

Respectfully submitted,

FISH & RICHARDSON P.C.

By: */s/ David M. Hoffman*
    David M. Hoffman
    Texas Bar No. 24046084
    hoffman@fr.com
    Kenneth W. Darby*
    Texas Bar No. 24097570
    kdarby@fr.com
    One Congress Plaza, Suite 810
    111 Congress Avenue
    Austin, TX 78701
    Tel: (512) 472-5070
    Fax: (512) 320-8935

ASIAN AMERICAN LEGAL DEFENSE AND EDUCATION FUND ("AALDEF")

    Jerry Vattamala*
    99 Hudson Street, 12th Floor
    New York, NY 10013
    Tel: (212) 966-5932
    Fax: (212) 966-4303

**COUNSEL FOR PLAINTIFFS OCA-GREATER HOUSTON AND MALLIKA DAS**

*Admitted Pro Hac Vice

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on May 13, 2016, and was served via CM/ECF on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(b)(1).

By: */s/ David M. Hoffman*
David M. Hoffman