## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

**OCA-GREATER HOUSTON,** *et al.,*

    **Plaintiffs,**

    **v.**

**STATE OF TEXAS,** *et al.,*

    **Defendants.**

**CIVIL ACTION NO. 1:15-cv-00679-RP**

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. 45)

## **<u>TABLE OF CONTENTS</u>**

I.    INTRODUCTION ..................................................................................................... 1

II.    ARGUMENT .......................................................................................................... 2

    A.    Plaintiff Das Has Standing to Sue..................................................................2

        1.    State Defendants *did* cause Ms. Das's injury.....................................2

        2.    The injury to Ms. Das *has* been traced to State Defendants' conduct. .............4

        3.    Carrying out elections is *not* the complained of conduct, and the Secretary of State *is* an appropriate defendant...................................6

    B.    Plaintiff OCA-GH Has Organizational Standing to Sue..........................................7

        1.    OCA-GH *has* suffered an injury in fact............................................8

        2.    The injury to OCA-GH *has* been traced to State Defendants' conduct....................................................................................12

        3.    Redressability is *not* speculative....................................................13

    C.    State Defendants' Interpretation of Texas Election Law Conflicts with Section 208 of the VRA............................................................................14

III.    CONCLUSION..................................................................................................... 17

# **TABLE OF AUTHORITIES**

**Cases**                                                                 **Page(s)**

*Association of Community Orgs. for Reform Now v. Fowler*,
    178 F.3d 350 (5th Cir. La. 1999) ........................................................10

*Charles H. Wesley Educ. Found., Inc. v. Cox*,
    408 F.3d 1349 (11th Cir. 2005) ........................................................10

*Crawford v. Marion County Election Bd.*,
    472 F.3d 949 (7th Cir. Ind. 2007) ....................................................10

*Fla. State Conf. of the NAACP v. Browning*,
    522 F.3d 1153 (11th Cir. Fla. 2008) ................................................10

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
    528 U.S. 167, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)...................10

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982)....................................................................7, 8, 9

*La. ACORN Fair Hous. v. LeBlanc*,
    211 F.3d 298 (5th Cir. 2000) ...........................................................8, 9

*Larson v. Valente*,
    456 U.S. 228, 102 S. Ct. 1673, 72 L. Ed. 2d 33 (1982).....................14

*Lightbourn v. County of El Paso, Tex.*,
    118 F.3d 421 (5th Cir. 1997) ...........................................................6, 7

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)............. *passim*

*Massachusetts v. EPA*,
    549 U.S. 497 (U.S. 2007)..................................................................14

*Mississippi State Chapter, Operation Push v. Allain*,
    *674 F.Supp.* 1245 (N.D. Miss. 1987)................................................10

*NAACP v. City of Kyle, Tex.*,
    626 F.3d 233 (5th Cir. 2010) .....................................................7, 8, 9, 11

*Okpalobi v. Foster*
    244 F.3d 405 (5th Cir. 2001) .............................................................4

*United States v. Berks County, Pa.*,
    250 F.Supp.2d 525 (E.D. Penn. 2003) ..............................................15

*United States v. Students Challenging Regulatory Agency Procedures*,
    412 U.S. 669, 37 L. Ed. 2d 254, 93 S. Ct. 2405 (1973) ................................................10

*Veasey v. Perry*,
    29 F. Supp. 3d 896, 902-04 (S.D. Tex. 2014) ..........................................................10

*Warth v. Seldin*,
    422 U.S. 490 (1975) .............................................................................................4, 7

**Statutes**

42 U.S.C. § 1983 ...............................................................................................................1

Americans with Disabilities Act ....................................................................................6, 7

Tex. Elec. Code §§ 31.003 and 31.004 .....................................................................4, 7, 14

Tex. Elec. Code § 31.005 ..............................................................................................6, 7

Tex. Elec. Code §§ 61.033-61 .............................................................................................3

Tex. Elec. Code §§ 64.031-64.035 ......................................................................................1

Tex. Elec. Code § 64.0321 ................................................................................................16

Texas Code Construction Act ..........................................................................................16

Texas Code Construction Act § 311.016(2) .......................................................................7

Voting Rights Act of 1965 § 208 .............................................................................. *passim*

**Other Authorities**

Texas Administrative Code § 81.113 ................................................................................15

Plaintiffs Mallika Das and Organization of Chinese Americans-Greater Houston ("OCA-GH" and, collectively, "Plaintiffs") hereby file their Response in Opposition to Plaintiffs' Motion for Summary Judgment (Dkt. No. 45) submitted by Defendants the State of Texas and Carlos Cascos, in his official capacity as Secretary of State ("Secretary of State" or "Secretary" and, collectively, "State Defendants").  Plaintiffs respectfully show the Court as follows:

