UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| OCA – GREATER HOUSTON and MALLIKA DAS, *Plaintiffs*, | § § § § | |
| v. | § § | Civil Action No. 1:15-cv-00679-RP |
| | § | |
| STATE OF TEXAS, et al., *Defendants*. | § § § | |

## STATE DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

COMES NOW the State of Texas and Carlos Cascos, in his official capacity as Secretary of State of Texas ("Secretary of State" and, collectively, "the State Defendants"), and submit their Reply in Support of their Motion for Summary Judgment:

## INTRODUCTION

This Court should grant the State Defendants' Motion for Summary Judgment (Dkt. No. 45) for the following reasons: (**1**) Plaintiff Mallika Das ("Mrs. Das") lacks standing to sue the State Defendants; (**2**) Plaintiff Organization of Chinese Americans – Greater Houston ("OCA-GH") lacks standing to sue the State Defendants; and (**3**) Texas election law comports with the Voting Rights Act of 1965, in particular Section 208. *See* 52 U.S.C.A. § 10508 (formerly codified at 42 U.S.C. § 1973aa-6)

In opposition to the State Defendants, Plaintiffs routinely obscure facts and draw conclusions unsupported by the record. A few examples are addressed below, in the context of the State Defendants' three key arguments.

## I.   Mallika Das lacks standing.

Mrs. Das lacks standing to sue the State Defendants. To have standing, Mrs. Das ". . . must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable decision." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1386 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Furthermore, Article III standing is lacking where a plaintiff sues a state official who is without power to take the complained of action, and whose actions have not caused, or could not cause, any injury to her. *See Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir. 2001).

Mrs. Das cannot connect her alleged injury to the State Defendants; causation is lacking. She concedes that she "did not personally consult guidance from the Secretary [of State] on the assistor/interpreter issue," but contends that this fact is "neither relevant nor dispositive." Dkt. 51 at 7. To support this claim, Mrs. Das argues that ". . . State Defendants published and promoted the flawed laws that injured Ms. Das." *Id.* This statement is untrue and belies the fact that guidance promulgated by Williamson County, as it relates to assistors and interpreters, fundamentally differs from the Texas Election Code. Unlike the Texas Election Code, Williamson County's previous guidance imposed all interpreter requirements, including residency, on assistors. In other words, any person serving as both an assistor and an interpreter was required to meet the requirements of an interpreter.[1] *See* Exhibit 1 at pp. 3-23, ¶ 4 ("If the assistant is an interpreter, the interpreter must

---

[1] This improper conflation differs from the Texas Election Code, which provides for the following: "On the voter's request, the voter may be assisted by any person selected by the voter other than the voter's employer, and agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs." Tex. Election Code Ann. § 64.032(c). The Code also provides that, "To be eligible to serve as an interpreter, a person must be a registered voter of the county in which the voter needing the interpreter resides." *Id.* at § 61.033

be a registered voter of the voter's county.") Dkt. 45-1. This erroneous Williamson County guidance was not authored, published, or promoted by the State Defendants.[2]

The Texas Election Code explicitly enables Mrs. Das to receive assistance from her son at the voting booth to translate the ballot. *See* Tex. Election Code Ann. §§ 64.031, 64.032, 64.0321. Thus, Mrs. Das cannot tie her alleged injury to the State Defendants and therefore lacks standing to bring this lawsuit against them.

## II.  OCA-GH lacks standing.

In its Amended Complaint, OCA-GH cited a diversion of resources as its basis for organizational standing. Dkt. 14 at ¶ 10. Specifically, OCA-GH alleged that they were "harmed by Defendants' conduct" because "the unlawful restriction on interpreters of voters' choice has already required and will require OCA – Greater Houston to expend its limited funds and other resources . . . ." *Id*. Plaintiffs now claim that ". . . there is no legal basis for State Defendants' proposition that a diversion of resources is required to demonstrate an injury in fact." Dkt. 51 at 12.

