IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| OCA-GREATER HOUSTON, *et al.*, | |
| Plaintiffs, | |
| v. | CIVIL ACTION NO. 1:15-cv-00679-RP |
| STATE OF TEXAS, *et al*., | |
| Defendants. | |

**PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION**

On August 12, 2016, this Court issued an Order granting Plaintiff Organization of Chinese Americans-Greater Houston's ("OCA-GH" or "Plaintiff") Motion for Summary Judgment. The Court's Order was based on a finding that certain portions of the Texas Election Code, specifically §§ 61.031–61.036 (the "Interpretation Provisions"), flatly contradict Section 208 of the federal Voting Rights Act ("VRA"), at least insofar as they are asserted by Defendants State of Texas and Texas Secretary of State Carlos Cascos ("State Defendants") to (1) permit use of an interpreter only if the election officer does not speak the same language as the voter and (2) restrict voter choice of interpreter by arbitrarily requiring the interpreter to be registered to vote in the county where assistance is being sought. The Court also found that enforcement of the Interpretation Provisions in this way by State Defendants perceptibly impairs OCA-GH's ability to provide education and assistance to Asian Pacific American voters – a key part of its mission. In accordance with these findings, the Court enjoined State Defendants from engaging in any practice that denies voters' rights under Section 208, and instructed Plaintiff to file briefing regarding additional remedies that may be necessary to provide effective relief. Thus, Plaintiff, pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure, hereby moves for entry of a

permanent injunction specifically enjoining State Defendants from acts of promulgating, promoting, and enforcing the Texas Election Code in a manner that restricts the voter's choice of an interpreter based on the prospective interpreter's registration status. A Proposed Order defining the metes and bounds of an appropriate permanent injunction is attached and discussed below.

## I.     LEGAL STANDARD

A plaintiff is entitled to permanent injunctive relief if it establishes: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 141 (U.S. 2010) (citing *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). A federal court's decision to grant a permanent injunction is an equitable act that will not be disturbed on appeal absent abuse of discretion. *eBay v. MercExchange*, 547 U.S. at 391. The injunction itself must be both specific and narrowly tailored, not vague and overbroad. "[A]n injunction is overly vague if it fails to satisfy the specificity requirements set out in Rule 65(d)(1), and it is overbroad if it is not 'narrowly tailor[ed] . . . to remedy the specific action which gives rise to the order' as determined by the substantive law at issue." *Scott v. Schedler*, 2016 U.S. App. LEXIS 10919, 8-9 (5th Cir. 2016) (quoting *Doe v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004)).

## II.     DISCUSSION

Plaintiff OCA-GH is entitled to the permanent injunction outlined in the attached Proposed Order because (1) all four points of the *eBay* Test are satisfied, and (2) the proposed

injunction is both specific and narrowly tailored to support the findings of law and fact by the Court.

### A.     All Four Points of the eBay Test are Satisfied

#### 1.     OCA-GH Has Suffered Irreparable Harm

An injury is irreparable "if it cannot be undone through monetary remedies." *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981). Irreparable harm can be presumed in this case given the affirmative finding of a clear violation under the VRA. Further, even if such an injury is not presumed, the evidence of record in the case establishes the specific irreparable harm suffered by OCA-GH as a result of State Defendants' conduct.

##### (a)     *Irreparable Harm is Presumed*

Irreparable injury can be presumed in a case involving the impairment of constitutional or civil rights. *See*, *e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976); O*bama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012); *Middleton-Keirn v. Stone*, 655 F.2d 609, 611 (5th Cir. 1981) ("[I]rreparable injury should be presumed from the very fact that the [civil rights] statute has been violated."). Any injury flowing from a restriction on the fundamental right to vote is therefore irreparable. *See*, *e.g.*, *Williams v. Salerno*, 792 F.2d 323, 326 (2d Cir. 1986) (finding that the denial of the right to vote results in "irreparable harm").[1] As such, a presumption of

