UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| OCA GREATER HOUSTON, *et al.*, § | | |
| § | | |
| Plaintiffs, § | | |
| § | | |
| v. § | | 1:15-cv-679-RP |
| § | | |
| STATE OF TEXAS, *et al.*, § | | |
| § | | |
| Defendants. § | | |
| § | | |

**ORDER**

Before the Court are Plaintiff OCA-Greater Houston's Motion for Permanent Injunction (Dkt. 61) and Defendants' Response (Dkt. 62). These filings were made at the Court's request in order to assist the Court in rendering appropriate relief pursuant to its August 12, 2016 order granting Plaintiff's Motion for Summary Judgment and denying Defendants' Motion for Summary Judgment. After reviewing the filings, relevant case law, and the record in this case, the Court issues the following order.

I.   **BACKGROUND**[1]

This case was initially filed by the late Mallika Das, a registered voter in Williamson County, Texas, and OCA-Greater Houston, a non-profit organization dedicated to advancing the social, political, and economic well-being of Asian Pacific Americans, against Defendants, the State of Texas and Secretary of State Carlos Cascos in his official capacity ("Defendants").[2] Ms. Das and OCA-Greater Houston sought to challenge Defendants' enforcement of certain provisions of the Texas Election Code ("TEC") that govern the assistance offered to limited-English proficient

---

[1] This order provides a brief summary of the background and relevant facts for the purposes of discussing Plaintiff's motion for a permanent injunction. A more complete discussion of the relevant background and facts can be found in the Court's August 12, 2016 order, which granted Plaintiff's motion for summary judgment. (*See* Order, Aug. 12, 2016, Dkt. 60.)

[2] Plaintiffs also named Williamson County and the Williamson County Elections Department in their suit. After a settlement, the Court dismissed with prejudice Plaintiffs' claims against these defendants.

1

voters. These provisions are included in two separate chapters of the TEC. Tex. Elec. Code § 61.031–.036, 64.031–.037. Chapter 61, which includes the "Interpreter Provisions," allows a voter to select an "interpreter" of his or her choice "[i]f an election officer who attempts to communicate with [the] voter does not understand the language used by the voter." *Id.* § 61.032. "To be eligible to serve as in interpreter," however, "a person must be a registered voter of the county in which the voter needing the interpreter resides." *Id.* § 61.033. Chapter 64, which includes the "Assistance Provisions," allows a voter who is unable "to read the language in which the ballot is written" to use an assistor of the voter's choice, "other than the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs." *Id.* § 64.031(1), 64.032(c). However, a voter may only use the assistor of his or her choice "while in the presence of the voter's ballot or carrier envelope." *Id.* § 64.0321.

Plaintiffs argued that these provisions, which are promulgated and enforced by Defendants, violate Section 208 of the Voting Rights Act ("VRA"), which provides that:

> Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union.

52 U.S.C.A. § 10508 (formerly 42 U.S.C.A. § 1973aa-6).

In support of that argument, Plaintiffs highlighted Ms. Das's attempt to vote in a 2014 election. When Ms. Das went to vote, she brought her son to assist her because she is limited-English proficient and had found it difficult to vote in the past. After speaking briefly with Ms. Das and her son, Williamson County poll officials refused to allow Ms. Das's son to translate for her because he was not registered to vote in Williamson County. Ms. Das proceeded to vote without her son's assistance.

Although Ms. Das was not a member of OCA-Greater Houston, her experience is demonstrative of the experience the organization seeks to prevent their members—many of whom

are language minorities—from having. One of the organization's primary missions is promoting civic participation and civic education. In order to effectuate this mission, it undertakes a "Get out the Vote" initiative, which encourages voting and educates members on how to vote. OCA-Greater Houston argues that this effort has been hindered by the Assistance and Interpreter Provisions of Texas law, in particular, because those provisions requires the organization's employees and volunteers to spend additional time explaining what words a limited-English proficient voter must use to ensure they have assistance in voting.

