# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

———————————————

No. 16-51126

———————————————

D.C. Docket No. 1:15-CV-679

United States Court of Appeals
Fifth Circuit

**FILED**

August 16, 2017

Lyle W. Cayce
Clerk

OCA-GREATER HOUSTON; MALLIKA DAS,

       Plaintiffs - Appellees

v.

STATE OF TEXAS; ROLAND B. PABLOS, In his official capacity as Texas
Secretary of State and Chief Election Officer,

       Defendants - Appellants

Appeal from the United States District Court for the
Western District of Texas, Austin

Before HIGGINBOTHAM, GRAVES, and HIGGINSON, Circuit Judges.

## J U D G M E N T

This cause was considered on the record on appeal and was argued by
counsel.

It is ordered and adjudged that the judgment of the District Court is
affirmed in part and vacated in part, and the cause is remanded to the District
Court for further proceedings in accordance with the opinion of this Court.

IT IS FURTHER ORDERED that each party bear its own costs on
appeal.



Certified as a true copy and issued
as the mandate on Sep 07, 2017

Attest:

Clerk, U.S. Court of Appeals, Fifth Circuit

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-51126

United States Court of Appeals
Fifth Circuit

**FILED**

August 16, 2017

Lyle W. Cayce
Clerk

OCA-GREATER HOUSTON; MALLIKA DAS,

        Plaintiffs - Appellees

v.

STATE OF TEXAS; ROLAND B. PABLOS, In his official capacity as Texas
Secretary of State and Chief Election Officer,

        Defendants - Appellants

Appeal from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, GRAVES, and HIGGINSON, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

      This is a challenge to a Texas voting law imposing a restriction on the
interpretation assistance that English-limited voters may receive. The greater
Houston branch of the Organization for Chinese Americans ("OCA") filed suit
seeking a declaration that a certain provision of the Texas Election Code
conflicted with, and was therefore preempted by, Section 208 of the federal
Voting Rights Act ("VRA"). The State of Texas and its Secretary of State
(collectively, "Texas") defended on the grounds that OCA lacked standing, that
OCA had named the wrong State defendant, and that Texas's election laws
were VRA-compliant. The district court agreed with OCA and entered

No. 16-51126

summary judgment in its favor on all of those issues and an injunction against Texas. Texas appealed, reurging each of its defenses, and additionally arguing that the district court entered a deficient injunction. We affirm in part, vacate in part, and remand.

# I

## A

Congress passed the VRA in 1965 to address "entrenched racial discrimination in voting," which was "'an insidious and pervasive evil which had been perpetuated in certain parts of our country through unremitting and ingenious defiance of the Constitution.'"[1] Its central features were Section 2, which banned in all fifty states any "standard, practice, or procedure . . . imposed or applied . . . to deny or abridge the right of any citizen of the United States to vote on account of race or color"; Section 4, which banned the use of any "test or device" employed "for the purpose or with the effect of denying or abridging the right to vote on account of race or color" by certain covered states; and Section 5, which provided for certain covered states that "no change in voting procedures could take effect until it was approved by federal authorities in Washington, D.C. . . . ."[2]

This appeal concerns a more recent, and less visible, addition to the VRA. Section 208, added in 1984, states: "Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union."[3] The question

---

[1] *Shelby Cty., Ala. v. Holder*, 133 S. Ct. 2612, 2618 (2013) (quoting *South Carolina v. Katzenbach*, 383 U.S. 301, 309 (1966)).

[2] *Id.* at 2619–20.

[3] 52 U.S.C. § 10508 (formerly 42 U.S.C. § 1973aa-6).

No. 16-51126

posed here is whether a provision in Texas's Election Code frustrates this federal statutory right.

We turn first to several different provisions of the Texas Election Code distinguishing between voter "assistors" and voter "interpreters." Chapter 64B establishes the requirements and procedures for a voter to receive "assistance." Under Tex. Elec. Code § 64.031:

> A voter is eligible to receive assistance in marking the ballot, as provided by this subchapter, if the voter cannot prepare the ballot because of:
>
> > (1) a physical disability that renders the voter unable to write or see; or
> >
> > (2) an inability to read the language in which the ballot is written.

