IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| OCA-GREATER HOUSTON, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF TEXAS, *et al.*, <br><br> Defendants. | Civil Action No. 1:15-cv-00679-RP |

## REPLY IN SUPPORT OF MOTION TO MODIFY 2018 INJUNCTION

### I.   INTRODUCTION

Plaintiff files this Reply in Support of its Motion for Modification of the 2018 Permanent Injunction. Notably, Defendants' opposition does not attempt to argue that the SB1 amended provisions are not in violation of Section 208 of the Voting Rights Act and at least the spirit of this Court's 2018 Injunction. Instead, Defendants present a slew of flawed reasons of why the Court should effectively ignore the violations. None of these arguments hold water. First, there is no basis in law to find that the filing of a new case on separate grounds (the 2021 Consolidated Litigation) somehow nullifies the Judgment and standing injunction in this case. If anything, this case stands to streamline the 2021 Consolidated Litigation by removing an issue from that case that was previously tried by this Court. Nor does the election year challenges doctrine prevent this Court from modifying its injunction in March for a November election. There is similarly no credible argument that the Defendants did not violate at least the spirit of the injunction by enforcing newly created provisions that clearly violate Section 208. Lastly, Defendants' argument that they do not "enforce" election laws is wrong and ultimately irrelevant. The undisputed fact is that Defendants provide election guidance and instructions to the counties.

That is an act of enforcing the law, but even if it were not, providing flawed guidance still violates the injunction. Defendants do not have to send peace officers to the counties to violate the injunction. Ultimately, none of the Defendants' arguments change the injunction modification inquiry, which only considers if there were any significant changes in law and whether the objective of the injunction has been achieved.

## II. PLAINTIFF REQUESTS THE REVISED INJUNCTION TO ENJOIN THE *SAME CONDUCT* AS ALREADY ENJOINED BY THE 2018 INJUNCTION

Plaintiff requests that this Court revise its 2018 Injunction to enjoin *already prohibited conduct* under SB1's amended provisions - not *additional conduct*, as Defendants allege. SB1's amended provisions 64.031, 64.034 and 64.0322 violate the 2018 Injunction and the Voting Rights Act in the *same manner* as currently enjoined sections 61.032, 61.033 and 64.0321. *See* Plaintiff's Motion for Modification of the 2018 Permanent Injunction ("Opening Brief") at 5-7. Defendants' main argument that the new or amended provisions "did not exist in 2016 or 2018" entirely misses the point of Plaintiff's motion. Just because those section *numbers* did not exist in 2018, does not mean that the underlying *conduct* codified in the new section was not already litigated and found in violation of the VRA. In fact, Defendants' reasoning that the SB1 amended provisions should not be enjoined because they did not exist in 2018 is the exact behavior admonished by *McComb*. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187 at 192-193 (1949) ("[i]t does not lie in their mouths to say that they have an immunity from civil contempt because the plan or scheme which they adopted was not specifically enjoined. Such a rule would give tremendous impetus to the program of experimentation with disobedience of the law…").

Nor is there any basis for Defendants' new position that the Secretary of State has no authority to enforce the challenged provisions or its commitment "not to enforce the problematic provisions." Opposition Brief at 8. Defendants' new argument that it is somehow absolved of

responsibility if it provides the counties with flawed guidance, but then quotes from this Court's order makes no logical sense. *See* Opposition Brief, Ex. A ("2022 Guidance"). The Secretary's main instrument for enforcing election laws is through the guidance and training that it provides the counties, which is why the 2018 Injunction explicitly enjoined Defendant from producing guidance materials that contained the substance of enjoined Sections 61.033 and 64.0321. If any part of the 2022 Guidance contains the flawed SB1 provisions, the Secretary is in violation of the 2018 Injunction. It is irrelevant that the 2022 Guidance also quotes the 2018 Injunction. Indeed, if anything, quoting this Court's 2018 Injunction would likely lead the counties to believe that the flawed guidance somehow complied with this Court's orders.

For example, the 2022 Guidance states that the "Definition of Assistance [Sec. 64.0321]" is limited only to "reading the ballot to the voter; directing the voter to read the ballot; marking the voter's ballot as directed by the voter; directing the voter to mark the ballot…" 2022 Guidance at 46. Then the 2022 Guidance cites the 2018 Injunction, which directly contradicts the above because it enjoins the enforcement of section 64.0321 that restricts assistance to "(1) reading the ballot to the voter; (2) directing the voter to read the ballot; (3) marking the voter's ballot; or (4) directing the voter to mark the ballot." *Id.* Despite directly violating the 2018 Injunction, and providing confusing and contradictory direction, the 2022 Guidance ends proclaiming that it was "issued in accordance with the *OCA Greater Houston* permanent injunction." *Id.*

There is additionally no viability to the State's purported commitment to not enforce problematic provisions, as providing the flawed provisions to the counties is itself an act of enforcement. Indeed, it has already violated at least the spirit of the injunction in publishing the 2022 Guidance. The only viable path would be to remove the flawed provisions entirely from all

election guidance and training materials, which the Secretary could have done, but chose not to do.