## I.     INTRODUCTION

State Defendants have failed to meet their burden in asking this Court to enter summary judgment against Plaintiffs with respect to their asserted claims under Section 208 of the Voting Rights Act of 1965 ("Section 208"), 52 U.S.C. § 10508 (formerly 42 U.S.C. § 1973aa-6), and 42 U.S.C. § 1983 ("Section 1983").  Specifically, as set forth in Plaintiffs' Motion for Summary Judgment (Dkt. 44), the undisputed facts compel the opposite result.  State Defendants attempt to shift all blame onto Williamson County, but fail to address the undisputed evidence of their own conduct.  In fact, public record shows that the Secretary's own guidance on Texas election law substantially mirrors Williamson County's Poll Worker Training Guide.

With regard to OCA-GH, there is clear standing to sue.  State Defendants' Motion incorrectly concludes that there has not been an injury in fact due to an insufficient "diversion of resources" to combat State Defendants' conduct.  Not only does this argument rely on an incorrect application of precedent from both the Supreme Court and Fifth Circuit, it is based on the inaccurate factual premise that OCA-GH "has *never* exhausted its annual grant."  Dkt. 45 at 12 (emphasis added).  State Defendants are also incorrect in their assertion that there is no conflict between the pertinent Texas Election Code provisions and Section 208.  Indeed, the foundation upon which State Defendants' argument stands – a contention that both Section 208 and the Assistance Provisions (Tex. Elec. Code §§ 64.031-64.035) are limited to ballot-box activities – is fundamentally flawed.  This Court has already noted that such an interpretation of the federal

election law is "implausible when contrasted with the context of the VRA and its amendments." Dkt. 27 at 6 (citing S. Rep. No. 97-417 at 5).

For at least these reasons, State Defendants have failed to establish that they are entitled to summary judgment on any matter at issue in this case, either because they have asserted arguments based entirely on flawed logical and legal conclusions and/or because they have misapplied or disregarded certain material facts of record in the case. Accordingly, this Court should deny State Defendants' Motion on all points.

## II.    ARGUMENT

### A.    Plaintiff Das Has Standing to Sue.

*Lujan* requires a plaintiff to show that he or she has suffered an injury in fact that is fairly traceable to the challenged acts of the defendant and that is likely to be redressed by a favorable judicial decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). An injury sufficient to satisfy Article III must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Id.* at 560.

In support of the flawed contention that Ms. Das lacks standing, State Defendants assert: (1) that State Defendants did not cause the injury to Ms. Das; (2) Ms. Das cannot trace her injury to State Defendants' conduct; and (3) the Secretary of State does not carry out elections in Texas. Each of these assertions is based on unsound reasoning and/or is entirely irrelevant to the issue of standing and, thus, falls short. As an LEP voter denied the right to assistance secured by Section 208 of the VRA, Ms. Das most certainly has standing to bring her claims in this case. State Defendants' Motion for Summary Judgment offers them no relief.

### 1.    State Defendants *did* cause Ms. Das's injury.

State Defendants' assertion that Ms. Das has failed to offer any facts connecting the Secretary of State with her injury is incorrect. Though Ms. Das and her son did not personally

consult guidance from the Secretary on the assistor/interpreter issue, this fact is neither relevant nor dispositive.  The *material* facts on this issue are clear and undisputed – State Defendants published and promoted the flawed laws that injured Ms. Das.  More specifically, Ms. Das was injured by State Defendants' promulgation of guidance instructing the enforcement of §§ 61.033-61.036 of the Texas Election Code (the "Interpretation Provisions") in a manner that restricts the voter's choice of an interpreter based on the prospective interpreter's registration status.  *See* Dkt. 7 at ¶14, Dkt. 15 at 8, Dkt. 24 at 10, and Dkt. 44 at 15.  Plaintiffs have previously provided (and again provide) evidence of this conduct in the form of excerpts from self-authenticating handbooks, guides, and webpages produced by the Secretary of State's office.  *See* Exs. 1-5 attached hereto, referenced as Exs. C-G in Plaintiffs' Motion for Summary Judgment.  State Defendants do not repudiate this evidence, but admit to it outright.  *See* Dkt. 23 at ¶¶14, 16.