In the context of a claimed "diversion of resources," the State Defendants and the Fifth Circuit look to *NAACP v. City of Kyle* to evaluate whether a party has organizational standing. *NAACP v. City of Kyle, Tex.*, 626 F.3d 233, 238 (5th Cir. 2010) ("an organization may establish injury in fact by showing that it had diverted significant resources to counteract the defendant's conduct; hence, the defendant's conduct significantly and 'perceptively impaired' the

---

[2] In reference to their own exhibits, as they pertain to this matter, Plaintiffs claim that "State Defendants do not repudiate this evidence, but admit it outright." Dkt. 51 at 7. To support this false statement, Plaintiffs cite to Dkt. 23 at ¶¶ 14, 16. *Id.* This document, however, corresponds to Williamson County's Original Answer. The State Defendants (two entities that are separate and distinct from Williamson County) have made no such admissions. In at least this instance, Plaintiffs improperly conflate Williamson County with the State of Texas and the Secretary of State of Texas.

organization's ability to provide its 'activities—with the consequent drain on the organization's resources . . . Such injury must be 'concrete and demonstrable.'") (internal citations omitted).

Here, OCA-GH failed to demonstrate that it "diverted significant resources to counteract the defendant's conduct." *Id*. Their only claimed injury – conversations that may have extended from five minutes to ten or fifteen – is not "concrete and demonstrable." *Id*. Plaintiffs ignore the record when they write that, ". . . all parties agree that State Defendants' conduct has been a constant drain on OCA-GH's limited resources – specifically, manpower and grant funds."[3] Dkt. 51 at 15. This statement is untrue. Plaintiffs attempt to support this false assertion by contesting the fact that OCA-GH has never exhausted its annual Get-Out-the-Vote grant; an assertion firmly rooted in the record, but one that Plaintiffs now allege to be based on an "inaccurate factual premise." *Id.* at 5. Plaintiffs argue that the $20,000 annual grant "*was* essentially exhausted" and cite to OCA-GH representative Deborah Chen's testimony ("I'm pretty sure we used almost all of it, yes . . . I know for sure that we would not have dipped into our reserves . . . I'm pretty sure we spend most of it . . . ). *Id.* at 16 (emphasis in original). The State Defendants' assertion that OCA-

---

[3] Plaintiffs cite to the State Defendants' Motion for Summary Judgement to support their claim that, "The Motion even concedes that State Defendants' conduct has caused a drain on OCA-GH's most valuable resource – manpower. Dkt. 45 at 12 ('educating voters on assistance under Texas election law poses and inconvenient distraction to staff and volunteers')." Dkt. 51 at 15. But Plaintiffs fail to cite the full sentence, which reads as follows: "At most, educating voters on assistance under Texas election laws poses an inconvenient distraction to staff and volunteers already on site to help educate voters: '. . . it just costs us more time . . . if we didn't have to go and explain all of that, maybe it would have just been a five-minute conversation versus us having to stop and explain all of this. You know, it becomes a 10- or 15-minute conversation.'[7] ([citing Chen Depo.] at 47:1-8.)." Dkt. 45 at 12. First, the statement is intended to illustrate the point that an inconvenient distraction does not suffice to confer organizational standing. Second, the footnote within the text is the same as the one cited directly below, which emphasizes OCA-GH's only alleged injury. *See* fn. 4, *infra*.

---

GH never exhausted its annual Get-Out-the-Vote grant is not controverted by "essentially" or "almost" using the balance of the funds, either in the past or during the current fiscal year.

The record makes clear that OCA-GH failed to demonstrate *any* diversion of resources away from their normal uses. When pressed on the issue, the OCA-GH representative repeatedly cited five-minute conversations that turned into ten-minute conversations as the basis for her organization's alleged injury.[4] An extended conversation – and one that OCA-GH employees and volunteers would undertake regardless of Mrs. Das's voting experience in Williamson County – does not constitute an injury sufficient to confer organizational standing.