---

[1] *See also United States v. City of Cambridge*, 799 F.2d 137, 140 (noting that discriminatory voting procedures in particular are "the kind of serious violation of the Constitution and the Voting Rights Act for which courts have granted immediate relief."); *Cardona v. Oakland Unified School Dist.*, 785 F. Supp. 837, 840 (N.D. Cal. 1992) ("Abridgement or dilution of a right so fundamental as the right to vote constitutes irreparable injury."); *Dillard v. Crenshaw County*, 640 F. Supp. 1347, 1363 (M.D. Ala. 1986) ("Given the fundamental nature of the right to vote, . . . plaintiffs seeking preliminary injunctive relief under section 2 should not be and are not required to make the usual showing of irreparable injury as a prerequisite to relief; rather, such injury is presumed by law." (internal quotes and citations omitted)); *Fla. Democratic Party v. Hood*, 342 F. Supp. 2d 1073, 1082 (N.D. Fla. 2004) ("A person who is denied the right to vote suffers irreparable injury. One need look no further than the 2000 election to confirm that that is

irreparable harm is applicable in this case based on the Court's affirmative finding that State Defendants' conduct denies voters' rights under Section 208 of the VRA.[2]  *See* Dkt. 60 at 19-20.

### (b) *The Evidentiary Record Proves that OCA-GH Suffered Irreparable Harm*

Even absent the benefit of a legal presumption, the irreparable-harm element of the *eBay* Test is met in view of the evidentiary record.  Indeed, the Court has already scrutinized the evidence and determined that State Defendants' conduct causes a concrete and perceptible impairment of OCA-GH's ability to fulfill a key prong of its mission – promoting civic participation and providing civic education for Asian Pacific Americans.  *See* Dkt. 60 at 7-14, 20.  This injury manifests as a severe burden on OCA-GH's Get Out the Vote ("GOTV") initiative, a core project of the organization used to encourage and educate community members on when, where, and how to vote.  *See*, *e.g.*, Dep. Tr. Deborah Chen, Dkt. 44-15 at 6:9–19, 41:3–42:11.  The evidentiary record shows that OCA-GH devotes its limited monetary and volunteer resources towards combatting State Defendants' improper conduct.  *See*, *e.g.*, Dkt. 44-15 at 45:24-47-12, 89:21-93:16.  This responsive dedication of resources, as well as the detrimental effect that such conduct has on the community served by OCA-GH, has undoubtedly quelled the effectiveness of GOTV.  *See*, *e.g.*, Dkt. 44-15 at 38:22-39:11, 94:13-17.

Unfortunately, the constant frustration of OCA-GH's mission to promote civic participation cannot be undone.  Like an election, each opportunity to positively engage the

---

so. There was post-election litigation seeking to reopen the polls or otherwise allow further voting by those who had been turned away, but that litigation went nowhere. The problem was irremediable.").

[2] Plaintiff notes that the present case is distinguished from *Chisom v. Roemer* (853 F.2d 1186, 1188-1189 (5th Cir. 1988)) where the Fifth Circuit denied a presumption of irreparable harm to support a *preliminary* injunction in view of a possibility that other corrective relief, if warranted, would be available in the ordinary course of litigation.  Such is not the case here, where the evidentiary record has been fully developed and a final decision rendered.

Asian Pacific community through GOTV is a unique one that cannot be replaced. There simply are no do-overs in this field of endeavor, no redress. This sort of harm is therefore intrinsically irreparable.

      2.      Remedies Available at Law are Inadequate to Compensate OCA-GH for its Injury

A legal remedy may be deemed inadequate if plaintiff shows that a monetary award would be speculative because the amount of damage would be difficult or impossible to measure, *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952). Though OCA-GH has clearly been harmed monetarily in that it devotes significant financial resources towards combatting State Defendants' conduct, any monetary award would undoubtedly be speculative in this case because other significant aspects of the claimed injury – namely, wasted volunteer time and the dampened effectiveness of GOTV – are far less tangible. For example, while the record shows that State Defendants' conduct doubles or triples the amount of time spent explaining Texas election laws to limited English proficient ("LEP") voters (Dkt. 45-3 at 90:16–22), accurately calculating, or even estimating, the total amount of extra time taken is not practicable. More importantly, the lessened potency of GOTV is entirely non-quantifiable. In the same way that it is not possible to pay someone for having been denied the right to vote, there is also no compensatory price for interfering with a non-profit organization's efforts to promote this fundamental right.