Ms. Das passed away prior to the Court's ruling on summary judgment; thus the case proceeded based solely on OCA-Greater Houston's claims. After an evidentiary hearing on standing, the Court granted summary judgment in favor of OCA-Greater Houston on August 12, 2016. The Court explained that Section 208 operates as a negative obligation on states, requiring that they not limit voters' rights to assistance by a person of their choice. (Order, Aug. 12, 2016, at 4.) The Court concluded that the Assistance and Interpreter Provisions of the TEC did just that. It explained:

> The Assistance Provisions, insofar as they honor the VRA's requirement of voter choice only at the ballot box, are insufficient to implement Section 208. And the Interpretation Provisions, insofar as they allow an interpreter only if the officer does not speak the same language as the voter and restrict voter choice of interpreter by arbitrarily requiring the interpreter to be registered to vote in the county where assistance is being sought, flatly contradict Section 208.

(Order, Aug. 12, 2016, at 19.) It further enjoined Defendants, "their employees, agents, and successors in office, and all persons acting in concert with them, from engaging in any practice that denies the rights secured by Section 208 of the Voting Rights Act." (*Id.* at 20.) In addition, the Court ordered that the Plaintiff file briefing regarding any additional remedies that may be necessary to timely effect necessary relief and gave the Defendants an opportunity to respond.

Plaintiff filed a motion for permanent injunction on August 19, 2016. (Pl.'s Mot. Permanent Inj., Dkt. 61.) Attached to Plaintiff's motion was a proposed order that would require the State of Texas and the Secretary of State's Office to "implement a Remedial Plan." (Pl.'s Proposed Order, Dkt. 61-2 at 1.)

Plaintiff's proposed plan would require Defendants to meet ten various obligations. In short, Defendants would be required to (1) revise and re-publish the 2016 Handbook for Elections Judges and Clerks, including making four specific changes, (2) revise and re-publish the 2015 Poll Watcher's Guide and related materials, including making one specific change, (3) distribute a notice to all county election officials clarifying the requirements of state and federal law based on this Court's order and publish that notice on the Secretary of State's website, (4) discuss the assistance voters are entitled to under the VRA at all election law seminars for the next five years, (5) revise the language on the Secretary of State's "Voters with Special Needs" webpage to clarify the assistance voters are entitled to, (6) revise the language on the Secretary of State's "Who, What, Where, When, How" webpage to clarify the assistance voters are entitled to, (7) implement similar revisions with respect to any other documents that may improperly explain the assistance voters are entitled to, (8) implement a procedure for obtaining, publishing, investigating, and acting on voter complaints related to enforcement of the TEC in a way that restricts voter choice in a manner inconsistent with the VRA, (9) publish and archive the order outlining the injunctive relief ultimately granted in this case on the Secretary of State's website, and (10) maintain written records of all actions taken pursuant to the order, to be produced to the Court and Plaintiff. (*Id.*)

Defendants filed a response on August 26, 2016. (Defs.' Resp. to Pl.'s Mot. Permanent Inj., Dkt. 62.) Defendants' argued that Plaintiff's motion should not be granted for three primary reasons. First, Defendants asserted that they were already taking steps to comply with the Court's summary judgment order. (*Id.* at 2–5.) For example, Defendants supplied to the Court an email, sent to 4,800 election officials, informing the officials of the Court's August 12, 2016, order. (Ingram Decl. ¶ 3, Dkt. 62-1.) Second, Defendants argued that additional remedies are unnecessary because they either go too far in instructing the Secretary of State on how to comply with his statutory duties, or impose requirements that create new responsibilities for the Secretary of State. (Defs.' Resp. to Pl.'s Mot. Permanent Inj., Dkt. 62. at 5–8.) Third, Defendants argued that Plaintiff's proposed injunctive relief was too broad because

the Court's initial summary judgment order only invalidated TEC Section 61.032, the provision that restricted an interpreter to a person registered to vote in the voter's county of residence, and left the rest of the TEC in full effect. (*Id.* at 8.)