"[O]n a voter's request for assistance in marking the ballot, two election officers shall provide the assistance."[4] However, "[o]n the voter's request, the voter may be assisted by any person selected by the voter other than the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs."[5] Texas defines "assistance" as "conduct by a person other than the voter *that occurs while the person is in the presence of the voter's ballot or carrier envelope*," and includes "reading the ballot to the voter," "directing the voter to read the ballot," "marking the voter's ballot," and "directing the voter to mark the ballot."[6]

Chapter 61B establishes the requirements and procedures for a voter to have an "interpreter." "[A]n election officer may not use a language other than

---

[4] *Id.* § 64.032(a).

[5] *Id.* § 64.032(c). Whoever the voter selects must take an oath swearing that he or she is none of those things to the voter. *Id.* § 64.034.

[6] *Id.* § 64.0321 (emphasis added).

No. 16-51126

English in performing an official duty in connection with the election."[7] However, "[i]f a voter cannot communicate in English, an election officer may communicate with the voter in a language that the voter and the officer understand."[8] "If an election officer who attempts to communicate with a voter does not understand the language used by the voter, the voter may communicate through an interpreter selected by the voter."[9] Important to this case, "[t]o be eligible to serve as an interpreter, a person must be a registered voter of the county in which the voter needing the interpreter resides."[10] "If a voter cannot comprehend the language in which the ballot is printed, an interpreter may accompany the voter to the voting station for the purpose of translating the ballot to the voter."[11]

In combined effect, these provisions grant to physically disabled and English-limited Texas voters the right to select any assistor of their choice, subject only to the restrictions expressed in Section 208 of the VRA itself (i.e., the assistor cannot be the voter's employer, an agent of the voter's employer, or an agent of the voter's labor union[12]). However, as Texas has defined this assistance right, it is available to a voter only "in the presence of the voter's ballot or carrier envelope," for the purpose of reading and marking the ballot.[13] English-limited Texas voters are granted a supplemental right: they may select an interpreter to aid them outside the ballot box, but the interpreter must "be a registered voter of the county in which the voter needing the

---

[7] *Id.* § 61.031(a).

[8] *Id.* § 61.031(b).

[9] *Id.* § 61.032. Whoever the voter selects must take an oath swearing that he or she "will correctly interpret and translate each question, answer, or statement addressed either to the voter by any election officer or to an election officer by the voter." *Id.* § 61.035.

[10] *Id.* § 61.033.

[11] *Id.* § 61.034.

[12] *Compare* 52 U.S.C. § 10508 *with* Tex. Elec. Code § 64.032(c).

[13] Tex. Elec. Code § 64.0321.

interpreter resides."[14] The challenge here asks whether this limit of an interpreter to a registered voter of the county abridges the right guaranteed by Section 208 of the VRA.

## B

In October of 2014, Mallika Das, an English-limited American citizen born in India, attempted to vote in Williamson County, Texas. Because she had trouble understanding English, she brought her son with her to interpret. Her son was not registered to vote in Williamson County. When the pair arrived at the polling location, a Texas election officer refused to allow Das's son to interpret, citing the Texas law requiring that interpreters be registered to vote in the voter's county of residence. Das attempted to complete her ballot alone, but could not due to her limited English.

OCA is a nonprofit organization "dedicated to the . . . mission of advocating for and protecting and advancing the rights of Chinese Americans and Asian Pacific Americans." One of its primary missions is to promote civic participation and provide civic education, which it carries out through a "Get Out the Vote" initiative. OCA redirected some of its efforts and resources toward educating its members and other members of the public about the problem that befell Das and how to avoid it. Further, it filed this lawsuit, joined by Das, against the State of Texas and its Secretary of State, alleging that the interpreter restriction expressed in Tex. Elec. Code § 61.033 violated Section 208 of the VRA and that Das had been deprived of her federal rights.[15]

While this suit was pending in the district court, Das passed away. OCA does not suggest that her 42 U.S.C. § 1983 cause of action survived her. Texas then challenged OCA's standing to sue for declaratory and injunctive relief

---

[14] *Id.* § 64.033.
[15] Williamson County was initially a defendant, but settled before this appeal.