Defendants' argument that this Motion raises fresh inquiries of standing ignores that this case has already litigated standing through the Fifth Circuit, and a request to modify an injunction is not an opportunity to take another bite at the apple. An injunction modification request "may not be used to challenge the legal conclusions on which a prior judgment or order rests." *Horne*, 557 U.S. at 447; *see Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 187 (5th Cir. 2008) ("modification is not a means by which a losing litigant can attack the court's decree collaterally") (citing *U.S. v. Swift & Co.*, 286 U.S. 106, 119 (1932)). Plaintiff only need to make a "clear showing of grievous wrong evoked by new and unforeseen conditions" to be granted a modified injunction. *U.S. v. Swift & Co.*, 286 U.S. at 119. Defendants notably do not argue how the SB1 amended provisions can possibly satisfy the objective of the 2018 Injunction.

### III. THE FIRST FILED RULE DOES NOT APPLY HERE

Defendants next argue that this litigation should be consolidated with the 2021 Consolidated Litigation because the 2021 Consolidated Litigation was filed first. Yet, Defendants do not dispute that this case was filed in August 2015, over six years before the Consolidated Litigation. Opposition Brief at 2. Based on timing alone, the 2021 Litigation is not the first filed and so this doctrine does not apply. In some ways this situation is akin to a parolee that commits a new crime while on parole and tries to argue that he should not go back to jail for violating his parole until there is a trial on the new crime. While the state should try him for the new crime, it would be facially absurd to claim that the new case somehow absolves him of the parole violation. Yet, that is exactly what the Defendants argue here – that the new case somehow takes precedence over their violation of the injunction and that they should not be held

responsible for that violation until a new trial is held in a consolidated litigation that just began and involves myriad other unrelated grounds and parties.

Beyond this, despite its name, the First Filed "Rule" is a discretionary doctrine that rests on principles of comity which requires "federal district courts – courts of coordinate jurisdiction and equal rank – to exercise care to avoid interference with each other's affairs." *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721 (5th Cir. 1985). It does not change the fact that a court issuing an injunction has "**continuing power** to supervise and modify its injunctions in accordance with changed conditions." *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403 (5th Cir. 1971) (emphasis added); *see also Sys. Fed. No. 91 v. Wright*, 364 U.S. 642 (1961).

Indeed, when a non-issuing court is "confronted with an action that would involve it in a serious interference with or usurpation of this continuing power, considerations of comity and orderly administration of justice demand that the nonrendering court should **decline jurisdiction** and remand the parties for their relief to the rendering court, so long as it is apparent that a remedy is available there." *Mann Mfg., Inc.*, 429 F.2d at 408 (emphasis added). While Plaintiff referenced the 2018 Injunction in the Consolidated Litigation as a factual matter under Count 4 Violation of Section 208 of Voting Rights Act, Plaintiff cannot have sought enforcement of the 2018 Injunction in San Antonio because that Court does not have jurisdiction over this Court's injunction[1]. Only this Court undoubtedly has sole jurisdiction over its issued injunction, and can readily issue a remedy – by revising the 2018 Injunction to include the amended SB1 sections and serve the original purposes of the 2018 Injunction. Defendants' hollow statement that "Plaintiff simply has no basis for asserting such claims in the Instant Cause instead of in the

---

[1] *See OCA-Greater Houston, et al. v. Tex. Secretary of State*, 5:21-cv-00844-XR, Dkt. No. 137, Plaintiffs' First Amended Compl. ¶ 175 (Dec. 1, 2021).

wider-ranging Consolidated Litigation," fails to appreciate two salient facts. First, the only basis that Plaintiff needs to ask this Court to enforce its injunction is a violation of that injunction. Defendants cite no precedent that shifts the burden to Plaintiff if a wider-ranging case begins elsewhere. Second, Defendants fail to appreciate that comity demands this Court retain jurisdiction over its 2018 Injunction. Opposition Brief at 6. Indeed, as noted above, Plaintiff cannot raise the violation of the injunction in the 2021 Consolidated Litigation in San Antonio because only *this Court* has jurisdiction over its injunction.

### IV.  PLAINTIFFS' MOTION IS TIMELY AND FAR FROM THE "EVE OF AN ELECTION"

Whether an injunction is timely during an election year is not a black and white inquiry, but must be weighed against the harms attendant upon revision or non-revision of the injunction. *See, Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) ("[f]aced with an application to enjoin operation of voter identification procedures just weeks before an election, the Court of Appeals was required to weigh, in addition to the harms attendant upon issuance or nonissuance of an injunction, considerations specific to election cases and its own institutional procedures."). *Purcell* does not articulate a bright-lined rule, as Defendants suggest, but a balancing test. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2006) ("[i]n each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."). Here, allowing Defendants to enforce SB1 will chill "and deprive blind, disabled, and non-language minority limited-English voters of any assistance outside the ballot box." 2016 Order at 19. The risk of confusion and harm to election officials will be low because the November election is still eight months away, and as stated above, counties are likely already confused by the contradictory message of the 2022 Guidance.