Though State Defendants downplay the Secretary's authority in implementing Texas election law, it is indisputable that guidance from the Office heavily influences county-level election authorities.  In fact, the Secretary's own website publishes "election law opinions" that provide advice from the chief election officer to officials on "interpretations of election law that will have **significant** impact on the election process."  Ex. 6 at 1; *see also* Ex. 7 (Election Law Opinion GS-1 (2002), providing guidance to the Dimmit County Commissioner on an election issue); Ex. 8 (Election Law Opinion AOG-2 (1997), construing certain subsections of an election law "null, void and of no legal effect whatsoever.").  Further still, the uncontroverted facts directly connect the Secretary of State's guidance with election practices implemented by Williamson County.  *See, e.g.*, Ex. 9 at 1 (Williamson County's "External Links" webpage providing a web link to the Secretary of State's website); Ex. 10 at 1 (Williamson County's "Become a Pollworker" webpage referencing the Secretary of State's guidance on the topic of student election workers);

Ex. 11 (excerpt from the Williamson County Poll Worker Guide referencing the Secretary of State's guidance on a voter ID issue); Ex. 12 (Williamson County poll worker handout referencing the Secretary of State's Handbook for Election Judges and Clerks); §§ 31.003 and 31.004 of the Texas Election Code (stating that the Secretary "shall" prepare and distribute directives and instructions on election laws to local governments).   Thus, there is *significantly more* than a substantial probability that Ms. Das would have been able to receive uninhibited assistance from Saurabh Das, the person of her choice, absent State Defendants' conduct.  *Cf.*, *Warth v. Seldin*, 422 U.S. 490, 504 (1975) (The Court held that the individual plaintiffs lacked standing because they failed to "allege facts from which it reasonably could be inferred that, absent the [city's] restrictive zoning practices, there is a substantial probability that they would have been able to purchase or lease in Penfield.").

Further, to the extent State Defendants contend that the conduct they admit to lacks a causal connection with the harm to Ms. Das due to the limited responsibility and authority of the Secretary of State, the Court has already directly addressed the issue, stating:  "Plaintiffs therefore have shown the State Defendants have 'some connection' with the complained act, *Okpalobi*, 244 F.3d at 416, and therefore that the State Defendants are properly named defendants."  Dkt. 27 at 9.

For at least these reasons, State Defendants have not established as a matter of law that Ms. Das was not harmed by their conduct.  Indeed, the uncontroverted facts show that the opposite is true.

### 2.    The injury to Ms. Das *has* been traced to State Defendants' conduct.

In yet another attempt to evade any responsibility for Texas Elections, State Defendants argue that Williamson County's "erroneous implementation of Texas Election Code provisions" is what caused the harm to Ms. Das.  *See* Dkt. 45 at 1, 8.  Here, State Defendants incorrectly assume that the harmful conduct by Williamson County precludes any other cause of the harm to Ms. Das.

Although the County is also to blame, its culpability neither supersedes State Defendants' wrongful conduct nor absolves State Defendants. Indeed, as previously discussed, Texas law and the uncontroverted facts of this case clearly demonstrate that the injury in fact suffered by Ms. Das, which State Defendants do not deny is concrete and particularized, is "fairly traceable" to State Defendants' conduct under *Lujan*. *See* Section II(A)(1) above (discussing that guidance from the Secretary influences Williamson County election guidelines and procedures).

In characterizing the "erroneous implementation" of Texas election law by Williamson County, State Defendants observe that Williamson County's guidance stated that any person serving as both an assistor and an interpreter must meet the requirements of an interpreter. *See* Ex. 13 (excerpt from the Williamson County Poll Worker Guide stating, "If the assistant is an interpreter, the interpreter must be a registered voter of the voter's county."). Indeed, the Williamson County guidance suggests that an "interpreter" is a special type of "assistor" (in the same way a square is a special type of rectangle). Thus, to serve as an assistor-interpreter under these guidelines, one must meet the same-county-registration requirement. State Defendants also observe that "[t]his guidance might lead a poll worker to improperly deny a voter's request to have her son accompany her to the voting machine to translate the ballot." Dkt. 45 at 8. What State Defendants fail to address, however, is that guidance from the Secretary of State similarly describes services provided by an interpreter as a special subset of assistor services. *See* Ex. 2 at 1 (under the heading "Voter ***Assistance***," stating "If you cannot speak English . . . you may select any registered voter of your county to help you communicate with election officials. If you cannot read the languages on the ballot, your interpreter may translate the ballot for you in the voting booth."). As noted above, State Defendants have admitted that this type of guidance is what led to the injury of Ms. Das. State Defendants also do not deny that this guidance is published on the

Secretary of State's website.  Thus, not only have State Defendants failed to demonstrate that Ms. Das cannot show how the Secretary of State's guidance caused her injury, they have themselves connected the dots.