## III. Texas election law comports with the Voting Rights Act.

Texas election law provides limited-English proficient voters like Mrs. Das with assistors of their choice. Assistors may accompany voters into the voting booth, pursuant to Chapter 64 of the Texas Election Code.[5] Furthermore, nothing prevents an assistor from translating for a voter. In fact, the assistor provisions make clear that a function of an assistor may be to translate the ballot. *See, e.g.*, Tex. Election Code Ann. § 64.031 (referring to "inability to read the language"); *id.* at § 64.0321 (referring to "reading the ballot to the voter"). Texas law also permits interpreters,

---

[4] This alleged injury is repeated in multiple instances: (**1**) ". . . it just costs us more time . . . if we didn't have to go and explain all of that, maybe it would have just been a five-minute conversation versus us having to stop and explain all of this. You know, it becomes a 10- or 15-minute conversation." Chen Depo. at 47:1-8. (**2**) "It's not about, you know, financially how much we've allocated . . . it costs potentially more time for, you know, volunteers that we have." *Id*. at 89:11-25. (**3**) ". . . five minutes versus having to spend, you know, 10 or 15 minutes trying to explain: Well, you know, if and when you do go to vote, you know, be sure to bring your voter ID, you know, be sure you understand what it means, you know, to be—if you're bringing an assistant or you're bringing a translator—like, that costs us more in time." *Id.* at 90:16-22. (**4**) ". . . it costs each volunteer 15 minutes to talk to someone instead of just 5 minutes . . . ." *Id*. at 91:14-16.

[5] Plaintiffs write that the State Defendants interpret "Section 208 as limited to the confines of the ballot box." Doc. 51 at 19. The record, however, makes clear that the only alleged injury about which Plaintiffs complain occurred at the ballot box – when Mrs. Das was not permitted to bring her son into the voting booth.

---

but the selected interpreter must be registered in the same county as the voter.[6] *Id.* at § 61.033.

Unlike the assistor provision, however, nothing in the interpreter provision prohibits the interpreter

from being an employer, agent of the employer, or officer or agent of the voter's union. *See id.* at

Chapter 61.

Plaintiffs concede that "[r]elevant parts of [Texas Election Code section 64.032]

substantially mirror Section 208" of the Voting Rights Act." Dkt. 14 at ¶ 20. This is because both

Texas law and the Voting Rights Act provide limited English-proficient voters with an assistor of

their choice, provided that the assistor is not also the voter's employer, an agent of their employer,

or an officer or agent of their union.

For these and other reasons articulated in prior briefs, this Court should grant the State

Defendants' Motion for Summary Judgment because Texas election law conforms to Section 208

of the Voting Rights Act.

## IV.    Conclusion

For the foregoing reasons, the State Defendants respectfully request that the Court grant its

Motion for Summary Judgment.

---

[6] Section 61.034 of the Election Code authorizes an interpreter to translate the ballot inside the voting station. However, once the interpreter wishes to enter the voting booth, she must also qualify as, and take the oath of, an assistor under Chapter 64. *See* Tex. Election Code Ann. §§ 64.032, 64.034. For example, a voter's employer would not be able to enter the voting booth with the voter to translate as an "interpreter" (because the employer could not translate as an "assistor"). However, if, for example, a voter's hypothetical employer was attempting to help an employee-voter communicate with a poll worker outside of the voting booth, but in the polling place, that action would not violate either the assistor provisions in the Texas Election Code, or the Voting Rights Act, because it is outside the bounds of both statutes. Accordingly, the interpreter provisions offer *additional* options for voters, beyond minimum Voting Rights Act requirements. A simple restriction on who may serve as an interpreter, when it does not include other restrictions which apply to assistors, cannot conflict with the Voting Rights Act.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFERY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ANGELA V. COLMENERO
Chief - General Litigation Division


/s/ *Matthew Deal*
LAURA A. BARBOUR
Texas Bar No. 24069336
MATTHEW DEAL
Texas Bar No. 24087397
Assistant Attorneys General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 473-0447
FAX:  (512) 320-0667
laura.barbour@texasattorneygeneral.gov
matthew.deal@texasattorneygeneral.gov

ATTORNEYS FOR STATE DEFENDANTS

---

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been sent by electronic notification through ECF by the United States District Court, Western District of Texas, Austin Division, on May 20, 2016 to:

David M. Hoffman
FISH & RICHARDSON, P.C.
111 Congress Avenue, Suite 810
Austin, Texas 78701

Jerry Vattamala
ASIAN AMERICAN LEGAL DEFENSE AND
EDUCATION FUND
99 Hudson Street
New York, New York 10013


/s/ *Matthew Deal*
MATTHEW DEAL
Assistant Attorney General

---