Even if a monetary award *could* be readily approximated, such relief would not be adequate because it would force OCA-GH to repetitively pursue damages to assuage an ongoing injury. *See Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, 657 F. Supp.2d 795, 824 (S.D. Tex. 2009); *cf. L.A. v. Lyons*, 461 U.S. 95, 111 (U.S. 1983) (finding an adequate legal remedy for constitutional harm when there is no real or immediate threat of ongoing injury). To be clear,

State Defendants' violations of the VRA will continue to frustrate OCA-GH's mission and necessitate the dedication of significant resources in perpetuity, unless the Court exercises its discretion to fashion a reasonable equitable remedy. Indeed, State Defendants have made clear their intentions on the record to continue to interpret the Texas Election Code in the very same way they have in the past. *See* Dkt. 45 at 18 n.10 ("the Secretary of State has taken, and will continue to take, the position that . . ."). Thus, an injunction is necessary to fashion complete and meaningful relief for OCA-GH.

In any event, compensatory damages can only be an adequate remedy where they can actually be awarded. The VRA, while representative of a valid abrogation of state sovereign immunity, does not provide for the recovery of monetary damages. *Olagues v. Russoniello*, 770 F.2d 791 (9th Cir.1985) (finding no authority within the VRA to allow for damages, no legislative history suggesting damages are allowed, finding no case in which damages were ever recovered, declining to imply any action for damages under VRA); *B.C. Foreman v. Dallas County, Texas*, 990 F.Supp. 505 (N.D.Tex. 1998) (finding no cases in which a VRA court has awarded any form of monetary relief, finding no authority within the VRA for money damages, and declining to imply a right to damages under the VRA); *Windy Boy v. County of Big Horn*, 647 F.Supp. 1002 (D.Mon. 1986) (finding no precedent in for awarding damages under VRA and stating injunctive relief is the "universal remedy" when plaintiffs prevail in VRA actions).

For at least these reasons, OCA-GH has no adequate remedy at law.

        3.    <u>The Balance of Hardships Favors Granting Injunctive Relief</u>

The balance of hardships weighs heavily in favor or granting injunctive relief. To be sure, the burden placed on State Defendants' by the Proposed Order is exceedingly slight compared to the continued harm OCA-GH is certain to endure without injunctive relief. Plaintiff fully

appreciates that the State has a substantial interest in enforcing the Texas election laws in order to regulate the voting process. *See Voting for Am., Inc. v. Andrade*, 488 Fed. Appx. 890, 894-895 (5th Cir. 2012). Yet, importantly, the provisions of the Proposed Order would ***not*** enjoin enforcement of any of the State's laws. These provisions merely require promulgation, promotion, and enforcement of the Texas Election Code in a way that fully coincides with Section 208 of the VRA. In fact, the construction of the Code set forth in the Proposed Order is the only way conflict with federal law can be avoided. *Id*. (citing *Hamer v. Musselwhite*, 376 F.2d 479, 481 (5th Cir. 1967), to support a proposition that the Secretary of State's interpretation of how a law is to be enforced is only granted deference insofar as it does not conflict with overriding federal statutory text).

As a practical matter, it cannot reasonably be said that provisions of the Proposed Order that would necessitate the revising and republishing certain handbooks, guides, and webpages involves any more than a trifle of effort on behalf of the Secretary of State's Office. Compliance with even the most burdensome provision proposed – implementation of measures to process and publish complaints – would not require significant effort. In fact, the Secretary of State has already instituted a general complaint-processing system featuring a downloadable PDF form posted on the Secretary's website[3] for recording violations of the Election Code. *See* Ex. A. This form even notes that the complaint will be placed on the public record. Thus, fulfillment of this aspect of the Proposed Order would require only slight additions or alterations to the current program. Such minimal effort cannot be considered a heavy burden amongst the weightier considerations in this case involving the right to vote.

---

[3] *See* "Contact Us" webpage at http://www.sos.state.tx.us/elections/contact.shtml (accessed August 19, 2016)

In sum, the burden of compliance with an issued injunction in accordance with the Proposed Order is easily borne by State Defendants, while the hardship from a lack thereof would strike a heavy blow to the very core of OCA-GH's mission. Thus, the balance of hardships weighs in favor of granting injunctive relief.