After reviewing Defendants' response, and particularly Defendants' third argument, the Court issued a clarification order on August 30, 2016. (Order, Aug. 30, 2016, Dkt. 66, at 1.) That order explained that three sections of the TEC were affected by the Court's initial summary judgment order: Sections 61.032, 61.033, and 64.0321. (*Id.* at 3.) Specifically, the Court found:

- Section 61.032 to be inconsistent with the Voting Rights Act to the extent it precludes a limited-English voter from selecting an interpreter if an election officer who attempts to communicate with the voter understands the language spoken by the voter.
- Section 61.033 to be wholly inconsistent with the Voting Rights Act because it restricts a limited-English voter's choice of interpreter to those persons registered to vote in the county in which the voter needing the interpreter resides.
- Section 64.0321 to be inconsistent with the Voting Rights Act to the extent it restricts a voter from obtaining assistance when at a polling location, but outside the presence of the voter's ballot or carrier envelope.

(*Id.*) The Court reiterated its initial injunction, enjoining Defendants from enforcing the TEC to the extent that it is inconsistent with the VRA. (*Id.*)

In its clarification order, the Court also stated that it would address Plaintiff's motion for a permanent injunction in a later order. The Court will address Plaintiff's motion now.

## II.    PERMANENT INJUNCTION STANDARD

A plaintiff seeking a permanent injunction must satisfy a four-factor test to demonstrate it is entitled to such relief. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 157 (2010). The "plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). Further, in accordance with Federal Rule of Civil

5

Procedure 65(d)(1), an order granting a permanent injunction must "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail . . . the act or acts restrained or required." *Scott v. Schedler*, 826 F.3d 207, 208 (5th Cir. 2016) (quoting Fed. R. Civ. P. 65(d)(1)). According to the Fifth Circuit, this means the injunction must not be vague or overbroad. *Id.* "[A]n injunction is overly vague if it fails to satisfy the specificity requirements set out in Rule 65(d)(1), and it is overbroad if it is not 'narrowly tailor[ed] . . . to remedy the specific action which gives rise to the order' as determined by the substantive law at issue." *Id.* (quoting *Doe v. Veneman*, 380 F.3d 807, 813 (5th Cir. 2004)).

The decision to grant or deny permanent injunctive relief is left to the equitable discretion of the district court. *eBay*, 547 U.S. at 391, 393. "Even when a movant establishes the four requirements, the decision to grant or deny a permanent injunction remains in the court's discretion." *Nat'l Solid Wastes Mgmt. Ass'n v. City of Dallas*, 903 F. Supp. 2d 446, 459 (N.D. Tex. 2012) (citing *Lemon v. Kurtzman*, 411 U.S. 192, 200–01 (1973)).

### III.   ANALYSIS

Plaintiff argues it is entitled to a permanent injunction under the four-factor test outlined by the Supreme Court. This Court will first consider whether Plaintiff is entitled to additional injunctive relief under the four-factor test; if so, the Court will consider Plaintiff's proposed Remedial Plan.

First, Plaintiff argues that irreparable harm is presumed in a case involving the impairment of fundamental constitutional or civil rights, such as the right to vote. Plaintiff notes that even in the absence of such a presumption, one of its core missions—promoting civic participation and civic education—is hindered by Defendants' enforcement of the TEC provisions at issue, costing Plaintiff additional time and resources to reach voters.

The Court agrees with Plaintiff that this case involves the critical and important right of voting, which Congress has declared "fundamental." 52 U.S.C. § 20501 ("Congress finds that . . . the

right of citizens of the United States to vote is a fundamental right; . . . it is the duty of the Federal, State, and local governments to promote the exercise of that right."). Plaintiff is also correct that some courts have concluded that the involvement of such a fundamental right creates a presumption of irreparable injury. *See, e.g., Cardona v. Oakland Unified Sch. Dist.*, 785 F. Supp. 837, 840 (N.D. Cal. 1992) ("Abridgement or dilution of a right so fundamental as the right to vote constitutes irreparable injury."). However, the Court finds that it need not rely on that presumption because it concludes that Plaintiff has demonstrated irreparable injury.