No. 16-51126

under the VRA. The district court convened an evidentiary hearing to examine OCA's standing as an organization, at which both parties presented evidence. Texas argued that the undisputed facts did not confer standing upon OCA— both because OCA itself had suffered no cognizable injury and because any injury was neither traceable to nor redressable by the named State defendant. The district court found that OCA had organizational standing and had named the correct State defendant.

## C

On the merits, OCA argues that Texas's requirement that the voter's chosen interpreter be registered to vote in the voter's county of residence violates Section 208 of the VRA because Section 208 lacks this restriction on voter choice. Texas replies that Section 208 establishes a federal statutory right to an interpreter only "inside the ballot box," so to speak—a restrictive view of the term "to vote" encompassing only actions like reading and marking the ballot. Hence, according to Texas, its "assistance" provisions supply the full scope of the right granted by Section 208; its "interpreter" provisions are additional protections outside the scope of Section 208, unable to foul it. On the parties' cross-motions for summary judgment, the district court agreed with OCA and entered judgment that Texas's statutory restriction on voter interpreters conflicted with Section 208 of the VRA. It enjoined Texas from "engaging in any practice that denies the rights secured by Section 208 of the Voting Rights Act."

We first examine federal jurisdiction, then turn to the merits of OCA's challenge, and Texas's challenge to the scope and specificity of the district court's injunction.

No. 16-51126

## II

We begin, as we must, with Texas's challenge to our jurisdiction.[16] That challenge takes two forms: OCA's standing and Texas's sovereign immunity.

### A

To have standing, an association or organization must satisfy the well-known requirements of *Lujan*:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."[17]

Texas contests all three elements of this test. We examine standing *de novo*.[18]

### 1

An association or organization can establish an injury-in-fact through either of two theories, appropriately called "associational standing" and "organizational standing."[19] "Associational standing" is derivative of the standing of the association's members, requiring that they have standing and

---

[16] *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause." (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868))).

[17] *NAACP v. City of Kyle, Tex.*, 626 F.3d 233, 237 (5th Cir. 2010) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

[18] *Id.* at 236.

[19] *Id.* at 237.

No. 16-51126

that the interests the association seeks to protect be germane to its purpose.[20] By contrast, "organizational standing" does not depend on the standing of the organization's members. The organization can establish standing in its own name if it "meets the same standing test that applies to individuals."[21] Here, OCA relies exclusively on the latter, organizational theory of standing.

OCA's claimed injury-in-fact is the "additional time and effort spent explaining the Texas provisions at issue to limited English proficient voters" because "addressing the challenged provisions frustrates and complicates its routine community outreach activities." The undisputed summary-judgment evidence established that OCA's primary mission is voter outreach and civic education, particularly "getting out the vote" among its members. Because a substantial portion of OCA's membership consists of people with limited English proficiency, Texas's voter interpreter restriction has deterred some of them from voting. In response, OCA calibrated its outreach efforts to spend extra time and money educating its members about these Texas provisions and how to avoid their negative effects. Specifically, OCA employees and volunteers must carefully explain to those it contacts, in the language they understand, that when they bring an interpreter to a Texas polling location, the interpreter must identify his or herself as an "assistor" rather than as an "interpreter" to avoid being turned away under Texas law like Das's son was. And OCA explains that these in-depth conversations take more time than merely explaining the requirements of the VRA, and therefore OCA must spend more time on each call (and reach fewer people in the same amount of time) because of Texas's law.

---

[20] *Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006). *See also Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

[21] *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 356 (5th Cir. 1999). *See also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982).

No. 16-51126

Texas argues that this court's precedent mandates the rejection of OCA's claimed injury-in-fact as a cognizable injury within the meaning of the *Lujan* test, relying on *NAACP v. City of Kyle*. In that case, the City had revised its zoning and subdivision ordinances in a way that allegedly disproportionately disadvantaged black and Hispanic home seekers in violation of the Fair Housing Act.[22] Various branches of the NAACP and two home builders associations brought suit to enjoin enforcement of the changes.[23] The NAACP had claimed associational standing, and the builders associations had claimed organizational standing, but on appeal the plaintiffs abandoned their claim to associational standing and relied entirely on organizational standing.[24]