Plaintiff does not dispute that election rules should not be altered on the "eve of an election." Opposition Brief at 7; *see also R.N.C. v. D.N.C.*, 140 S.Ct. 1205, 1207 (2020). Eight months before the election, however, hardly constitutes the "eve of an election." *Id.* The string of cases[2] Defendants cite reinforces that the "eve" of an election is between one week to two months before an election and provides no legal basis to stretch "eve" to mean eight months before an election. Opposition Brief at 7 (citing *Mi Familia Vota v. Abbott*, 834 F. App'x 860, 863 (5th Cir. 2020); *Richardson v. Tex. Sec'y of State*, 978 F.3d 220 (5th Cir. 2020); *Tex. Alliance for Retired Ams v. Hughs*, 976 F.3d 564 (5th Cir. 2020); *Tex. Democratic Party v. Abbott*, 961 F.3d 389[3] (5th Cir. 2020)). Conversely, challenging election law six months before a general election has not been considered untimely. *Democratic Nat'l Comm. v. Bostelmann*, 977 F.3d 639, 642 (7th Cir. 2020) ("[i]f the judge had issued an order in May based on April's [COVID-19] experience, it could not be called untimely. By waiting until September, however, the district court acted too close to the election."). This case is very far from that line, and Defendants point to no precedent for restricting relief eight months before an election.

Defendants' actions here further show that eight months is more than a sufficient amount of time to avoid confusion. In particular, Defendants appear to have issued the 2022 Guidance less than six weeks prior to the March 1st primary election. Even if one assumes that this six week period was sub-optimal, a decision by the Court in the Spring provides at least four times as long for the Defendants to issue new guidance that conforms to the injunction. Indeed, parties

---

[2] Those cases concerned COVID-19 election procedures and so courts additionally gave special deference to state legislatures to address "health and safety of the people during the COVID-19 pandemic." *D.N.C. v. Wis. State Legislature*, 141 S. Ct. 28, 32 (2020) (Kavanaugh, J. concurring). COVID-19 election rules are not concerned here.

[3] The injunction that was issued in May 2020 concerned voters' ability to receive an absentee ballot for the July 2020 runoff elections. Ultimately, the injunction was untimely because the July 2020 runoff election was less than two months away. *See generally Tex. Democratic Party v. Abbott*, 461 F. Supp. 3d 406 (W.D. Tex. 2020) (explanation of factual background).

can usually act much more expeditiously when operating under a Court order than they normally do without one. Moreover, revising the 2022 Guidance and training to remove the guidance that conflicts with the injunction would clarify the rules for the counties rather than create confusion. As explained above, since the 2022 Guidance includes both the amended SB1 provisions, and the 2018 Injunction, counties will be confused on how to decipher the contradictory messages. This Court's modified injunction will clarify that the 2018 Injunction still controls, and remove any confusing and contradictory guidance.

Lastly, even in the unlikely event that this Court were to find that the eight month period was too close to the November election, it is no basis to dismiss Plaintiff's motion. This Court could alternatively frame the revised injunction to become effective on November 9, 2022 (the day after the election). Indeed, there are election dates in 2023 as well. If this Court dismissed every election challenge within 8 months of an election, it would allow the Defendants to violate the VRA and the injunction indefinitely as long as regular elections are held.[4]

## V.  CONCLUSION

For the reasons discussed above, Plaintiffs respectfully requests that the Court deny Defendants' request to merge this litigation with the Consolidated Litigation and modify the 2018 Injunction to include the amended SB1 provisions 64.031, 64.034 and 64.0322.

---

[4] As the Defendants will likely appeal any revised injunction, Plaintiff requests that the Court make the amended injunction alternatively effective on November 9, 2022, such that to the extent that the appellate court interprets "eve of the election" to include March, they could strike the immediate efficacy while leaving the November date.

Dated: March 9, 2022

Respectfully submitted,

FISH & RICHARDSON P.C.

By: */s/ David M. Hoffman*
David M. Hoffman
Texas Bar No. 24046084
hoffman@fr.com
Kenneth W. Darby*
Texas Bar No. 24097570
kdarby@fr.com
111 Congress Avenue, Suite 810
Austin, TX 78701
Tel: (512) 472-5070
Fax: (512) 320-8935

Pengweixi Sun (*pro hac vice*)
rsun@fr.com
500 Arguello Street, Suite 400
Redwood City, CA 94063
Tel: (650) 839-5070
Fax: (650) 839-5071

ASIAN AMERICAN LEGAL DEFENSE AND EDUCATION FUND ("AALDEF")

Jerry Vattamala (*pro hac vice*)
jvattamala@aaldef.org
Susana Lorenzo-Giguere (*pro hac vice*)
slorenzo-giguere@aaldef.org
Patrick Stegemoeller (*pro hac vice*)
pstegemoeller@aaldef.org
99 Hudson Street, 12th Floor
New York, NY 10013
Tel: (212) 966-5932
Fax: (212) 966-4303

**COUNSELS FOR PLAINTIFF,
OCA-GREATER HOUSTON**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) on March 9, 2022, and it was served via CM/ECF on all counsel of record.

/s/ David M. Hoffman
David M. Hoffman