> **3.     Carrying out elections is _not_ the complained of conduct, and the Secretary of State _is_ an appropriate defendant.**

State Defendants' argument that the Secretary of State is not an appropriate defendant is nothing more than a recasting of prior rhetoric that has been appropriately dispelled by this Court. The crux of State Defendants' argument is the premise that § 31.005 of the Texas Election Code merely authorizes the Secretary of State to take appropriate action to protect the voting rights of citizens, but does not confer a legal duty to do so.  As support, State Defendants cite *Lightbourn v. County of El Paso, Tex.,* 118 F.3d 421 (5th Cir. 1997).   In that case, the district court's determination that the Secretary of State had a duty to warrant that local election authorities followed the Americans with Disabilities Act ("ADA") was reversed.  *Id.* at 432.  Based on *Lightbourn*, State Defendants reason that the Secretary of State was under no duty to correct Williamson County's improper guidance on the interpreter/assistor issue.

This argument is plainly irrelevant to the standing issue before the Court.  Plaintiffs' allegation (now supported by admissible evidence in the form of official documents) has consistently been that the Secretary of State's own guidance, which is provided to the counties, is improper and needs to be corrected – not that the Secretary of State has a duty to correct the guidance promulgated independently by the counties.  Furthermore, State Defendants grossly misapply the legal conclusions from *Lightbourn*.  In *Lightbourn*, the Fifth Circuit correctly pointed out that most provisions of the Texas Election Code refer to the Secretary's role in elections as being discretionary (*e.g.*, § 31.005 provisions).  *Lightbourn* at 428-29.  However the *Lightbourn* court also noted that the Texas Election Code *does*, in fact, contain some mandatory provisions

regarding the Secretary's legal duties (*e.g.*, §§ 31.003 and 31.004). *See id*. at 429. Notably, even these mandatory provisions are limited to "election laws," which excludes the ADA. *See id*. at 429-31. The present case clearly distinguishes *Lightbourn*, chiefly because the VRA is undoubtedly an election law, so the mandatory provisions of §§ 31.003 and 31.004 have effect. Further, as previously pointed out by Plaintiff and this Court, the mandatory provisions state that the Secretary ***shall*** prepare detailed and comprehensive written directives and instructions related to and based on the Texas Election Code, and ***shall*** distribute these materials to the appropriate state and local authorities having duties in administration of the Texas Election Code. *See* Dkt. 24 at 5-6, Dkt. 27 at 8-9; *see also* Texas Code Construction Act § 311.016(2) ("Shall" imposes a duty.). As such, State Defendants' attempts to "pass the buck" to Williamson County for Ms. Das's harm do not defeat standing as a matter of law or fact.

### B.    Plaintiff OCA-GH Has Organizational Standing to Sue.

To have standing, "an association or organization must satisfy the well-known requirements of *Lujan*." *NAACP v. City of Kyle, Tex.*, 626 F.3d 233, 237 (5th Cir. 2010). The injury-in-fact requirement helps to ensure that the plaintiff has a "personal stake in the outcome of the controversy." *Warth*, 422 U.S. at 498 (internal quotation marks omitted). Thus, an organization has standing to sue on its own behalf insofar as it has suffered injury in fact. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).

In support of the flawed contention that OCA-GH lacks standing, State Defendants assert that: (1) OCA-GH has not suffered an injury in fact; (2) OCA-GH cannot trace its injury to State Defendants' conduct; and (3) redressability of the injury is speculative because State Defendants have no enforcement authority over the Texas counties. But each of these assertions is based on unsound reasoning and/or is entirely irrelevant to the issue of standing.

1.     **OCA-GH _has_ suffered an injury in fact.**

State Defendants' argument that OCA-GH has not suffered an injury in fact is founded on a misapplication of jurisprudence gleaned from both the Supreme Court and the Fifth Circuit. According to State Defendants, "OCA cannot demonstrate any _**diversion of resources**_ that 'concretely and perceptively impaired' their ability to carry out their Get-Out-the-Vote project." Dkt. 45 at 13 (emphasis added).  State Defendants assert this "diversion-of-resources test" based on an improper understanding of *NAACP v. City of Kyle*, where the Fifth Circuit noted that "[n]ot every diversion of resources to counteract the defendant's conduct . . . establishes injury in fact." 626 F.3d at 238 (referencing. *La. ACORN Fair Hous. v. LeBlanc*, 211 F.3d 298 (5th Cir. 2000) ("[T]he mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization.")).  Here, while State Defendants accurately state a tenet of case law, they misapply it to the case at bar.  To be clear, there is no legal basis for State Defendants' proposition that a diversion of resources is required to demonstrate an injury in fact.