### 4. Granting Injunctive Relief Serves the Public Interest

While the public interest is undoubtedly served by the proper enforcement of state laws, there is no public benefit gained from improper enforcement. Nor is the change in interpretation and enforcement of the Texas Election Code outlined by the Proposed Order likely to cause any additional confusion amongst the public. Indeed, the Proposed Order outlines a construction of the Texas Election Code that simplifies its execution. In sum, all voters who desire language assistance at any point in the voting process will be able to obtain such assistance from a person of their choosing if (1) that person is not the voter's employer or union representative; **_or_** (2) that person is registered to vote in the same county as the voter. This construction is in tune with the spirit and function of Section 208[4], and will alleviate the burden on LEP voters to recall a specific, non-intuitive English word to access their rights to language assistance. Given the extensive Congressional record discussing the importance of securing suffrage for LEP voters by providing language assistance from a trusted person of the voter's choice (*see* Dkt. 44-5 at 2, 4, 62), injunctive relief effecting an interpretation of the Texas Election Code in accordance with the VRA's Section 208 is exceedingly aligned with the public interest.

### B. The Proposed Injunction is Specific and Narrowly Tailored

To comply with Rule 65(d) "[t]he district court's order granting the injunction must 'state its terms specifically' and 'describe in reasonable detail' the conduct restrained or required."

---

[4] Notably, the proffered construction also appears to align with State Defendants' stated belief that the Interpretation Provisions should "offer additional options for voters, beyond minimum Voting Rights Act requirements." Dkt. 45 at 18-19 n.10

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 586 (5th Cir. 2013) (quoting FED. R. CIV. P. 65(d)).  The degree of specificity must be such "that an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is [prescribed]." *U.S. Steel Corp. v. United Mine Workers of Am.*, 519 F.2d 1236, 1246 n.20 (quoting WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2955 at 536-37 (1973)).  The injunction set forth in the Proposed Order does not merely recite broad generalities and catch-all phrases, but specifically identifies the very policies, procedures, and directives that are required for compliance.  *Cf. Peregrine Myanmar*, 89 F.3d at 50, 52-53 (vacating as vague a catch-all paragraph of an injunction requiring the appellant to "take all other reasonably needful actions to facilitate" a general result).  In fact, the Proposed Order precisely identifies the documents that must be revised and republished down to the relevant page number and recited text, and provides suitable replacement text as well.  In this way, State Defendants are provided with notice of exactly what is required to achieve compliance.

As previously noted, an injunction is overbroad if it is not narrowly tailored to remedy the specific action which gives rise to the order.  *See Veneman*, 380 F.3d at 818.  "The broadness of an injunction refers to the range of proscribed activity." *Id*.  The injunctive provisions of the Proposed Order are not overly broad, but specifically targeted at the complained of conduct – namely, State Defendants' acts of promulgating, promoting, and enforcing the Texas Election Code in a manner that restricts the voter's choice of an interpreter based on the prospective interpreter's registration status.  Such conduct was the only issue before the Court, and it is the only issue affected by the Proposed Order.

### III.   CONCLUSION

For the reasons described above, Plaintiff respectfully requests that this Court enter the proposed order filed herewith.

Dated:  August 19, 2016

Respectfully submitted,

FISH & RICHARDSON P.C.

By: */s/ David M. Hoffman*
 David M. Hoffman
 Texas Bar No. 24046084
 hoffman@fr.com
 Kenneth W. Darby*
 Texas Bar No. 24097570
 kdarby@fr.com
 One Congress Plaza, Suite 810
 111 Congress Avenue
 Austin, TX 78701
 Tel: (512) 472-5070
 Fax: (512) 320-8935


ASIAN AMERICAN LEGAL DEFENSE AND
EDUCATION FUND ("AALDEF")

 Jerry Vattamala*
 99 Hudson Street, 12th Floor
 New York, NY 10013
 Tel: (212) 966-5932
 Fax: (212) 966-4303

**COUNSEL FOR PLAINTIFFS
OCA-GREATER HOUSTON
AND MALLIKA DAS**


*Admitted Pro Hac Vice

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on August 19, 2016, and was served via CM/ECF on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(b)(1).

By: */s/ David M. Hoffman*
David M. Hoffman