"An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981). Further, the injury must be demonstrated by "specific facts." *ITT Educ. Servs., Inc. v. Arce*, 533 F.3d 342, 347 (5th Cir. 2008). This Court has already discussed the specific facts that demonstrate Plaintiff's injury. (Order, Aug. 16, 2016, Dkt. 60, at 11–15.) Namely, Plaintiff's efforts to promote civic participation and voting among Asian Americans were hindered because it had to spend additional time clarifying voters' misunderstandings and educating voters about how to communicate with poll workers. (*Id.* at 13.) Further, despite these efforts, Plaintiff was aware of community members who were unable to vote because of the TEC's Assistance and Interpreter Provisions. (*Id.* at 11.) Without this hindrance, Plaintiff would have been able to reach more potential voters and likely motivate more community members to vote. (*Id.* at 14.)

This injury cannot be undone with monetary relief. As Plaintiff explains in addressing the second factor of the four-factor test, "[i]n the same way that it is not possible to pay someone for having been denied the right to vote, there is also no compensatory price for interfering with a non-profit organization's efforts to promote this fundamental right." (Pl.'s Mot. Permanent Inj., Dkt. 61,

at 5.) The Court agrees and finds that Plaintiff has suffered an irreparable injury that cannot be adequately remedied by monetary relief.[3]

Finally, the Court finds that Plaintiff is entitled to an injunction based on the remaining two factors.[4] The balance of hardships weighs in favor of an equitable remedy because the injury caused to Defendants by an injunction is minimal—Plaintiff's proposed Remedial Plan primarily requires modifying some of the voter education and election law enforcement materials Defendants already provide to election officials, poll watchers, and voters. Further, the public interest would undoubtedly be best served by an injunction, which would ensure that all Texas voters receive the right to assistance in voting provided by Section 208 of the VRA. *Cf. Texas Democratic Party v. Benkiser*, 459 F.3d 582, 595 (5th Cir. 2006) ("It is beyond dispute that the injunction serves the public interest in that it enforces the correct and constitutional application of Texas's duly-enacted election laws.").

Having concluded that Plaintiff is entitled to a permanent injunction, the Court will now consider whether Plaintiff's requested relief is appropriate in this case. Defendants argue that no additional relief is necessary because the Secretary of State is complying with this Court's August 12, 2016 order and is working to update its guidance and training materials accordingly.

A.     Compliance Efforts by Defendants

Defendants have already sent an email to more than 4,800 election officials informing them of the Court's August 12, 2016 order and instructing them as to how to comply with that order.

---

[3] Although the Court, in its order granting Plaintiff's motion for summary judgment, focused in large part on Plaintiff's economic injury, it did not conclude that Plaintiff's injury was "entirely economic." (*See* Defs.' Resp. to Pl.'s Mot. Permanent Inj., Dkt. 62, at 2 n.1.) Instead, it explained that the injury requirement for Article III is qualitative, not quantitative. (Order, Aug. 12, 2016, at 9 (citing *Ass'n of Comty. Orgs. for Reform Now v. Fowler*, 178 F. 3d 350, 357–58 (5th Cir. 1999).) While the Court, to demonstrate the concrete nature of Plaintiff's injury, also quantified that injury (*id.* at 13–14), it ultimately concluded that "[t]he Assistance and Interpretation Provisions [in the TEC] perceptibly impair OCA–Greater Houston's ability to provide education and assistance to Asian Pacific American voters," (*id.* at 20), a qualitative injury that cannot be remedied with monetary relief.
[4] Defendants did not challenge Plaintiff's entitlement to a permanent injunction based on the final two factors. (Defs.' Resp. to Pl.'s Mot. Permanent Inj., Dkt. 62, at 2.)

8

Defendants further state their intention to post the Court's order on the Secretary of State's website and to revise and update other handbooks and training materials provided by the State, including the Poll Watcher's Guide, the Election Inspector Handbook, and the Qualifying Voters Handbook. Defendants also intend to update Secretary of State websites, including the "Voters with Special Needs" webpage and the "Who, What, Where, When, How" webpage on the Secretary of State's "Vote Texas" website, and a pamphlet regarding voters with special needs linked to on the Secretary of State's main website.

While the Court concludes that some of the specific revisions and updates proposed by Defendants inaccurately reflect the Court's August 12, 2016 ruling, it concludes that any misunderstanding by Defendants was in good faith. Based on that understanding, the Court presumes Defendants will follow through with their stated intentions to modify their websites, handbooks, and guidance in the places indicated after they have altered their proposed revisions to comply with this Court's August 30, 2016 order.