Those plaintiffs acknowledged that their litigation efforts could not establish injury, so instead they pointed to their so-called "'prelitigation' responses to the revised ordinances (before and after they were passed), which include[d] a $15,000 study on the impact of the revised ordinances and lobbying 'to get the City to back down on the Revised Ordinances.'"[25] They noted that "[t]he HBA's vice president of public policy also testified that she had spent significant time on the revised ordinances, which she could have spent on other matters."[26] However, we were unpersuaded:

> Plaintiffs have not explained how the activities described above, which basically boil down to examining and communicating about developments in local zoning and subdivision ordinances, differ from the HBA's routine lobbying activities. Furthermore, Plaintiffs have not identified any specific projects that the HBA had to put on hold or otherwise curtail in order to respond to the revised

---

[22] *City of Kyle*, 626 F.3d at 236.
[23] *Id.*
[24] *Id.*
[25] *Id.* at 238.
[26] *Id.*

No. 16-51126

ordinances. Plaintiffs have only conjectured that the resources that the HBA had devoted to the revised ordinances could have been spent on other unspecified HBA activities. In short, Plaintiffs have not demonstrated that the diversion of resources here concretely and "perceptibly impaired" the HBA's ability to carry out its purpose. At most, they have established "simply a setback to the organization's abstract social interests." Thus, there is no injury in fact, and consequently, we must dismiss this case for lack of standing.[27]

Texas argues that here, too, OCA's claimed injury is nothing more than "examining and communicating about developments" in the law, and that OCA has not "identified any specific projects that [it] had to put on hold or otherwise curtail in order to respond" to the challenged law.[28] The district court disagreed, and so do we.

The *City of Kyle* plaintiffs were dedicated lobbying groups who claimed their lobbying and litigation-related expenses as their injury. It is fundamental that no plaintiff may claim as injury the expense of preparing for litigation, for then the injury-in-fact requirement would pose no barrier. The key fact in *City of Kyle* was that every claimed "injury" either was undertaken to prepare for litigation (such as the commissioning of a $15,000 study on the impact of the ordinances—a study that the plaintiffs then relied on at trial to demonstrate disparate impact) or was no different from the plaintiffs' daily operations (such as the vice president's spending time reviewing ordinances).

Here, by contrast, OCA is not a lobbying group. It went out of its way to counteract the effect of Texas's allegedly unlawful voter-interpreter

---

[27] *Id.* at 238–39 (citations omitted).
[28] *See id.*

10

No. 16-51126

restriction—not with a view toward litigation, but toward mitigating its real-world impact on OCA's members and the public. For instance, it undertook to educate voters about Texas's assistor-versus-interpreter distinction to reduce the chance that other voters would be denied their choice of interpreter in the way that Das was—an undertaking that consumed its time and resources in a way they would not have been spent absent the Texas law. Hence, the Texas statutes at issue "perceptibly impaired" OCA's ability to "get out the vote" among its members.[29]

Texas replies that the *City of Kyle* plaintiffs expressly acknowledged that they could not claim litigation expenses as injury, but instead pointed to their "prelitigation" expenses. Thus, Texas argues, those injuries too were unrelated to litigation yet still held insufficient. But that does not follow. Every qualifying injury-in-fact will necessarily occur "prelitigation," and an expense can be incurred before litigation but still be *related* to the future litigation. The bar against claiming litigation expenses as injury is not one of temporal relation, but one of substantive relation. In *City of Kyle*, the expenses occurred prelitigation but were related to litigation. Here, the expenses occurred prelitigation and are unrelated to litigation. That is the critical distinction.

To be sure, OCA's injury was not large. But the injury alleged as an Article III injury-in-fact need not be substantial; "it need not measure more than an 'identifiable trifle.'"[30] This is because "the injury in fact requirement under Article III is qualitative, not quantitative, in nature."[31] Our remark in

---

[29] *See Havens Realty*, 455 U.S. at 379 (holding that a housing counselling service's "ability to provide counselling and referral services for low- and moderate-income homeseekers" was "perceptibly impaired" by the defendant's allegedly unlawful practices, so "there [could] be no question that [it] suffered injury in fact").

[30] *Fowler*, 178 F.3d at 358 (quoting *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689 n.14 (1973)).

[31] *Id.* at 357–58.

No. 16-51126

*City of Kyle* that those plaintiffs could have established standing by "identif[ying] any specific projects that the HBA had to put on hold or otherwise curtail in order to respond to the revised ordinances"[32] was not a heightening of the *Lujan* standard, but an example of how to satisfy it by pointing to a non-litigation-related expense. Indeed, the Supreme Court has commanded that, in determining whether an organization has organizational standing, "we conduct the same inquiry as in the case of an individual."[33] So to the extent that Texas would read *City of Kyle* as imposing a higher burden on organizations seeking to establish standing, we must disagree. We rather agree with the district court that OCA has satisfied its burden under *Lujan* to show an injury-in-fact.

**2**

Texas further contests the second and third elements of the *Lujan* standing test, arguing that any injury suffered by OCA did not result from the Texas Election Code, and therefore is not fairly "traceable to" or "redressable by" the State and the Secretary of State. Das's being denied the right to have her son interpret, the argument goes, was the result of a misunderstanding of Texas law by Williamson County election officials, not the result of § 61.033, so those county officials are the only ones who can redress the injury.

That circular argument misses the mark. First, it is not clear to us what misunderstanding Williamson County officials had. Their forbidding Das's son from serving as an interpreter because he was not registered to vote in Williamson County appears to be a straightforward application of § 61.033. More importantly, the argument conflates the merits of the suit with the plaintiff's standing to bring it. OCA's challenge, *if successful*, means that

---

[32] *City of Kyle*, 626 F.3d at 238.
[33] *Havens Realty*, 455 U.S. at 378.

No. 16-51126

§ 61.033 is facially invalid. Texas cannot defeat standing by arguing that the statute is facially valid, just misapplied by county officials—a merits question that we may reach only when satisfied that OCA has standing. The facial invalidity of a Texas election statute is, without question, fairly traceable to and redressable by the State itself and its Secretary of State, who serves as the "chief election officer of the state."[34]

*Okpalobi v. Foster* is no help to Texas. There, a doctor, several health care clinics, other physicians, individuals, and businesses who performed abortions in Louisiana challenged the constitutionality of a Louisiana tort law that imposed unlimited liability on doctors for any damage caused by the abortion procedure.[35] They claimed that the law constituted an "undue burden" on a woman's right to obtain an abortion under *Casey*,[36] naming as defendants the governor and attorney general of Louisiana.[37] A majority of the *en banc* court held that the named defendants were "without any power to enforce the complained-of statute," so the causal connection prong of the *Lujan* standing test was unsatisfied.[38] Further, the redressability requirement was unmet because under the tort law in question, "no state official has any duty or ability to do *anything*."[39] In sum:

> [T]he injury alleged by the plaintiffs is not, and cannot possibly be, *caused* by the defendants—that is, these defendants will not file and prosecute a cause of action under Act 825 against these plaintiffs; and that their injury cannot be *redressed* by these defendants—that is, these defendants cannot prevent purely

---

[34] Tex. Elec. Code § 31.001(a).
[35] *Okpalobi v. Foster*, 244 F.3d 405, 409 (5th Cir. 2001) (en banc).
[36] *Id.* at 410 (citing *Planned Parenthood v. Casey*, 505 U.S. 833 (1992)).
[37] *Id.* at 409.
[38] *Id.* at 426.
[39] *Id.* at 427 (emphasis in original).

No. 16-51126

private litigants from filing and prosecuting a cause of action
under Act 825 and cannot prevent the courts of Louisiana from
processing and hearing these private tort cases.[40]

The statute at issue here creates no private right of action. By its own terms,
it applies to every election held in the state of Texas,[41] and unlike in *Okpalobi*,
where the defendants had no "enforcement connection with the challenged
statute,"[42] the Texas Secretary of State is the "chief election officer of the
state"[43] and is instructed by statute to "obtain and maintain uniformity in the
application, operation, and interpretation of this code and of the election laws
outside this code."[44] We are satisfied that OCA has met its burden under *Lujan*
to show that its injury is fairly traceable to and redressable by the defendants.

## B

Texas also raises the defense of state sovereign immunity, arguing that
OCA has not complied with the strictures of the *Ex parte Young* exception to
sovereign immunity because the named state official has no connection with,
and is not "threaten[ing] and [] about to commence proceedings" to enforce the
invalid act.[45]

Sovereign immunity has no role to play here. Importantly, the parties
agree that when Mallika Das passed away, her § 1983 claim for damages
vanished. The only claim remaining in this suit is OCA's for declaratory and
injunctive relief under the VRA. The VRA, which Congress passed pursuant to
its Fifteenth Amendment enforcement power, validly abrogated state

---

[40] *Id.*
[41] Tex. Elec. Code § 1.002(a).
[42] *Okpalobi*, 244 F.3d at 427 n.35.
[43] Tex. Elec. Code § 31.001(a).
[44] *Id.* § 31.003.
[45] 209 U.S. 123, 155–56 (1908).

No. 16-51126

sovereign immunity.[46] The immunity from suit that Texas and its officials otherwise enjoy in federal court offers it no shield here.

## III

Satisfied that federal jurisdiction over this case is proper, we turn to its merits. At bottom, the question presented by this case is how broadly to read the term "to vote" in Section 208 of the VRA. Texas argues that the term refers only to the literal act of marking the ballot, so the right to "assistance by a person of the voter's choice" referenced in the section applies only for that purpose. It says its Election Code's assistor provisions provide its voters with the full scope of assistance guaranteed by Section 208 by offering near-unfettered choice of assistance *inside the ballot box*. The supplemental interpreter right, which extends beyond the ballot box, Texas argues, is beyond Section 208's coverage, meaning that the § 61.033 restriction on voter choice cannot be in conflict.

OCA reads "to vote" in Section 208 more broadly. It argues that the term refers to more aspects of the voting process than the mere act of marking the ballot. Examples it offers are navigating the polling location and communicating with election officials. Under OCA's reading, Section 208 guarantees to voters to right to choose any person they want, subject only to employment-related limitations, to assist them throughout the voting process; hence, Tex. Elec. Code § 61.033 imposes a limitation on voter choice unsupported by, and therefore in conflict with, Section 208.

The unambiguous language of the VRA resolves the parties' disagreement. The word "vote" is expressly defined in 52 U.S.C. § 10310(c)(1) (formerly 42 U.S.C. § 1973*l*):

---

[46] *Mixon v. State of Ohio*, 193 F.3d 389, 398–99 (6th Cir. 1999).

No. 16-51126

> The terms "vote" or "voting" shall include all action necessary to
> make a vote effective in any primary, special, or general election,
> including, but not limited to, registration, listing pursuant to this
> chapter, or other action required by law prerequisite to voting,
> casting a ballot, and having such ballot counted properly and
> included in the appropriate totals of votes cast with respect to
> candidates for public or party office and propositions for which
> votes are received in an election.

"To vote," therefore, plainly contemplates more than the mechanical act of filling out the ballot sheet. It includes steps in the voting process *before entering* the ballot box, "registration," and it includes steps in the voting process *after leaving* the ballot box, "having such ballot counted properly." Indeed, the definition lists "casting a ballot" as only one example in a nonexhaustive list of actions that qualify as voting.

When confronted with this definition, Texas responds only that the plain language of its assistor provisions track the plain language of Section 208. Even so, the problem remains that the Texas provisions expressly limit the right to the act of casting a ballot. It should go without saying that a state cannot restrict this federally guaranteed right by enacting a statute tracking its language, then defining terms more restrictively than as federally defined.

We must conclude that the limitation on voter choice expressed in Tex. Elec. Code § 61.033 impermissibly narrows the right guaranteed by Section 208 of the VRA.

## IV

Finally, Texas urges that the injunction entered by the district court is both overbroad and vague. We agree that the district court's injunction was not appropriately confined and must be vacated.

16

No. 16-51126

From beginning to end, OCA's challenge has been to Tex. Elec. Code § 61.033. OCA's live complaint seeks a declaration that only that section violates the VRA, and its motion for summary judgment sought a declaration that only that section violated the VRA. The district court's order on summary judgment went beyond the engaged challenge, reading a different section in a way that rendered it invalid. It said: "[T]he Interpretation Provisions, *insofar as they allow an interpreter only if the officer does not speak the same language as the voter* . . ., flatly contradict Section 208." The referenced provision is Tex. Elec. Code § 61.032, which states: "If an election officer who attempts to communicate with a voter does not understand the language used by the voter, the voter may communicate through an interpreter selected by the voter." A reading that this means that an election officer's being unable to communicate with a voter is a *precondition* to the voter's right to select an interpreter was never urged.

After the parties submitted memoranda debating the propriety of a detailed permanent injunction, the district court *sua sponte* entered a "clarifying order," explaining that it found "Section 61.032 to be inconsistent with the Voting Rights Act to the extent it precludes a limited-English voter from selecting an interpreter if an election officer who attempts to communicate with the voter understands the language spoken by the voter." That same order, unrequested by any party, further stated: "To the extent the provisions of the Texas Election Code are inconsistent with the Voting Rights Act, the Court ENJOINS the Defendants, their employees, agents, and successors in office, and all persons acting in concert with them, from enforcement of those provisions."

At oral argument in this case, we asked OCA's counsel whether it agreed with the district court's reading of Tex. Elec. Code § 61.032 to mean that the voter can select an interpreter only if an election official cannot interpret.

No. 16-51126

Counsel replied: "I don't believe that's the case. It's just the requirement that they be a registered voter in the same county."[47]

The district court broadly enjoined Texas from enforcing any provision of its Election Code to the extent it is inconsistent with the VRA. Yet, an injunction must be "narrowly tailor[ed] . . . to remedy the specific action which gives rise to the order."[48] The injunction here exceeds the scope of the parties' presentation, which was limited to Tex. Elec. Code § 61.033.[49] And more to the point, it exceeds the scope of the OCA's harm.[50] On remand, the district court may elect to craft a new injunction. As the record indicates, Texas has already undergone substantial effort to comply with the district court's declaration, here affirmed, that § 61.033 is invalid. We leave that circumstance to the able hand of the trial court, far closer than we to the case.

## V

The injunction entered by the district court is vacated, and this case is remanded for the entry of a new injunction, if appropriate, consistent with this opinion. In all other respects, the judgment of the district court is affirmed.

---

[47] Oral Argument Recording at 22:30–22:50.

[48] *John Doe #1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004).

[49] *See Scott v. Schedler*, 826 F.3d 207, 214 (5th Cir. 2016) ("We merely remind the district court that its injunction may not encompass more conduct than was requested or exceed the legal basis of the lawsuit."); *Lion Health Servs. Inc. v. Sebelius*, 635 F.3d 693, 703 (5th Cir. 2011) ("As a general principle, 'injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'" (quoting *Califano v. Yamasaki*, 442 U.S. 628, 702 (1979))).

[50] *See Meltzer v. Bd. of Pub. Instruction of Orange County, Fla.*, 548 F.2d 559, 568 (5th Cir. 1977) ("[W]e are guided by the established principle of equity that 'in considering whether to grant injunctive relief a court should impose upon a defendant no restriction greater than necessary to protect the plaintiff from the injury of which he complains.'"), *aff'd in part and rev'd in part en banc*, 577 F.2d 311 (5th Cir. 1978).

# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**


September 07, 2017


Ms. Jeannette Clack
Western District of Texas, Austin
United States District Court
501 W. 5th Street
Austin, TX 78701-0000

     No. 16-51126    OCA-Greater Houston, et al v. State of
                            Texas, et al
                            USDC No. 1:15-CV-679


Dear Ms. Clack,

Enclosed is a copy of the judgment issued as the mandate and a
copy of the court's opinion.


                            Sincerely,

                            LYLE W. CAYCE, Clerk


                            By: _____
                            Nancy F. Dolly, Deputy Clerk
                            504-310-7683

cc:
     Ms. Tovah Calderon
     Mr. Kenneth Wayne Darby Jr.
     Mr. Matthew Allen Deal
     Ms. Erin Helene Flynn
     Mr. David Michael Hoffman
     Mr. David Scott Morris
     Mr. Esteban San Miguel Soto
     Mr. Jerry Vattamala