The Fifth Circuit's *NAACP* case is the direct progeny of the Supreme Court's opinion in *Havens Realty v. Coleman*, 455 U.S. 363 (1982).  In the *Havens* case, HOME, a nonprofit organization whose mission was "to make equal opportunity housing a reality" alleged injury based on the racial steering practices of Havens Realty.  *Id.* at 368.  In particular, HOME asserted that Havens' conduct frustrated the organization's counseling and referral services, placing a consequent drain on resources.  *See id*. at 369, 379.  HOME claimed to have devoted significant resources to identify (*e.g.*, by sending out "testers" to confirm Havens' racial steering) and counteract (presumably by maintaining the litigation) Havens' conduct.  *See id*. at 369.  According to HOME, this drain on its limited resources perceptibly impaired its ability to provide counseling and referral services for low- and moderate-income home seekers.  *See id*. at 369, 379.  The Court

in *Havens* held that these allegations *__were__* sufficient to establish a legally cognizable injury, amounting to far more than simply a setback to the organization's abstract social interests. *See id.* at 379. Though it arrived at the opposite conclusion on organizational standing, the Fifth Circuit noted and applied the Supreme Court's precedent from *Havens* in both *La. ACORN* and *NAACP*. *See La. ACORN*, 211 F.3d at 305 ("we noted that an organization *could* have standing if it had proven a drain on its resources resulting from counteracting the effects of the defendant's actions." citing *Havens* at 360); *see also NAACP*, 626 F.3d at 238 ("an organization *may* establish injury in fact by showing that it had diverted significant resources to counteract the defendant's conduct" citing *Havens* at 379). Thus, the Fifth Circuit's analysis in *La. ACORN* and *NAACP* is bereft of clarification on *Havens* as to the types of organizational activities that *__do__* meet the injury in fact requirement, but rather illuminates a specific type of activity that *__does not__* – namely, a diversion of certain resources to support litigation. *See La. ACORN*, 211 F.3d at 305; *see also NAACP*, 626 F.3d at 238. Such is neither instructive nor helpful here.

The facts of the case at bar present a stark contrast to those of *Havens*, *La. ACORN*, and *NAACP*, where the resources dedicated by the organizations in question were spent lobbying and/or litigating the very claim at issue in the suit. Indeed, OCA-GH has *not* asserted the expenditure of resources to support this or any other litigation as an injury in fact. Rather, OCA-GH specifically points to resources expended on the arduous endeavor of educating their members and others about the requirements of the Texas Election Code's Interpretation Provisions, which undoubtedly frustrates OCA-GH's mission to promote civic participation among Asian Americans. *See* Exs. 14-25 attached hereto, referenced in Plaintiffs' Motion for Summary Judgment as Exs. J-U. As such, it is not appropriate to apply State Defendants' diversion-of-resources test to OCA-GH, as this heightened threshold for demonstrating harm is contrary to the

well-established precedent of the Supreme Court.  Indeed, standing **normally** requires only a

**minimal** showing of injury.[1]  Moreover, various other courts have established that the injury-in-

fact prong of the standing inquiry is met where a nonprofit organization with an interest in

promoting civic participation demonstrates a drain or burden on organizational resources, as

opposed to a literal *diversion* from one project to another.[2]  In fact, this Court has already applied

the Fifth Circuit's *NAACP* precedent in this case, concluding that OCA-GH's allegation of a drain

---

[1]  *See, e.g.*, *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-84, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000) ("We have held that environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity."); *Association of Community Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 358 (5th Cir. La. 1999) ("An alleged injury . . . need not measure more than an identifiable trifle."); *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689 n.14, 37 L. Ed. 2d 254, 93 S. Ct. 2405 (1973) (expressly rejecting the argument that the injury in fact requirement was limited to ***significant*** injuries, noting that it has upheld the standing of plaintiffs with no more at stake in the outcome of an action than a fraction of a vote, a $5 fine and costs, and a $1.50 poll tax."); *Lujan* at 562-63 (finding that even the mere desire to observe an animal species for purely esthetic purposes is "undeniably a cognizable interest for purposes of standing.").

[2]  *See e.g.*, *Veasey v. Perry*, 29 F. Supp. 3d 896, 902-04 (S.D. Tex. 2014) (citing *Havens*, "[i]n situations where a violation of individuals' rights will cause a drain on the resources of an association committed to the individuals' rights, the association has stated a case or controversy sufficient to confer standing on the association."); *Crawford v. Marion County Election Bd.*, 472 F.3d 949, 951 (7th Cir. Ind. 2007) (citing *Havens*, "the new law injures the Democratic Party by compelling the party to devote resources to getting to the polls those of its supporters who would otherwise be discouraged by the new law from bothering to vote"; and citing *Friends of Earth*, "[t]he fact that the added cost has not been estimated and may be slight does not affect standing, which requires only a minimal showing of injury."); *Fla. State Conf. of the NAACP v. Browning*, 522 F.3d 1153 (11th Cir. Fla. 2008) (evidence demonstrating the diversion of personnel and time to educating volunteers and voters on compliance with state voter registration statute is sufficient to show a concrete injury); *Mississippi State Chapter, Operation Push v. Allain, 674 F.Supp.* 1245, 1261 (N.D. Miss. 1987) (citing *Havens*, "[i]nasmuch as the plaintiffs have shown that the challenged statutes . . . burden their organizational efforts to assist prospective voters in registering, the court finds that all of the plaintiffs have standing to sue. . . ."); *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1353-54 (11th Cir. 2005) (an organization conducting voter registration has a protected interest under the NVRA in having individuals it registers be processed properly and a state's actions negatively impacting that interest confer standing on the organization to bring suit on its own behalf).

---

on the organization's resources to counteract State Defendants' conduct was sufficient to demonstrate standing at the pleading stage.  *See* Dkt. 27 at 11.  This well-pleaded allegation is now fully supported by admissible and uncontroverted evidence.  *See* Exs. 14-25.  The Motion even concedes that State Defendants' conduct has caused a drain on OCA-GH's most valuable resource – manpower.  Dkt. 45 at 12 ("educating voters on assistance under Texas election law poses an inconvenient distraction to staff and volunteers"); *see also* Ex. 18 (deposition of Deborah Chen) attached hereto, referenced as Ex. N in Plaintiffs' Motion for Summary Judgment, at 28:10:24 ("I say 'manpower' very specifically because we are majority, you know, throughout our history, volunteer run. . . .We're very subject to, you know, our volunteer manpower.").  The Motion further concedes that manpower is inextricably tied to another important resource – grant funds – that could be used to enhance the effectiveness of OCA-GH's Get-Out-the-Vote (GOTV) initiative, but for State Defendants' conduct.  Dkt. 45 at 13 ("OCA used Get-Out-the-Vote grant funds to 'hire people to offset' volunteer time that could be spent on additional mailers[.]"); *see also* Ex. 18 at 102:2-103:11 ("And that's you know, a very you know, concrete example of how it, you know, costs us in terms of resources, you know, extra volunteer and manhours.").  Thus, it appears all parties agree that State Defendants' conduct has been a constant drain on OCA-GH's limited resources – specifically, manpower and grant funds.  As such, an injury in fact sufficient to support Article III standing under the Supreme Court's precedent has been demonstrated by the uncontroverted evidence.

Further still, not only have State Defendants misapplied the law on standing in their Motion, they have also mischaracterized the evidentiary record in their analysis.  For example, in an attempt to discount the detrimental effect of State Defendants' conduct on OCA-GH's GOTV initiative, the Motion incorrectly states "OCA has never exhausted its annual grant[.]"  Dkt. 45 at

12.  State Defendants' suggestion is that there has not been a drain on the resources dedicated to OCA-GH's GOTV work because there are substantial leftover grant funds.  This suggestion, however, is improper because it is drawn from a false premise.  In fact, the portion of deposition testimony *cited*, but not *quoted*, by State Defendants (Ex. 18 at 86:10-17) indicates that the annual grant *was* essentially exhausted in 2015.  The relevant part of OCA-GH representative Deborah Chen's testimony is provided below verbatim (*see* Ex. 18 at 86:10-14):

> Q.   The -- you may have said this already, but the 2015 grant, do you know if you used all of it?
>
> A.   I'm pretty sure we used almost all of it, yes.
>
> Q.   Do you recall if you had to dip into your reserves for 2015?
>
> A.   I know for sure that we would not have dipped into our reserves because I try to run our projects as cheaply as possible.  So, if 20,000 was our budget, then we would spend -- we would not spend over 20,000.  I say that, you know, I'm pretty sure we spent most of it only because I have not sat down to calculate out exactly how much we spent on food.

For at least these reasons, State Defendants have failed to demonstrate that Plaintiff OCA-GH cannot establish an injury in fact.  Instead, the uncontroverted evidence of record in this case, when viewed under the correct legal standard, conclusively illustrates the concrete and particularized harm to OCA-GH.

> ### 2. The injury to OCA-GH *has* been traced to State Defendants' conduct.

The Motion argues that OCA-GH cannot trace its injury to State Defendants' conduct because the organization did not itself distribute the Secretary of State's guidance on the assistor/interpreter issue.  This argument, however, is both logically and factually flawed.  The

glaring logical flaw is that the premise supporting the argument is focused on the actions of OCA-GH, and not State Defendants.  As a result, the argument concludes, in circular fashion, that OCA-GH must have further promoted State Defendants' violation of the VRA to have standing in this case.  In reality, it would be nonsensical for OCA-GH to distribute guidance from the Secretary as part of its GOTV efforts, as this guidance is an integral part of the complained of conduct.  Repeating a crucial omission, State Defendants again fail to address that the Secretary of State's own guidance on Texas election law suggests that a person serving as both an assistor and an interpreter must meet the same-county-registration requirement.  In fact, State Defendants have admitted that such guidance conflicts with Section 208 because it leads poll workers to improperly reject the voter's choice of an interpreter to translate the ballot.  *See* Dkt. 45 at 8 (discussed above at Section II(A)(2)).

### 3.    Redressability is *<u>not</u>* speculative.

State Defendants' argument against the redressability prong of the standing inquiry asserts that correction of its guidance does not "guarantee" a change in the interpretation of Texas election law at the local level.  This argument too, however, is undermined by incurable flaws.  As an initial matter, this Court has already opined that "[i]nsofar as the law remains in force and Defendants continue to urge the application of that law, there is a 'reasonable likelihood' that Plaintiffs will again be subjected to the complained of conduct."  Dkt. 27 at 9.  Moreover, State Defendants yet again seem to apply a legal standard that diverges from the Supreme Court's jurisprudence on standing.

Under *Lujan*, redressability by a favorable decision must simply be "likely" rather than "speculative."  *Lujan* at 561.  Further, it is well established that "a plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself.  He need not show that a favorable decision will relieve his *every injury*."  *Larson v.*

*Valente*, 456 U.S. 228, 244, n. 15, 102 S. Ct. 1673, 72 L. Ed. 2d 33 (1982) (emphasis added); *see also Massachusetts v. EPA*, 549 U.S. 497, 525 (U.S. 2007) ("While it may be true that regulating motor-vehicle emissions will not by itself *reverse* global warming, it by no means follows that we lack jurisdiction to decide whether EPA has a duty to take steps to *slow* or *reduce* it").  Here, similar to *Massachusetts v. EPA*, a <u>guarantee</u> that all counties will heed corrected guidance from the Secretary of State is not required.  The redressability prong is met because the relief requested will undoubtedly *reduce* the probability of future injury to both OCA-GH and Plaintiff Das.  State Defendants certainly are not, and cannot, assert that the counties entirely disregard directives from the Secretary.  In fact, as has been noted several times on the record in this case, the Secretary of State's own website states that the office "assist[s] county election officials and ensur[es] the uniform application and interpretation of election laws throughout Texas."  Ex. 26; *see also* Tex. Elec. Code §§ 31.003 and 31.004.

### C.    State Defendants' Interpretation of Texas Election Law Conflicts with Section 208 of the VRA.

Despite State Defendants' repeated attempts to argue the contrary, their explanation of the Texas Election Code's Assistance and Interpretation Provisions does not comport with the VRA's Section 208.  Yet again, the arguments State Defendants assert in their Motion directly conflict with this Court's prior discussion on the matter.  *See* Dkt. 27 at 7 ("In short, the State Defendants get the VRA wrong.  The Assistance Provisions, insofar as they honor the VRA's requirement of voter choice only at the ballot box, are insufficient to implement Section 208.  And the Interpretation Provisions, insofar as they restrict voter choice of interpreter, flatly contradict Section 208.").  Thus, this latest attempt, which is devoid of any binding authority or new attorney argument, must also fail for the same reasons this Court rejected State Defendants' previous attempts.  In particular, State Defendants' interpretation of both the VRA and the Assistance

Provisions is flawed because it dictates that these election laws are limited only to ballot-box activities.

State Defendants do cite a *non-binding* case from the Eastern District of Pennsylvania, *United States v. Berks County, Pa.*, 250 F.Supp.2d 525 (E.D. Penn. 2003), in support of their proposed interpretation of Section 208 as limited to the confines of the ballot box. But *Berks* does not go as far as State Defendants need it to go. In that case, the district court found a likely violation of Section 208 because voters were denied the right to bring their assistors into the voting booth. *See id.* at 530-31, 538. Yet the district court's findings only confirmed that Section 208 provides ballot box protection and did nothing to suggest any limitation on the protection Section 208 provides beyond the ballot box. Further still, the court's discussion in *Berks* actually supports an interpretation of the VRA that directly contradicts State Defendants', stating: "[T]he meaningful right to vote extends beyond the immediate four corners of the voting machine." *Id.* at 527.[3]

Having conclusively established that the scope of Section 208 is *not* limited to the ballot box, an application of State Defendants' own logic mandates that the Assistance Provisions are also not limited in this way. Indeed, State Defendants' Motion points out that Assistance Provisions are intended to substantially mirror Section 208. *See* Dkt. 45 at 17. State Defendants are correct in this assertion as evidenced by Texas Administrative Code § 81.113, which was adopted in 1984 by the Secretary of State's Office as an emergency measure "to obtain compliance with federal law and uniformity in the application of federal law in Texas elections[.]" Ex. 27 (Texas Register, Volume 9, February 28, 1984) attached hereto, referenced as Ex. V in Plaintiffs' Motion for Summary Judgment, at 1181. Further still, even a cursory textual analysis of the

---

[3]  Similarly, this Court has aptly stated:  "Making meaningful the right to vote does not begin or end at the ballot box." Dkt. 27 at 7.

Assistance Provisions suggests that the scope of protection is not limited to the ballot box.  In fact, the Texas Election Code's § 64.0321 notes that "assisting a voter ***includes*** [certain enumerated] conduct by a person other than the voter that occurs while the person is in the presence of the voter's ballot[.]" (emphasis added).  According to the Texas Code Construction Act, the words "'[i]ncludes' and 'including' are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded."  Thus, even the express statutory definition of "assistance" cannot support State Defendants' interpretation.  In fact, the reasonable inference from this conspicuous choice of the open-ended term "includes" is that the drafters did not intend for the Assistance Provisions to have limited scope, otherwise they would have used a closed term, such as "consists of."

With the Assistance Provisions clearly not limited to the ballot box, State Defendants' arguments that the Interpretation Provisions provide some measure of *extra* assistance to voters likewise ring false.  The permissible duties of an interpreter are entirely subsumed by those of an assistor, yet the qualifications are different and more restrictive when applied to LEP voters.  On its face, this paradigm is a direct violation of Section 208.[4]  As such, State Defendants are not entitled to judgment as a matter of law on this point.

---

[4]    Indeed, it seems the only possible interpretation of these provisions that fully comports with Section 208 of the VRA is that the Interpretation Provisions further expand, for a limited subset of activities, the scope of persons that must be permitted to assist the voter if chosen.  Thus, under a proper interpretation of Texas election law, a voter must be entitled to select any person for communicating with poll officials and translating the ballot, so long as the selected person is either (1) not an employer voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs (*see* Assistance Provisions); or (2) registered to vote in the same county (*see* Interpretation Provisions).

### III.    CONCLUSION

For at least the foregoing reasons, Plaintiffs request the Court to deny State Defendants'

Motion for Summary Judgment on all points.

Dated:  May 13, 2016

Respectfully submitted,

FISH & RICHARDSON P.C.

By:  */s/ David M. Hoffman*
　　　David M. Hoffman
　　　Texas Bar No. 24046084
　　　hoffman@fr.com
　　　Kenneth W. Darby*
　　　Texas Bar No. 24097570
　　　kdarby@fr.com
　　　One Congress Plaza, Suite 810
　　　111 Congress Avenue
　　　Austin, TX 78701
　　　Tel: (512) 472-5070
　　　Fax: (512) 320-8935


ASIAN AMERICAN LEGAL DEFENSE AND
EDUCATION FUND ("AALDEF")

　　　Jerry Vattamala*
　　　99 Hudson Street, 12th Floor
　　　New York, NY 10013
　　　Tel: (212) 966-5932
　　　Fax: (212) 966-4303

**COUNSEL FOR PLAINTIFFS**
**OCA-GREATER HOUSTON**
**AND MALLIKA DAS**


*Admitted Pro Hac Vice

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on May 13, 2016, and was served via CM/ECF on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(b)(1).

By:  */s/ David M. Hoffman*
David M. Hoffman