B.   Plaintiff's Remedial Plan

With Defendants' compliance efforts and the existing injunction in mind, the Court will assess whether the additional injunctive relief outlined in Plaintiff's proposed Remedial Plan is necessary to ensure Defendants do not enforce the TEC to the extent this Court has found it to be inconsistent with Section 208 of the VRA. As the Court explained previously, Plaintiff's proposed Remedial Plan includes requiring that Defendants: (1) revise and re-publish the 2016 Handbook for Elections Judges and Clerks, (2) revise and re-publish the 2015 Poll Watcher's Guide and related materials, (3) distribute a notice to all county election officials clarifying the requirements of state and federal law based on this Court's order and publish that notice on the Secretary of State's website, (4) discuss the assistance voters are entitled to under the VRA at all election law seminars for the next five years, (5) revise the language on the Secretary of State's "Voters with Special Needs" webpage to clarify the assistance voters are entitled to, (6) revise the language on the Secretary of State's "Who, What, Where, When, How" webpage to clarify

9

the assistance voters are entitled to, (7) implement similar revisions with respect to any other documents that may improperly explain the assistance voters are entitled to, (8) implement a procedure for obtaining, publishing, investigating, and acting on voter complaints related to enforcement of the TEC in a way that restricts voter choice in a manner inconsistent with the VRA, (9) publish and archive the order outlining the injunctive relief ultimately granted in this case on the Secretary of State's website, and (10) maintain written records of all actions taken pursuant to the order, to be produced to the Court and Plaintiff.

The Court is persuaded by Defendants' argument that Plaintiff's requested relief in parts (1), (2), (3), (5), (6), (7), and (9) is effectively mooted by Defendants' compliance efforts, which overlap substantially with Plaintiff's proposals. To the extent Plaintiff and Defendants' specific proposed revisions in these parts conflict, that conflict relates to the parties' disagreement over the scope of this Court's August 12, 2016 order. As the Court already stated, the Court presumes Defendants will alter their proposed revisions to the extent necessary to comply with this Court's order issued on August 30, 2016. Thus, the Court need not order Defendants to adopt specific revisions, but rather feels that Defendants can use whatever language they choose in order to effectuate the Court's injunction, as clarified by the August 30, 2016 order, and comply with their statutory obligations.

Parts (4), (8), and (10) of Plaintiff's Remedial Plan are not mooted by Defendants' planned compliance efforts. The remaining proposals by Plaintiff are (4) to order Defendants to discuss the assistance voters are entitled to under the VRA at all election law seminars for the next five years, (8) to implement a procedure for obtaining, publishing, investigating, and acting on voter complaints related to enforcement of the assistance provision under the VRA, and (10) to maintain written records of all actions taken pursuant to the Courts August 16, 2016 order, to be produced to the Court and Plaintiff.

The Court deems this additional proposed injunctive relief inappropriate in this case. As the Court stated in its August 12, 2016 order, Section 208 does not impose an affirmative obligation on states, but rather operates as a negative obligation requiring that states not limit voters' right to assistance

by a person of their choice. (Order, Aug. 12, 2016, Dkt. 60, at 4.) The initial remedial measures proposed by Plaintiff and largely adopted by Defendants ensure the state's negative obligations are met; without taking some action to inform election officials, poll watchers, and voters of the invalidity of certain provisions of the TEC, these provisions would continue to stand as a barrier to voters and to organizations seeking to encourage civic participation like Plaintiff's. Once that barrier has been removed, however, the Court sees no reason, at this point in time, to create affirmative obligations for Defendants in order to ensure compliance with Section 208 of the VRA.

## IV.  CONCLUSION

In contemplation of the additional modifications the Court anticipates Defendants will make to their planned compliance efforts in accordance with the Court's August 30, 2016 order, the Court concludes that while Plaintiff is entitled to injunctive relief, the Court need not issue additional injunctive relief at this time. Thus, Plaintiff's Motion for Permanent Injunction (Dkt. 61) is **DENIED** without prejudice.

**SIGNED** on September 2, 2016.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE